## United States District Court
## Southern District of New York

KNIFE RIGHTS, INC.; JOHN COPELAND; PEDRO PEREZ

Plaintiffs,

-against-

CYRUS R. VANCE, JR., in his Official Capacity as the New York County District Attorney and CITY OF NEW YORK,

Defendants.

## MEMORANDUM OF LAW
## IN SUPPORT OF DISTRICT ATTORNEY CYRUS R. VANCE, JR.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12 (b)(1) and 12(b)(6)

## 2011 CV 03918 (BSJ)(RLE)

CYRUS R. VANCE, JR.
District Attorney
New York County
Attorney for Defendant District Attorney Vance
One Hogan Place
New York, New York 10013
(212) 335-9000
Patricia J. Bailey
Eva Marie Dowdell
Assistant District Attorneys
of Counsel

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................ 1

THE APPLICABLE LEGAL STANDARDS ......................................................................... 2

FACTUAL BACKGROUND ................................................................................................. 4

ARGUMENT .......................................................................................................................... 8

           **A.**  **Plaintiffs Lacks Standing to Bring This Action** ........................................................................ 9

           **B.**  **Plaintiffs Have Failed to State A Claim Upon Which Relief Can Be Granted** ..................................... 12

           **C.**  **Plaintiffs Are Not Entitled to Injunctive Relief** ........................................................................ 24

CONCLUSION ..................................................................................................................... 25

<u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

<u>Aguayo v. Richardson</u>, 473 F.2d 1090 (2d Cir. 1974)................................................................10

<u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937 (2009) ...................................................................2

<u>Bacon v. Neer</u>, 631 F.3d 875 (8th Cir. 2011) .............................................................................25

<u>Beal v. Missouri Pac. R. R. Corp.</u>, 312 U.S. 45 (1941)..............................................................25

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007) .....................................2

<u>Bell Atlantic Corp. v. U.S.</u>, 224 F.3d 220 (3d Cir. 2000).........................................................16

<u>Boyce Motor Lines v. United States</u>, 342 U.S. 337 (1952)...........................................17-18, 23

<u>Carter v. McKoy</u>, 2010 WL 3290989 (S.D.N.Y., J. Buckwald) ...............................................15

<u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147 (2d Cir. 2002) ..................................................3

<u>Cooper v. Parsky</u>, 140 F.3d 433 (2d Cir. 1998) ........................................................................3

<u>Corr. Officers Benevolent Ass'n of Rockland Cnty. v. Kralik</u>, 2011 WL 1236135 (S.D.N.Y., J. Gardephe)..............................................................................................................................10

<u>Deaver v. Seymour</u>, 822 F.2d 66 (D.C.Cir.1987) ....................................................................25

<u>Denney v. Deutsche Bank AG</u>, 443 F.3d 253 (2d Cir. 2006)......................................................9

<u>Denton v. Hernandez</u>, 504 U.S. 25 (1992)..................................................................................3

<u>Dickerson v. Napolitano</u>, 604 F.3d 732 (2d Cir. 2010) ......................................................19-20

<u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S. Ct. 2197 (2007) .........................................................2

<u>Field Day, LLC v. Cnty. of Suffolk</u>, 463 F.3d 167 (2d Cir.2006)................................................9

<u>Golden v. Zwickler</u>, 394 U.S. 103 (1969)..................................................................................11

<u>Grayned v. City of Rockford</u>, 408 U.S. 104 (1972)..............................................................17-18

<u>Heller v. District of Columbia</u>, 554 U.S. 570 (2008) ................................................................19

<u>Irish Lesbian & Gay Org. v. Giuliani</u>, 143 F.3d 638 (2d Cir. 1998) ..........................................9

<u>Kachalsky v. Cacace</u>, 2011 WL 3962550 (S.D.N.Y., J. Seibel)..................................................9

LaFleur v. Whitman, 300 F.3d 256 (2d Cir. 2002) ........................................................3

Lanzetta v. New Jersey, 306 U.S. 451 [1939]...........................................................16

League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors, 737 F.2d 155 (2d Cir. 1984) ...............................................................................................10

Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179 (2d Cir. 2001) ..........................9

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).................................................9

Mangiafico v. Blumenthal, 471 F.3d 391 (2d Cir. 2006) .........................................3

Maynard v. Cartwright, 486 U.S. 356 (1988)..........................................................18

McDonald v. City of Chicago, __ U.S. __, 130 S.Ct. 3020 (2010) ..........................19

Nash v. United States, 229 U.S. 373 [1913] ...........................................................23

Nnebe v. Daus, 2011 WL 2149924 (2d Cir.) ..........................................................10

Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898 (2d Cir. 1993)....................10

Steffel v. Thompson, 415 U.S. 452 (1974) ..............................................................24

Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999)..............................................2

U.S. v. One TRW, Model M14, 7.62 Caliber Rifle, 441 F.3d 416 (6th Cir. 2006) ...............16

United States v. Batchelder, 442 U.S. 114 (1979).................................................16

United States v. Harris, 347 U.S. 612 [1954]........................................................16

United States v. National Dairy Products Corp., 372 U.S. 23 (1963) .....................18

United States v. Petrillo, 332 U.S. 1 [1947] ..........................................................17

United States v. Powell, 423 U.S. 87 (1975)................................................17-18, 23-24

United States v. Raines, 362 U.S. 17 (1960) ..........................................................19

United States v. Salerno, 481 U.S. 739 (1987) ......................................................19

United States v. Williams, 553 U.S. 285 (2008) ...........................................16-18, 23

Village of Hoffman Estates v. Flipside, 455 U.S. 489 (1982)...........................17-19

Ward v. Rock Against Racism, 491 U.S. 781 [1989]...............................................17

Warth v. Seldin, 422 U.S. 490 (1975)......................................................................9

STATE CASES

Hollender v. Trump Village Co-op, Inc., 58 N.Y.2d 420 (1983) ...................................................5

In re Michael Grudge M., 915 N.Y.S.2d 286, 80 A.D.3d 614 (2nd Dept. 2010) ....................................15

Moore v. Maryland, 189 Md.App. 90 (2009) ...........................................................................16

People v. Birth, 49 A.D.3d 290 (1st Dept. 2008) lv. denied 10 N.Y.3d 859 (2008) .................................15

People v. Dolson, 142 Misc.2d 779 (Onondaga Cty. 1989) ...............................................................14

People v. Dreyden, 15 N.Y.3d 100 (2010) ........................................................................15-16

People v. Jouvert, 50 A.D.3d 504 (1st Dept. 2008) ...................................................................15

People v. Neal, 79 A.D.3d 523 (1st Dept. 2010)......................................................................15

People v Smith, 309 AD2d 608 (1st Dept. 2003) lv denied 1 N.Y.3d 580 (2003) ........................................15

FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

42 U.S.C. § 1983...............................................................................................1, 8-10

Fed. R. Civ. P. 8(a)(2) ............................................................................................2

Fed. R. Civ. P. 12 (b)(1) .......................................................................................9, 11

Fed. R. Civ. P. 12(b)(1) and 12(b)(6)...............................................................................3

Fed. R. Civ. P. 12(b)(6) .......................................................................................2, 12-13

Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure ...................................................1

Fifth Amendment ..................................................................................................16

First Amendment..........................................................................................17, 19, 25

Fourteenth Amendment .......................................................................................1, 8, 12

Second Amendment...............................................................................................19

STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

CPL §150.10(1).....................................................................................................5

CPL §170.55(2).....................................................................................................5

New York Criminal Procedure Law ("CPL") §170.55...................................................................5-6

New York Penal Law ("NYPL") §265.01(1) and §§265.00(4) and (5)........................................2, 8

NYPL §265.00(4) .............................................................................................................12

NYPL §265.00(5) ................................................................................................12, 14, 24

NYPL §265.01(1) and §254.00(5) ...................................................................................21

NYPL §265.01(1) and §265.00(5) ...................................................................................20

NYPL §§265.01(1) ..........................................................................................................6, 12

NYPL §§265.01(1) and 265.00(4) ..................................................................................10

NYPL §§265.01(1) and 265.00(5) .............................................................................4, 6, 11

**OTHER AUTHORITIES**

13 The Oxford English Dictionary, p. 264 (2d ed. 1989) ........................................16

Merriam-Webster's Collegiate Dictionary (11th ed. 2005) ....................................14

Webster's Third New Int'l Dictionary p. 1889 (unabridged ed. 2002) ..................16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KNIFE RIGHTS, INC.; JOHN COPELAND; PEDRO PEREZ

Plaintiffs,

-against-

11 CV 3918 (BSJ)(RLE)

CYRUS R. VANCE, JR., in his Official Capacity as the New York
County District Attorney and CITY OF NEW YORK,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DISTRICT ATTORNEY CYRUS R. VANCE, JR.'S  MOTION TO DISMISS THE COMPLAINT

New York County District Attorney Cyrus R. Vance, Jr. ("DA Vance") submits this Memorandum of Law in support of his motion for an order pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure dismissing the complaint.

### PRELIMINARY STATEMENT

According to Plaintiffs, this action "challenges New York City's enforcement of State laws that prohibit 'switchblade' and 'gravity' knives against ordinary folding pocket knives that are designed to resist opening from the closed position," a category of knives that Plaintiffs have dubbed, "Common Folding Knives" ("CFK"). Plaintiffs allege that CFKs "fall into an entirely different class than switchblade and gravity knives because [CFKs] (unlike switchblade and gravity knives) have a mechanical bias in favor of the closed position" and the "user must overcome this bias in order to open the blade from its closed position" (Complaint [hereinafter "C"] ¶1).  Plaintiffs further complain that the "statutes do not provide adequate notice" that a CFK might be prohibited, and hence, the enforcement of these State laws violates the Due Process Clause of the Fourteenth Amendment as being void-for-vagueness" (C ¶1). By their causes of action, brought pursuant to 42

U.S.C. § 1983, Plaintiffs seek declaratory judgments that New York Penal Law ("NYPL") §265.01(1) and §§265.00(4) and (5) are void-for-vagueness "as applied to [CFKs]." Plaintiffs further request injunctive relief asking the Court to restrain DA Vance and others from enforcing NYPL §265.01(1) and §§265.00(4) and (5) "as to [CFKs]."

Even accepting the truth of Plaintiffs' factual allegations, as must be done for purposes of this motion, the complaint should be dismissed. First, Plaintiffs lack standing to bring this action. Moreover, the complaint fails to state a claim against DA Vance upon which relief can be granted.

## THE APPLICABLE LEGAL STANDARDS

Under the "notice pleading" standard of Fed. R. Civ. P. 8(a)(2), a plaintiff is not required to advance every particular fact underlying his complaint to state a viable cause of action, so long as his pleading affords the defendant fair notice of the claims being made against him. See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). Although this is an admittedly liberal standard, it is not without limits. As the Supreme Court made clear, for a complaint to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must do more than offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action;" rather, he must advance sufficient factual allegations that, taken as true, are "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009) (internal citation omitted).

In passing on a motion to dismiss under Rule 12(b)(6), the inquiry is generally limited to testing the allegations of the complaint. See, e.g., Sutton v. United Air Lines, Inc., 527 U.S. 471, 475 (1999). That is, the court must generally assume the truth of plaintiff's factual allegations, but the court is not

required to accept as true allegations that are "legal conclusions couched as factual assertions."  See Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) ("bald assertions and conclusions of law are insufficient" to survive a motion to dismiss).[1]  Moreover, the court is not required to accept as true allegations that are "fanciful," "fantastic," or "delusional." Denton v. Hernandez, 504 U.S. 25, 33 (1992) (internal quotes and citation omitted).

The court may also consider those documents either incorporated by reference or relied upon by plaintiff, Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006), as well as "matters of which judicial notice may be taken" in determining whether plaintiff has a valid cause of action.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotes and citation omitted).  And, the court may take judicial notice of state court records pertaining to the underlying criminal prosecutions. See generally LaFleur v. Whitman, 300 F.3d 256, 267 n.1 (2d Cir. 2002) (court may take judicial notice of records filed in state court proceeding).[2]

With these principles in mind, it is clear that Plaintiffs have failed to sufficiently allege a plausible claim for relief as to DA Vance.  The various defects in their claims are discussed below.  However, one of the defects warrants mention at the outset because it goes to the very heart of the complaint. Plaintiffs unabashedly base their claims for relief on a definition of gravity knife that is of their own choosing: a definition that is not the NYPL definition of gravity knife and that is much narrower than the NYPL definition.  Equally clear, the class of knives that Plaintiffs have dubbed CFKs includes knives that are "gravity knives" pursuant to the New York statute.  Indeed, the true gravamen of

---

[1]In this pre-answer motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), while DA Vance is obliged to assume the truth of factual assertions made by plaintiffs, he by no means concedes veracity of each of plaintiffs' allegations and any failure to identify those contested statements in this memorandum is based solely on the procedural requirements attendant with the present motion.

[2]Attached herein are the following relevant state court documents: Exhibit A: Perez Criminal Court Complaint, Exhibit B: Copeland Criminal Court Complaint, Exhibit C: New York County District Attorney Vance's. Press Release dated June 17, 2010, as referenced by Plaintiffs (See Complaint ¶39).

Plaintiffs' complaint is not that New York's statutes prohibiting gravity knives and switchblades are unconstitutionally vague – which they clearly are not – but rather that the New York statutes prohibit possession of knives that Plaintiffs want to carry with impunity.  Put another way, Plaintiffs appear to be seeking a judicial determination (1) declaring that any knife fitting their definition of a CFK is lawful, even if it meets the definition of a gravity knife or switchblade under New York Law, and (2) enjoining DA Vance from prosecuting individuals possessing those knives.  Of course, Plaintiffs are not entitled to have this Court rewrite New York's penal statutes or prohibit DA Vance from prosecuting violators of those laws.  For this and other reasons set forth below, the complaint does not state a claim on which relief can be granted, and should be dismissed as to DA Vance.

<u>FACTUAL BACKGROUND</u>

Plaintiff Pedro Perez ("Perez") claims that on April 15, 2010, he was stopped by New York City Police Department ("NYPD") officers after being observed with a Gerber brand CFK - which had a "linerlock" locking mechanism locking the blade in place once fully opened - clipped to his rear pants pocket.  His knife was allegedly "designed" so that the blade resisted opening from a closed position (C ¶¶32, 34).  Perez further claims that his knife featured a stud mounted on the blade that allows a user to overcome the knife's resistance against opening and to swivel the blade open with his or her thumb, a feature which Perez considered useful in connection with his work as an art dealer. Perez was able to open his knife with one hand from the closed position (C ¶35). Perez does not allege that his Gerber knife could be opened *only* in this manner; nor does he allege that on April 15, 2010, the blade of his knife was incapable of being released from the handle or sheath by the force of gravity or by the application of centrifugal force, as defined in NYPL §§265.01(1) and 265.00(5). Perez was charged with Criminal Possession of a Weapon in the Fourth

Degree, NYPL§265.01(1), for possessing a "gravity knife" and was issued a Desk Appearance Ticket[3] (C ¶36).

On May 17, 2010, Perez was arraigned on a complaint alleging that NYPD Lieutenant Edward Luke opened the knife by flicking his wrist while holding the knife and that the blade locked in the open position (See Exhibit A).   On November 17, 2010, Perez entered into an agreement pursuant to which he received an Adjournment in Contemplation of Dismissal ("ACD"), in accordance with New York Criminal Procedure Law ("CPL") §170.55.[4]  As part of the deal, Perez agreed to perform seven days of community service (C ¶37).   Perez further claims he would now purchase a CFK similar to the one he possessed on April 15, 2010, but "refrains from doing so" out of fear of arrest and prosecution and because such knives are not readily sold in New York City (C ¶38).

On October 10, 2010, Plaintiff John Copeland ("Copeland") was carrying a Benchmade brand CFK having an approximately three inch blade and a locking mechanism which locked the blade in place once it was fully opened. Copeland's knife had a stud mounted on the blade that allowed "a user" to overcome the knife's resistance against opening and to swivel the blade open with one hand, a feature Copeland considered useful in connection with his painting (C ¶¶26-27). (See Exhibit B).   Copeland does not allege that his Benchmade brand CFK was capable of being

---

[3] As defined in CPL §150.10(1), an appearance ticket is, "… a written notice issued and subscribed by a police officer or other public servant … directing a designated person to appear in a designated local criminal court at a designated future time in connection with his alleged commission of a designated offense .... "

[4] As defined in CPL §170.55(2), an adjournment in contemplation of dismissal (ACD) is "…an adjournment of the action without a date ordered with a view to ultimate dismissal in the furtherance of justice."  An ACD is not a meritorious dismissal.  See McKinney's §§ 170.55, subd 2, comment (noting that with an adjournment in contemplation of dismissal, "…the question of guilt or innocence remains unanswered."); see also Hollender v. Trump Village Co-op, Inc., 58 N.Y.2d 420, 426 (1983) (indicating that an adjournment in contemplation of dismissal is "neither a conviction nor an acquittal.").

opened *only* in this manner; nor does he allege that on October 10, 2010, the blade of his knife was incapable of being released from the handle or sheath by the force of gravity or by the application of centrifugal force, as defined in NYPL §§265.01(1) and 265.00 (5).

Copeland was stopped by NYPD officers after they observed the knife clipped to Copeland's front pants pocket (C ¶24). He was charged with Criminal Possession of a Weapon in the Fourth Degree, under NYPL §§265.01(1), for possession of a gravity knife. He was issued a Desk Appearance Ticket (C ¶29).

Copeland claims that on two occasions, prior to his arrest, he asked NYPD officers whether his knife was illegal. The officers allegedly tried to open the knife by using a "flicking" motion, were unable to do so and stated the knife was legal (C ¶28). Plaintiff does not state where these alleged incidents took place; the identities of the officers; or how long prior to his arrest the events took place. Plaintiff also does not allege whether or not his knife underwent any change or was in anyway altered or adjusted after these two incidents and prior to his arrest.

On November 10, 2010, Copeland was arraigned on a complaint alleging that NYPD Officer Kyrkos recovered a gravity knife from Copeland's pants pocket (Exhibit B). On January 26, 2010, he accepted the People's offer of an ACD pursuant to CPL §170.55, (C ¶30). Copeland alleges that he would continue to carry a CFK similar to the one he possessed on October 10, 2010, but no longer does so because these knives are not readily sold in New York City, and because he "fears prosecution" (C ¶31).

Plaintiff Knife Rights, Inc. ("Knife Rights") alleges it is an Arizona-based not-for-profit corporation, which purportedly has members and supporters nationwide, including some who live in and travel through New York City and New York State (C ¶43). Allegedly, these unidentified individuals would possess or carry a CFK in New York City, but refrain from doing so for fear of arrest and prosecution (C ¶45). Knife Rights further claims that its membership includes

6

unidentified businesses which have sold CFKs to individuals and/or businesses in New York City in the past, but now refrain from doing so for fear of arrest and prosecution (C ¶46). Finally, Knife Rights claims that "members and supporters of Knife Rights include businesses that would sell [CFKs] to retailers in New York City, but are unable to do so because the retailers now refuse to sell some or all of their products in the City" as a result of on-going or threatened enforcement of the State statute (C ¶47). Knife Rights contends that it has standing so as to seek vindication of the rights of these unidentified members (C ¶43).

Plaintiffs assert certain unidentified New York City ("NYC") Retailers continue to sell "a variety" of CFKs outside NYC but, because it is "impossible" for retailers to know whether "any particular [CFK] is a 'switchblade' or 'gravity' knife, many avoid the risk by refusing to carry" any CFK in their NYC stores (C ¶5-6). Other unidentified retailers "severely limit" the CFKs they carry by only selling CFKs "that are difficult to open" (C ¶6).

Plaintiffs go on to complain that the NYPD and DA Vance apply the State law prohibiting switchblade and gravity knives to include CFKs "that - in their view – can be 'readily' opened with a 'wrist flicking motion.'" Plaintiffs further allege that DA Vance and others "sometimes interpret these State laws so broadly that they deem *any* CFK to be prohibited, regardless of how readily it can actually be opened," a sweeping assertion that Plaintiffs make with no factual allegations to support it (C ¶3)(emphasis in original).

Plaintiffs assert that in June 2010, the District Attorney announced an enforcement initiative against various knife retailers in New York City because "many of the NYC Retailers' Common Folding Knives were switchblade and gravity knives and threatened to impose criminal charges" (C ¶¶4, 39). Further, the Manhattan District Attorney announced that following a "large scale investigation into the sale of illegal knives by local and national retailers doing business in New York," many of those sellers, "including Home Depot," had entered into deferred prosecution

agreements that "require[d] the companies to turn over all profits from the sale of such knives during the past 4-year period." The companies also "agreed [to] reform their business practices - including a prohibition on the sale of illegal knives and to turn over their entire stock of knives to the DA's Office."

According to Plaintiffs, DA Vance "deem[ed] common utility knives found in hardware stores to be prohibited" and that the NYC Retailers agreed "to refrain from selling alleged switchblade and gravity knives," to pay approximately 1.8 million dollars and "to generally turn over Common Folding Knives" they had in their inventory, "in exchange for the City's agreement not to pursue charges" (C ¶41). The City allegedly permitted the NYC Retailers to continue selling "certain 'custom' Common Folding Knives" which are "functionally identical to other Common Folding Knives that" the District Attorney alleged were illegal and which the NYC Retailers agreed not to sell (C ¶42).

<u>ARGUMENT</u>

Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983. In the First and Second Causes of Action, Plaintiffs allege DA Vance violated Plaintiffs' Fourteenth Amendment Due Process rights and pray that this Court issue a judgment declaring that NYPL §265.01(1) and §§ 265.00(4) and (5) are void-for-vagueness as those statutes are applied to CFKs "that are designed to resist opening from their folded position" (C ¶¶52-55; i and ii). Plaintiffs also seek to enjoin DA Vance and others from enforcing NYPL §265.01(1) and §§ 265.00(4) and (5) as to the alleged CFK (C ¶¶ iii - v).

Plaintiffs all lack standing to bring this suit. Furthermore, Plaintiffs' claims against DA Vance fail to state a claim upon which relief can be granted. As such, the complaint should be dismissed.

### A.  Plaintiffs Lacks Standing to Bring This Action

"Constitutional standing is the threshold question in every federal case, determining the power of the court to entertain the suit." Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 184 (2d Cir. 2001).  The Supreme Court has long held that to establish Article III standing "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)).

DA Vance moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12 (b)(1), as none of the Plaintiffs have standing. First, Plaintiff Knife Rights has failed to properly allege it has standing. Knife Rights seeks to bring this action on behalf of the organization itself and on behalf of the organization's unidentified members (C ¶43). It does not have standing under either theory. To bring a §1983 suit, an organization, like an individual, must independently satisfy the requirements of Article III standing as enumerated in Lujan v. Defenders of Wildlife, supra.  See Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 649-51 (2d Cir. 1998).  See also Warth v. Seldin, 422 U.S. 490, 511 (1975); Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 175 (2d Cir.2006).

Knife Rights alleges that it is a "non-profit member organization incorporated under the laws of the State of Arizona…[and] promotes legislative and legal action, as well as research, publishing, and advocacy, in support of people's ability to carry and use knives and tools" (C ¶10). It further claims that its "core purpose" is "vindicate[ing] the legal rights of individuals and businesses who are unable to act on their own behalf in light of the costs and time commitments involved in litigation" (C ¶43). However, "such activities, standing alone, are plainly insufficient to give rise to standing." Kachalsky v. Cacace, 2011 WL 3962550 *11 (S.D.N.Y. 2001, J. Seibel)) (allegation that organization "promot[es] the exercise of the right to keep and bear arms" and engages in

"education, research, publishing and legal action focusing on the [c]onstitutional right to privately own and possess firearms," insufficient to give rise to standing).  Further, the complaint is devoid of any allegation of a "perceptible impairment" to the Knife Rights organization, which is necessary to make out the requisite "injury in fact."  Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 905 (2d Cir. 1993) (internal citations omitted).  See Corr. Officers Benevolent Ass'n of Rockland Cnty. v. Kralik, 2011 WL 1236135 (S.D.N.Y. Mar. 30, 2011, J. Gardephe) ("the Union has not articulated … how it as an organization has been injured by the Defendants' allegedly unconstitutional policy … [and thus] has not demonstrated that it has standing to pursue the Section 1983 claim").  Accordingly, Knife Rights has not established standing to bring either of the two causes of action on behalf of the organization itself.

Knife Rights also lacks standing to bring those causes of action on behalf of its members. An organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. §1983, because §1983 rights are "personal to those purportedly injured." Nnebe v. Daus, 2011 WL 2149924 (2d Cir. May 31, 2011) (citing League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors, 737 F.2d 155, 160 (2d Cir. 1984)); Aguayo v. Richardson, 473 F.2d 1090 (2d Cir. 1974) ("Neither [the] language nor the history [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violations of rights of members").  Having failed to sustain its burden of demonstrating it has standing, Knife Rights' claims should be dismissed.

Plaintiffs Perez and Copeland fare no better in establishing standing. By the first cause of action, Plaintiffs seek declaratory and injunctive relief based on their claim that NYPL §§265.01(1) and 265.00(4), the prohibition against the possession of a "switchblade," is void-for-vagueness as applied to CFKs.  However, Plaintiffs have alleged no facts whatsoever in support of that particular cause of action, much less alleged a distinct and palpable injury traceable to the allegedly vague

statute or to DA Vance's enforcement of it. Thus, Plaintiffs have no standing to bring the first cause of action and it should be dismissed pursuant to Fed. R. Civ. P. 12 (b)(1).

Plaintiffs Perez and Copeland also lack standing to bring the second cause of action in which they seek to have NYPL §§265.01(1) and 265.00(5), the prohibition against "gravity knives," declared void-for-vagueness as applied to CFKs, and to enjoin DA Vance from enforcing that statutory prohibition. However, neither Perez nor Copeland has alleged facts establishing that he has suffered an injury traceable to the alleged unconstitutionality in the statute or to DA Vance's enforcement of it. Indeed, Perez and Copeland each merely alleges that he would like to possess a CFK that is "similar" to the one he possessed at the time of his arrest (C ¶¶31, 38). Yet, neither alleges the make and model of the CFK he would like to possess; nor does he otherwise specifically describe it. Of course, since neither Perez nor Copeland has identified with any specificity the knife he seeks to possess, he cannot plausibly allege that DA Vance would likely enforce NYPL §§265.01(1), and 265.00(5) as to it. Further, Perez and Copeland have not alleged they cannot purchase another type of tool or knife, which would both clearly not be prohibited by law and meet his work needs. Thus, Perez and Copeland have failed to allege a "distinct and palpable" injury giving them standing to bring the second cause of action and these claims should be dismissed pursuant to Fed. R. Civ. P. 12 (b)(1). Golden v. Zwickler, 394 U.S. 103 (1969) (where appellee sought declaratory judgment that state statute forbidding distribution of certain election material was unconstitutional, appellee's allegation that he wished to distribute such materials prior to upcoming election was not enough to show extant controversy given that candidate for whom appellee wanted to campaign had decided not to stand for election).

### B.  Plaintiffs Have Failed to State A Claim Upon Which Relief Can Be Granted

Even accepting that Plaintiffs' factual allegations as truthful, the complaint fails to allege a claim on which relief can be granted. The complaint should be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6).

Plaintiffs bring this action to "challenge[] New York City's enforcement of New York State laws that prohibit 'switchblade' and 'gravity' knives against ordinary folding pocket knives that are designed to resist opening from the closed position ("CFKs")."  According to Plaintiffs, "The State laws prohibiting switchblade and gravity knives do not provide adequate notice that ordinary common folding knives might be prohibited, and hence, the enforcement of these State laws in this manner violates the Due Process Clause of the Fourteenth Amendment as being void-for-vagueness" (C ¶1).

Plaintiffs' claims are meritless.  A simple review of New York's penal statutes prohibiting the possession of switchblades and gravity knives reveals that the statutes are not constitutionally vague. They give adequate notice that knives within the category dubbed the "Common Folding Knife" by Plaintiffs are prohibited and provide standards for the enforcement of those statutes.

NYPL §265.01(1) states, in pertinent part, that a person is guilty of criminal possession of a weapon in the fourth degree when "[h]e or she possesses any … gravity knife [or] switchblade knife…."  A "switchblade" is defined in the Penal Law as:

> any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

NYPL §265.00(4).

A "gravity knife" is defined in the Penal Law as:

> Any knife which has a blade which is released from the handle or sheath thereof by the force of gravity **or the application of centrifugal force** which, when released, is locked in place by means of a button, spring, lever, or other device.

NYPL §265.00(5) (emphasis added).

At the outset, although Plaintiffs purport to be challenging the statutory prohibition against switchblades and DA Vance's enforcement of that prohibition on a void-for-vagueness ground in their first cause of action, Plaintiffs never allege any facts supporting that claim. Thus, the first cause of action should be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim upon which relief can be granted.

As now shown, the second cause of action should also be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6), because Plaintiffs' claim that the statutory prohibition against gravity knives and DA Vance's enforcement of it is "void-for-vagueness as applied to [CFKs]" (C ¶55) also does not state a basis for relief.

As noted above, NYPL defines "gravity knives" as including knives that can be opened by centrifugal force. Given that statutory definition, the class of knives Plaintiffs call CFKs clearly include gravity knives. After all, CFKs are described by Plaintiffs as knives having "a mechanical bias in favor of the closed position," which requires a user to overcome that bias to open its blade; a knife that can be opened by centrifugal force fits that description.

Indeed, in advancing their claims, Plaintiffs have essentially ignored New York's statutory definition of "gravity knives" and instead allege that a "gravity knife" is the type of knife that German military engineers designed during World War II for paratroopers; such a knife could be opened by depressing a button or other mechanism, which would then cause the blade of the knife to "simply fall [ ] out of its front by the force of Earth's gravity alone … so long as the knife [was] pointed downward" (C ¶17).[5] Relying on that self-selected, narrow definition of a gravity knife, Plaintiffs claim that CFKs fall into a completely different category of knives than switchblades and

---

[5] To be sure, at various junctures in the complaint, Plaintiffs give lip service to language in NYPL's definition of a gravity knife. But, as shown in the text, the gravamen of Plaintiffs' claims is dependent on the fallacy that statutory language does not exist or is without effect.

gravity knives, and complain that DA Vance "appl[ies] the statutes prohibiting switchblades and gravity knives to include [CFKs]"  (C ¶¶ 2 and 3).

Suffice it to say, the New York Legislature did not limit the definition of "gravity knives" to the type of knife designed by German engineers during World War II.  And, since Plaintiffs' claims against DA Vance are predicated on the false notion that the legislature did so limit the definition of gravity knives, Plaintiffs' claims are legally defective at their very core.

Indeed, once the actual language in New York's penal statutes prohibiting possession of gravity knives and switchblades is reviewed, it is plain that there is no merit to Plaintiffs' claims that those statutes are unconstitutionally vague. As noted, under NYPL §265.00(5) a gravity knife is "any knife which has a blade which is released from the handle or sheathe thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device." The Penal Law thus, provides a clear and objective standard for determining whether a particular knife is an unlawful gravity knife: the blade must open and lock into place in response to gravity and/or the application of centrifugal force. See People v. Dolson, 142 Misc.2d 779, 781 (Onondaga Cty. 1989)("[T]he Legislature took pains to describe and outlaw certain weapons whose potential for quick deployment make them *per se* too dangerous to possess").

"Centrifugal force," of course, has a specific, ascertainable meaning: it is "the apparent force that is felt by an object moving in a curved path that acts outwardly away from the center of rotation." Merriam-Webster's Collegiate Dictionary (11th ed. 2005). Moreover, rather than constituting some esoteric concept that only trained scientists would know, the concept is familiar to anyone who has ever used a clothes dryer, ridden a playground merry-go-round or experimented with a centrifuge in his high school chemistry class.

Furthermore, the simple, straightforward definition of a gravity knife has been applied by New York Courts and juries for decades, and complaints charging possession of a gravity knife have

been upheld upon appellate review.  See, _e.g._, People v. Dreyden, 15 N.Y.3d 100 at 101 (2010) (while "[a] conclusory statement that an object recovered from a defendant is a gravity knife does not alone meet the reasonable cause requirement," an officer's description of the basis of his belief, such as the performance of a functional test, would be sufficient); In re Michael Grudge M., 915 N.Y.S.2d 286, 287, 80 A.D.3d 614 (2nd Dept. 2010)(supporting deposition sufficient when it contains a description of the gravity knife and its operation, based upon officer's personal observations and handling of the knife).

Moreover, as a judge of this Court has recognized, New York courts have clarified that the requisite Penal Law definition of a gravity knife amounts to a functional or operable test (and not a design test as Plaintiffs suggest (C ¶¶26,34)). Put simply, if the blade opens with the application of centrifugal force it is a "gravity knife.'" See Carter v. McKoy, 2010 WL 3290989, *5 (S.D.N.Y. 2010, J. Buckwald) ("[E]ven assuming that [officer] needed several attempts to open the knife before it would hold in an open position, the jury's verdict must still be upheld, since under New York law, a knife need not work consistently in order to support the finding that it is a gravity knife."). See, _e.g._, People v. Birth, 49 A.D.3d 290 (1st Dept. 2008) _lv. denied_ 10 N.Y.3d 859 (2008) ("An officer who tested the knife after defendant's arrest described the manner in which the knife operated, which conformed to the statutory definition of a gravity knife. The officer similarly demonstrated the operability of the weapon in open court. The People had no obligation to prove that the knife would also function as a gravity knife if the officer repeated the test while sitting down and using his weaker hand, as suggested by defense counsel at trial."); People v. Neal, 79 A.D.3d 523 (1st Dept. 2010)(evidence that an officer could open the knife by centrifugal force, created by flicking his wrist, was sufficient to confirm that the knife conformed to the statutory definition of a gravity knife); People v. Jouvert, 50 A.D.3d 504, 505 (1st Dept. 2008) (officer's description and demonstration of knife sufficient to support conclusion that it is a gravity knife); People v Smith, 309 AD2d 608 (1st

Dept. 2003) *lv denied* 1 N.Y.3d 580 (2003)(detective twice demonstrated the operability of the weapon in open court; the fact that the knife malfunctioned on some of the detective's attempts did not defeat the proof of operability). [6]

Clearly then, New York's prohibition against possession of gravity knives and DA Vance's enforcement thereof does not support a claim of void-for-vagueness. The void-for-vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment. See United States v. Williams, 553 U.S. 285 (2008). Because "no one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes," United States v. Batchelder, 442 U.S. 114, 123 (1979) (citing Lanzetta v. New Jersey, 306 U.S. 451, 453 [1939]), a criminal statute must provide notice of what conduct is prohibited and contain standards for enforcement. Batchelder, 442 U.S. at 123 (citing United States v. Harris, 347 U.S. 612, 617 [1954]). A statute is void-for-vagueness, then,

---

[6] Plaintiffs claim that the New York State Court of Appeals has "ruled" that the NYPL definition of a gravity knife "distinguishes gravity knives from certain folding knives *that cannot readily be opened* by gravity or centrifugal force" (C ¶21) See People v. Dreyden, 15 N.Y.3d 100, 104 (2010)(emphasis added). Plaintiffs claim that the italicized language is "intrinsically vague," as applied to a CFK. See (C ¶¶21-22). First, that language was not part of the Court's ruling, but rather an observation made by the Court in reviewing the sufficiency of a misdemeanor complaint. In any event, the term "readily" has an ordinary definition that is of common usage, and even if read into to the statute, certainly would not render the statute vague. According to the dictionary, "readily" means: "a: with prompt willingness: without hesitating, quibbling, or delaying: with alacrity: WILLINGLY * * * b: with fairly quick efficiency: without needless loss of time: reasonably fast: SPEEDILY * * * c: with a fair degree of ease: without much difficulty: with facility: EASILY * * *." Webster's Third New Int'l Dictionary p. 1889 (unabridged ed. 2002). "Readily" has also been defined as "[p]romptly, in respect of the time of action; quickly, without delay; also, without difficulty, with ease or facility." 13 The Oxford English Dictionary, p. 264 (2d ed. 1989). Moreover, courts have given the term "readily" its ordinary meaning. In Bell Atlantic Corp. v. U.S., 224 F.3d 220, 224 (3d Cir. 2000), "readily," as in "readily identifiable," means "'promptly,' 'quickly,' or 'easily.'" See also U.S. v. One TRW, Model M14, 7.62 Caliber Rifle, 441 F.3d 416 (6th Cir. 2006) ("'readily restored,' must not be construed as an abstract phrase, but rather its contours should be determined in the context of what it means to be able to 'readily restore [ ]' a machine-gun as opposed to some other object."); Moore v. Maryland, 189 Md.App. 90, 101 (2009) (statute prohibiting weapons that "may readily be converted to expel" was not vague because the common definitions of readily and converted framed the statute as prohibiting weapons that 'promptly, easily and without much difficulty can be changed or turned into a weapon…'").

when it either "fails to provide a person of ordinary intelligence fair notice of what is prohibited," or "is so standardless that it authorizes or encourages seriously discriminatory enforcement." Williams, 553 U.S. at 304.

Of course, because our legislators are "[c]ondemned to the use of words," Grayned v. City of Rockford, 408 U.S. 104, 110 (1972), and "few words possess the precision of mathematical symbols," Boyce Motor Lines v. United States, 342 U.S. 337, 340 (1952), "we can never expect mathematical certainty from our language." Grayned, 408 U.S. at 110. Thus, "perfect clarity and precise guidance have never been required," Williams, 523 U.S. at 304 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 [1989]), and "[t]he fact that [the Legislature] might, without difficulty, have chosen '[c]learer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." United States v. Powell, 423 U.S. 87, 94 (1975) (quoting United States v. Petrillo, 332 U.S. 1, 7 [1947]).

Moreover, the "degree of vagueness that the Constitution tolerates" depends "on the nature" of the law at issue. Thus, for example, "law[s] interfere[ing] which the right of free speech or of association" are subject to "a more stringent vagueness test" than other statutes. Village of Hoffman Estates, 455 U.S. at 498-99. Put conversely, the degree of vagueness tolerated by the Constitution is greater where the statute challenged does not implicate First Amendment or other constitutionally protected rights.[7]

Nor does "the mere fact that close cases can be envisioned render[] a statute vague." Williams, 553 U.S. at 305-306. Indeed, although "[c]lose cases can be imagined under virtually any

---

[7] By the same token, the degree of vagueness tolerated by the Constitution is even greater where the challenged statute is civil, rather than criminal, in nature. Village of Hoffman Estates, 455 U.S. at 498-99.

statute," id., "most statutes must deal with untold and unforeseen variations in factual situations," Boyce Motor Lines, 342 U.S. at 340 (1952).  The issues that "close cases" pose are "addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." Williams, 553 U.S. at 305-306.

In that vein, a vagueness challenge "may be overcome in any specific case where reasonable persons would know that their conduct is at risk."  Maynard v. Cartwright, 486 U.S. 356, 361 (1988). Further it is not unfair 'to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."  Boyce Motor Lines, 342 U.S. at 340.  At bottom, a statute is constitutionally vague only when it "proscribe[s] no comprehensible course of conduct at all" and "forbids no specific or definite act."  United States v. Powell, 423 U.S. 87, 92 (1975).  A vague statute leaves open "the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can . . . adequately guard against," United States v. Powell, 423 U.S. at 92, and it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis."  Village of Hoffman Estates v. Flipside, 455 U.S. 489, 498 (1982) (quoting Grayned, 408 U.S. at 108-09).

In addressing vagueness challenges, the Supreme Court of the United States has recognized two types of claims: a claim that a statute is vague "as applied" to the specific facts of a complainant's case; and a claim that a statute is void-for-vagueness on its face.  Village of Hoffman Estates, 455 U.S. at 495.  A statute is vague as applied when a court finds, after "examin[ing] the complainant's conduct," id., that the statute gave the complainant insufficient notice of what was proscribed "in light of the conduct with which [he was] charged."  United States v. National Dairy Products Corp., 372 U.S. 23, 33 (1963).  A law is facially vague, on the other hand, only if it "may not constitutionally be applied to any set of facts," Powell, 423 U.S. at 92, and is "incapable of any valid application."  Village of Hoffman Estates, 455 U.S. at 495 (internal quotation marks omitted).

As the Supreme Court has explained, a facial attack on a statute is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." United States v. Salerno, 481 U.S. 739, 745 (1987).

"Facial challenges are generally disfavored" for several reasons. Dickerson v. Napolitano, 604 F.3d 732, 741 (2d Cir. 2010). Among those reasons is the Supreme Court's reluctance to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." United States v. Raines, 362 U.S. 17, 21 (1960); see Village of Hoffman Estates, 455 U.S. at 494-95 (A person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."). Another reason is that a claim of facial vagueness often relies on speculation. Dickerson, 604 F.3d at 741. Facial challenges are thus generally not allowed where the challenged statute does not implicate constitutionally protected rights, and even then such challenges are rarely permitted unless First Amendment rights are implicated. Dickerson, 604 F.3d at 742, 744.

Here, the statutes challenged by Plaintiffs implicate no protected activity.[8] Thus, Plaintiffs can only mount an as-applied vagueness challenge in connection with those statutes and the

---

[8] Plaintiffs cite to Heller v. District of Columbia, 554 U.S. 570, 579 (2008), and claim that the statutes challenged are subject to a "higher standard" of specificity than criminal statutes are generally, because CFKs "can be used as weapons and the Second Amendment protects 'the individual right to posses and carry weapons in case of confrontation'" (C ¶51). However, Heller did not recognize a Second Amendment right to possess and carry a knife of any kind, much less the kind of knives defined as gravity knives and switchblades by the NYPL. Heller recognized a right to possess a handgun in the home for self-defense, and specifically confirmed the validity of certain restrictions on inherently dangerous weapons. And, in McDonald v. City of Chicago, __ U.S. __, 130 S.Ct. 3020 (2010), the Supreme Court again clarified that "the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense." McDonald, 130 S.Ct. at 3050.

enforcement of them.   Such claims fail because Plaintiffs' factual allegations do not remotely show that the statutory prohibition against gravity knives "either failed to provide them with notice" that possession of the knives they seek to possess is "prohibited" or "failed to limit sufficiently" the discretion of the officials enforcing those laws.  See Dickerson v. Napolitano, 604 F. 3d at 745.  As now shown, Plaintiffs have failed to allege sufficient facts about either the CFKs they wish to possess or the knives at issue in the prior prosecutions brought by DA Vance, and thus have not alleged facts supporting their claim of as-applied vagueness.

Turning first to Plaintiff Copeland's allegations, he has alleged he was arrested for possessing a "Benchmade brand Common Folding Knife" that had a thumb stud and was "designed so that its blade resists opening from the closed position," but "locks . . . in place once it is in its fully open position" (C ¶26).  Copeland further alleged that "[p]rior to" his arrest, he had "shown his Benchmade knife to NYPD police officers on two separate occasions," and those officers - unable to open the knife with a "flicking motion" - told him that the knife was legal (C ¶28).  Copeland has asserted that he was subsequently arrested when other officers stopped him in October of 2010; those officers "stated that they could open" the knife by "forcefully flicking the knife body downwards" (C ¶29).  Copeland concluded that he "would purchase another similar Common Folding Knife, but he refrains from doing so because he fears arrest and prosecution" (C ¶31).

Plainly, Copeland fails to allege facts supporting an as-applied vagueness claim with regard to NYPL §265.01(1) and §265.00(5) and the enforcement of that law.  For example, Copeland never alleges that he was unaware that his knife was capable of being opened by "forcefully flicking the knife body downwards" and, thus, capable of being opened by the application of centrifugal force. He does not allege which of the many Benchmade-model knives he was carrying at the time of his arrest or give a detailed description of its features (C ¶27), including, for example, whether it had a tension adjustment screw that varied the amount of force needed to open the blade (C ¶22).  He

does not allege that he tried to open it by centrifugal force and that he was never able to do so.  Nor does he allege when he showed his "Benchmade brand" CFK to the first two officers, or how those officers "flicked" the knife when trying to open it.  In particular, he does not allege that those officers flicked it the way that the arresting officers did: "forcefully flick[ing] the knife body downward."  He also does not allege that his knife remained functionally the same between the time the first two officers tried to open it and the day of his own arrest; for example, he does not state whether the knife underwent some change during that period, either due to a deliberate adjustment or an inadvertent one.  Further, Copeland does not deny that the officers who arrested him were able to open the blade by "forcefully flicking the knife body downwards," as those officers stated they did (C ¶29); thus, Copeland does not deny that the knife he possessed when arrested could be opened by centrifugal force and met the definition of an illegal gravity knife under the plain language of NYPL §265.01(1) and §254.00(5).  Finally, Copeland does not give any specifics about the knife he seeks to possess in the future, except that it would be "similar" to the knife he possessed when arrested.

Plaintiff Perez's claim fares no better.  He alleged that he was arrested for possessing "a Gerber brand Common Folding Knife" that had a thumb stud and was "designed so that its blade resist[ed] opening from the closed position," but "lock[ed] in place" when fully opened (C ¶34). Perez further asserts the officers who had stopped him for possessing the knife "could not themselves open [it] using a 'flicking' motion, [but] the officers asserted that it would (theoretically) be possible to do so" (C ¶36).  Perez no longer carries "a [CFK]" because "he fears that he will again be charged with Criminal Possession of a Weapon, and he is unable to determine whether any particular Common Folding Knife might be deemed a prohibited switchblade or gravity knife" (C ¶38).

Perez fails to allege sufficient facts to support an as-applied vagueness challenge as to him. Perez does not claim that he was unaware that his knife was capable of being functionally opened by the application of centrifugal force.  Perez does not allege which of the Gerber brand models of knives he was carrying at the time of his arrest or give a detailed description of its features, such as whether it had a tension adjustment screw (C ¶35).  He does not allege that he tried to open the knife by centrifugal force and that he was never able to do so.  Additionally, although he claims that the officers who arrested him could not open the knife "using a 'flicking' motion," he does not describe how the officers tested the knife, including such factors as: how "forcefully" they flicked it; whether they flicked it downward, or in some other direction; how many times the officers tried to flick it; or the size/weight/build of the testing officers.  Critically, too, in the Criminal Court complaint charging Perez with possessing a gravity knife, NYPD Lieutenant Luke asserted that he opened Perez's knife by the centrifugal force generated by the flick of his wrist (See Exhibit A). Perez made no mention of that fact in his instant complaint.  Nor did he controvert that officer's allegation, which placed Perez's knife squarely within the statutory definition of an illegal gravity knife.  In addition, Perez does not give any specifics about the knife he seeks to possess in the future, except that it was "similar" to the knife he possessed when arrested.

For all that Copeland and Perez did not assert, the Knife Rights organization asserted even less.  Knife Rights complains only that its nebulous "members and supporters" have been "arrested, charged, [and] prosecuted" for "carrying Common Folding Knives" (C ¶44).  These "members and supporters" wish to "possess and/or carry Common Folding Knives in New York City, but [ ] refrain from doing so based on their understanding that [they] would [face] arrest, charge, and prosecut[ion]" for "allegedly violating the State laws prohibiting switchblade and gravity knives" (C ¶45).  By creating the exceedingly broad category of "Common Folding Knife" and failing to give

any details as to which specific knives its members wish to possess, Knife Rights has obviously not alleged facts to support an as-applied vagueness challenge as to its members or supporters.

Knife Rights also alleges that retailers refuse to sell "any" or "some or all" CFKs in light of the "enforcement of the State laws prohibiting switchblade and gravity knives" (C ¶¶6, 47). And they further allege that other unidentified retailers "severely limit" the CFKs they carry by only selling CFKs "that are difficult to open" (C ¶6). However, a statute is not vague as applied because individuals or entities - to avoid going "perilously close to an area of proscribed conduct" - steer clear of the proscribed conduct. Boyce Motor Lines, 342 U.S. at 340.

Finally, even if plaintiffs had alleged facts indicating that the knives they sought to possess presented "close cases" under the New York statute that also would not make out a valid claim of as-applied vagueness. Rather, the "problem that [close cases] pose[] is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." Williams, 553 U.S. at 305-06. Indeed, 'the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.'" Powell, 523 U.S. at 93 (quoting Nash v. United States, 229 U.S. 373, 377 [1913]). And, where a statute draws a fine line between what is legal and what is not, "it is [not unfair] to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Boyce Motor Lines, 342 U.S. at 340.

For instance, in United States v. Powell, Josephine Powell challenged a federal law that criminalized the mailing of firearms "capable of being concealed on the person" as unconstitutionally vague. Powell, 423 U.S. at 88. Even though a given firearm might be more or less concealable on different people depending on their height, weight, and the type of clothing they were wearing, the Court rejected a vagueness challenge on that ground and insisted upon "the commonsense meaning that such a person would be an average person garbed in a manner to aid,

rather than hinder, concealment of weapons." Id. at 93.  The Court admonished that "straining to inject doubt as to the meaning of words where no doubt would be felt by the normal reader is not required by the 'void-for-vagueness' doctrine." Id.  Thus, Powell was properly convicted on "evidence that the weapon could be concealed on an average person." Id. at 89.

Similarly, in Sporles v. Binford, the Court upheld a statute providing that vehicles carrying "superheavy and oversize equipment" must travel by the "shortest practicable route" in the face of a vagueness challenge.  Sporles, 286 U.S. 374, 393, 397 (1932).  Here, "[t]he carrier ha[d] been given clear notice that a reasonably ascertainable standard of conduct [was] mandated," and it was "for him to insure that his actions [did] not fall outside the legal limits." Powell, 423 U.S. at 93 (citing Sporles, 286 U.S. at 393).  In short, the Court held, "[t]he requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." Sporles, 286 U.S. at 393.

New York's law criminalizing knives that have "a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force," NYPL §265.00(5), gives no less adequate notice and no less sufficient standards for enforcement than a law that proscribes the mailing of a "concealable firearm" or directs truck drivers to take "the shortest practicable route."  In sum, Plaintiffs' allegations in the complaint fall woefully short of stating a claim upon which relief can be granted.

## C.  Plaintiffs Are Not Entitled to Injunctive Relief

Plaintiffs seek injunctive as well as declaratory relief for their causes of action.  In addition to the previously mentioned failings in their claims, Plaintiffs' claims for injunctive relief fail for an additional reason.

In Steffel v. Thompson, 415 U.S. 452, 463 fn. 112 (1974), the Supreme Court stated: "We note that, in those cases where injunctive relief has been sought to restrain an imminent, but not yet

pending, prosecution for past conduct, sufficient injury has not been found to warrant injunctive relief." See Beal v. Missouri Pac. R. R. Corp., 312 U.S. 45 (1941)("The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid."). And, as has recently been observed, "in the past few decades, the Supreme Court has upheld federal injunctions to restrain state criminal proceedings only where the threatened prosecution chilled exercise of First Amendment rights." Bacon v. Neer, 631 F.3d 875 (8th Cir. 2011), *citing*, Deaver v. Seymour, 822 F.2d 66, 69 (D.C.Cir.1987) (citations omitted). Here, Plaintiffs make no First Amendment claim, nor allege any other injury so extraordinary that they would be entitled to injunctive relief.

*   *   *

In sum, Plaintiffs do not have standing and have failed to state a claim upon which relief can be granted.

CONCLUSION

DA Vance's motion to dismiss the complaint as to all Plaintiffs should be granted in all respects.

Respectfully submitted,

CYRUS R. VANCE, JR.
District Attorney
New York County

BY: _____/S/_____
    Patricia J. Bailey (PB-3362)
    Eva Marie Dowdell (ED-0925)
    Assistant District Attorney
        Of Counsel

Dated: October 12, 2011