UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KNIFE RIGHTS, INC.; JOHN COPELAND; and
PEDRO PEREZ,

                              Plaintiffs,

          -against-

CYRUS VANCE, JR., in his Official Capacity as the
New York County District Attorney; and CITY OF
NEW YORK,

                              Defendants.

No. 11 Civ. 3918 (BSJ) (RLE)

ECF Case

**MEMORANDUM OF LAW IN OPPOSITION TO THE
<u>DEFENDANT DISTRICT ATTORNEY'S MOTION TO DISMISS</u>**

David D. Jensen
*david@djensenpllc.com*

**DAVID JENSEN** PLLC
61 Broadway, Suite 1900
New York, New York  10006
Tel:  212.380.6615
Fax:  917.591.1318

## TABLE OF CONTENTS

BACKGROUND ................................................................................................... 1

DA VANCE'S ENFORCEMENT .......................................................................... 2

THE LAWS AT ISSUE ......................................................................................... 2

    a.  Prohibition on Switchblade Knives ......................................................... 3

    b.  Prohibition on Gravity Knives ................................................................ 3

    c.  The City's Unique and Expansive Interpretation ................................. 4

CUSTOMARY & ORDINARY MEANING ............................................................ 6

ARGUMENT ......................................................................................................... 6

POINT I: ALL PLAINTIFFS HAVE STANDING BECAUSE THE DA'S ENFORCEMENT CAUSES
INJURY IN FACT THAT IS BOTH TRACEABLE AND REDRESSABLE ................................ 6

    a.  Knife Rights Has Standing Because the DA's Enforcement Impairs its Resources .... 7

        1.  The Complaint Provides Ample Notice of Knife Rights' Standing ................................... 7

        2.  To Establish Standing *in Fact*, Knife Rights Need Only Show a "Perceptible
Impairment" to its Resources that is Traceable and Redressable ............................... 9

        3.  The Impact on Knife Rights is not only Perceptible, it is *Substantial* .................................. 9

    b.  Copeland and Perez Have Standing Because the DA's Enforcement Impacts
Their Ability to Purchase Common Folding Knives ........................................... 11

    c.  Knife Rights is Entitled to Preserve its Claim to Associational Standing .................... 12

POINT II: PLAINTIFFS' COMPLAINT PLAINLY STATES A CLAIM: IT IS VAGUE TO APPLY
THE SWITCHBLADE AND GRAVITY KNIFE LAWS TO COMMON FOLDING KNIVES .................... 13

    a.  The Statutes Do Not Provide Fair Notice .................................................. 14

    b.  There is No Objective Standard to Govern Enforcement ........................................... 18

    c.  Relevant Factors the DA Ignores Show that Plaintiffs' Claim is Meritorious ............ 20

    d.  The DA's "As-Applied" Objection is Ill-Conceived ...................................... 22

POINT III: THE COURT *CAN* GRANT EQUITABLE RELIEF BECAUSE THE DEPRIVATION
OF LIBERTY AND PROPERTY INTERESTS UNDER A VAGUE CRIMINAL LAW *IS*
IRREPARABLE INJURY .................................................................................... 24

CONCLUSION ................................................................................................... 25

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Aguayo v. Richardson, 473 F.2d 1090 (2d Cir. 1974) ..................................................... 12

Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977) ........................... 7, 11

Ashcroft v. Iqbal, 130 S. Ct. 1937 (2009) ..................................................................... 14

Bacon v. Near, 631 F.3d 875 (8th Cir. 2008)................................................................. 25

Beal v. Missouri Pac. R.R. Corp., 312 U.S. 45 (1941) ................................................... 24

Bennett v. Spear, 520 U.S. 154 (1997)........................................................................... 8

Betancourt v. Bloomberg, 448 F.3d 547 (2d Cir. 2006) ................................................. 20

Boutilier v. INS, 387 U.S. 118 (1967)............................................................................ 20

Bryant v. Yellen, 447 U.S. 352 (1980) ........................................................................... 11

Carter v. McKoy, no. 09 Civ. 1030, 2010 U.S. Dist. LEXIS 83246 (S.D.N.Y. Aug. 9, 2010) .......... 17

CFCU Cmty. Credit Union v. Hayward, 552 F.3d 253 (2d Cir. 2009) ........................... 20

Chicago v. Morales, 527 U.S. 41 (1999) ........................................................................ 18

Citizens United v. FEC, 130 S. Ct. 876 (2010) .............................................................. 23

Colautti v. Franklin, 439 U.S. 379 (1979) ..................................................................... 24

Connally v. Gen. Constr. Co., 269 U.S. 385 (1926) ....................................................... 14

Craig v. Boren, 429 U.S. 190 (1976)......................................................................... 11, 23

Cunney v. Bd. of Trs. of Grand View, no. 10-0485-cv, 2011 U.S. App. LEXIS 21114
    (2d Cir. Oct. 19, 2011)............................................................................................. 21

Cuomo v. Clearing House Ass'n, 129 S. Ct. 2710 (2009) ............................................... 25

Dickerson v. Napolitano, 604 F.3d 732 (2d Cir. 2010) .................................................. 24

Doe v. Reed, 130 S. Ct. 2811 (2010) ......................................................................... 22, 23

Dougherty v. Bd. of Zoning Appeals, 282 F.3d 83 (2d Cir. 2002) .................................. 11

Farrell v. Burke, no. 97 Civ. 5708, 1998 U.S. Dist. LEXIS 16896 (S.D.N.Y. Oct. 28, 1998)
    aff'd, 449 F.3d 470 (2d Cir. 2006) ........................................................................... 13

Farrell v. Burke, 449 F.3d 470 (2d Cir. 2006) .............................................................. 18

Gentile v. State Bar, 501 U.S. 1030 (1991) ............................................................... 14, 22

Golden v. Zwickler, 394 U.S. 103 (1969) ....................................................................... 12

Grayned v. Rockford, 408 U.S. 104 (1972) .................................................................... 13

Hill v. Colorado, 530 U.S. 703 (2000) ........................................................................... 14

Hormel Foods Corp. v. Jim Henson Prods., 73 F.3d 497 (2d Cir. 1996)....................... 16

Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638 (2d Cir. 1998) ........................... 8, 9

Johnson v. Fankell, 520 U.S. 911 (1997) ....................................................................... 15

Jolly v. Coughlin, 76 F.3d 468 (2d Cir. 1996) ............................................................... 24

Kolender v. Lawson, 461 U.S. 352 (1983)............................................................. 13, 15, 24

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)................................................... 7, 8

Mitchell v. Cuomo, 748 F.2d 804 (2d Cir. 1984) ........................................................... 24

Nnebe v. Daus, 644 F.3d 147 (2d Cir. 2011)......................................................... 9, 11, 13

Papachristou v. Jacksonville, 405 U.S. 156 (1972) ....................................................... 21

Parker v. Levy, 417 U.S. 733 (1974) ............................................................................ 6, 20

Posters 'N' Things, Ltd. v. United States, 511 U.S. 513 (1994)................................. 18, 22

Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898 (2d Cir. 1993) .................... 7, 8, 11

Skilling v. United States, 130 S. Ct. 2896 (2010) ................................................................ 2, 20, 23
Smith v. Goguen, 415 U.S. 566 (1974) ............................................................................................ 21
Steffel v. Thompson, 415 U.S. 452 (1974) ...................................................................................... 24
United States v. Elias, 269 F.3d 1003 (9th Cir. 2001) .................................................................. 21
United States v. Farhane, 634 F.3d 127 (2d Cir. 2011) ........................................................... 6, 20
United States v. Irizarry, 509 F. Supp. 2d 198 (E.D.N.Y. 2007) .............................................. 5, 17
United States v. Nadi, 996 F.2d 548 (2d Cir. 1993) .................................................................. 6, 21
United States v. Santillana, 109 Fed. Appx. 665 (5th Cir. 2004) ................................................ 20
United States v. Williams, 553 U.S. 285 (2008) ........................................................................... 14
Wainwright v. Stone, 414 U.S. 21 (1973) ..................................................................................... 14
Warth v. Seldin, 422 U.S. 490 (1975) ............................................................................................. 8

STATE CASES

Fletcher v. Kidder, Peabody & Co., 81 N.Y.2d 623, 601 N.Y.S.2d 686 (1993) ............................ 16
In re Michael Grudge M., 80 A.D.3d 614, 915 N.Y.S.2d 286 (2d Dept. 2011) ...................... 17, 18
People v. Argentina, 150 A.D.2d 703, 542 N.Y.S.2d 13 (2d Dept. 1989) ...................................... 3
People v. Birth, 49 A.D.3d 290, 853 N.Y.S.2d 317 (1st Dept. 2008) .......................................... 17
People v. Brannon, 16 N.Y.3d 596, 925 N.Y.S.2d 393 (2011) ............................................... 6, 15
People v. Dolson, 142 Misc. 2d 779, 538 N.Y.S.2d 393 (Onondaga Cty. Ct. 1989) ................ 4, 18
People v. Dreyden, 15 N.Y.3d 100, 905 N.Y.S.2d 542 (2010) ............................................. passim
People v. Jouvert, 50 A.D.3d 504, 856 N.Y.S.2d 84 (1st Dept. 2008) ......................................... 17
People v. Mott, 137 Misc. 2d 757, 522 N.Y.S.2d 429, amended at 1987 N.Y. Misc. LEXIS 2528
     (Jefferson Cty. Ct. 1987) ............................................................................................................ 4
People v. Neal, 79 A.D.3d 523, 913 N.Y.S.2d 192, (1st Dept. 2010) ......................................... 17
People v. Smith, 309 A.D.2d 608, 765 N.Y.S.2d 777 (1st Dept. 2003) .................................. 17, 19
People v. Zuniga, 303 A.D.2d 773, 759 N.Y.S.2d 86 (2d Dept. 2003) .......................................... 4

STATUTES

42 U.S.C. § 1983 .............................................................................................................................. 13
N.Y. Penal L. § 265.00 .................................................................................................................. 1, 3
N.Y. Penal Law § 265.01 ................................................................................................................ 16

OTHER AUTHORITIES

1954 N.Y. Laws ch. 268 ................................................................................................................... 3
1958 N.Y. Laws ch. 107 ................................................................................................................... 3
1958 N.Y. "Bill Jacket," A. 913-1796 (N.Y. 1958) ................................................................... 3, 20
Am. Knife & Tool Inst., AKTI Approved Knife Definitions (2011) ................................................ 6
Is NYPD's Knife Crackdown Just a Tad Overzealous?, Gothamist (Jan. 1, 2011) .......................... 5

RULES

Fed. R. Civ. P. 8 ............................................................................................................................... 7
Fed. R. Civ. P. 12 .................................................................................................................... 1, 14, 20

This case concerns New York City's (the "City's") unique interpretation of State laws that prohibit "gravity knives" and "switchblade knives" to prohibit ordinary folding pocket knives. As applied by the City, these State laws do not provide constitutionally adequate notice that ordinary folding knives that are designed to resist opening might be deemed to be prohibited.

Defendant District Attorney Vance (the "DA" or "DA Vance") seeks to dismiss the Complaint for lack of standing and failure to state a claim. However, Plaintiffs clearly have standing because the DA's actions result in substantial impairments to Knife Rights' resources, and also because they impact the individual Plaintiffs' ability to purchase lawful knives. Moreover, the Complaint plainly states a claim, and consideration of the *merits* (as the DA implores) shows that the "standard" that Defendants use to apply the State laws at issue to common folding knives is wholly subjective and indeterminate. It is literally possible for one knife to be simultaneous legal and illegal, and a person has no means of conforming his or her conduct to the law's expectations. While the DA's motion necessarily fails because it relies on selectively construing the facts in the DA's favor, rather than in the Plaintiffs' favor (as Rule 12(b)(6) mandates), a consideration of the merits shows how far off the mark the DA's self-serving characterizations are.

<u>BACKGROUND</u>

A few years ago the City began using the "gravity knife" law to prohibit ordinary folding knives in the City.  <u>See</u> Complaint (Doc. No. 1) ¶¶ 1, 3.  A gravity knife is a knife with "a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force" and which then "locks" in its open position.  N.Y. Penal L. § 265.00(5).  If New York City Police Department ("NYPD") officers find someone with a folding knife, they will attempt to open the knife by forcefully "flicking" the knife downwards and then stopping abruptly.  <u>See</u> Complaint ¶ 3.  If an officer can manage to get the blade to open, then police assert that the folding knife is a prohibited gravity knife and charge Criminal Possession of a Weapon.  <u>See</u> <u>id.</u>

Today, almost all folding knives are built with a mechanical bias in favor of the closed position.  See id. ¶¶ 1, 3.  To open the blade, a person must overcome this bias, normally by physically manipulating the blade open.  See id.  Plaintiffs refer to these knives as "common" folding knives.  The constitutional problem is that when Defendants apply the gravity knife law to this class of knives, proof of a violation turns on an individual police officer's unique ability to perform the "wrist-flick"[1] maneuver.  This ability varies greatly from person to person, depending most notably on the strength and skill of the individual, but also on the characteristics of the knife, which can vary among units of the same make and model, and which can also change on a specific knife over time or by using a tension adjustment screw present on some knives.  See id. ¶ 22.  It is theoretically possible to open *any* common folding knife with a "wrist-flick" that is sufficiently fast and abrupt.

## DA VANCE'S ENFORCEMENT

In June 2010 DA Vance took matters to a new level when he announced that the sale of a number of a number of common folding knives violated the gravity knife law – *and also* the State law prohibiting *switchblade* knives.  See Complaint ¶¶ 39-40; see also Ex. A, June 6, 2010 Press Release.  DA Vance has supplied no rationale for concluding that the common folding knives were switchblade knives – although the DA's motion (remarkably) faults Plaintiffs for failing to include these unknown details.  See DA Br. p. 13.  The result of DA Vance's actions and continued threat of enforcement is to significantly reduce the availability of common folding knives in the City – and this directly and significantly impacts Plaintiffs.  See Complaint ¶¶ 31, 38, 46-47.

## THE LAWS AT ISSUE

Both "the origin and subsequent application" of a law show whether it is vague to apply that law in a particular way.  See Skilling v. United States, 130 S. Ct. 2896, 2928 (2010).  Because Plaintiffs

---

[1] New York State courts have used the term "wrist-flick," and so Plaintiffs use it as well – but it does not fully convey the amount of arm, wrist, and shoulder strength involved in the maneuver.

challenge the gravity knife and switchblade laws only to the extent they are applied to common folding knives, the Court must identify the "core" of each prohibition.  See id.

### a.  Prohibition on Switchblade Knives

New York law defines a "switchblade knife" as "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife."  N.Y. Penal Law § 265.00(4).  New York first prohibited switchblade knives in 1954, and the definition remains substantively the same.  See 1954 N.Y. Laws ch. 268., sec. 1.  Very few State judicial decisions discuss the switchblade definition.  See, e.g., People v. Argentina, 150 A.D.2d 703, 704, 542 N.Y.S.2d 13, 14 (2d Dept. 1989).

### b.  Prohibition on Gravity Knives

State law defines a "gravity knife" as "any knife which has a blade which is released from the handle or sheath thereof *by the force of gravity or the application of centrifugal force* which, when released, is locked in place by means of a button, spring, lever or other device."  N.Y. Penal L. § 265.00(5) (emphasis added).  The two definitional elements are that the blade must be "released from the handle or sheath by the force of gravity or the application of centrifugal force" and must "lock[] in place by means of a button, spring, lever or other device."  New York first prohibited gravity knives in 1958, and the definition remains the same.  See 1958 N.Y. Laws ch. 107, sec. 1, § 1896.

The 1958 Sponsor's Memorandum explained that gravity knives had "come into being as a circumvention" of the prohibition on switchblade knives and were "the successor of the switchblade knife."  Ex. B, 1958 N.Y. "Bill Jacket," A. 913-1796, at 3 (N.Y. 1958).  A memorandum from Attorney General Louis J. Lefkowitz described gravity knives as "knives containing blades automatically opened by the force of gravity."  Id. at 14.

The first time that State courts meaningfully discussed the definitional requirements of a "gravity knife" was in the late 1980s, when two upstate County Courts ruled that the gravity knife

law did not cover Balisong (or "butterfly") knives.  See People v. Dolson, 142 Misc. 2d 779, 780, 538

N.Y.S.2d 393, 394 (Onondaga Cty. Ct. 1989); People v. Mott, 137 Misc. 2d 757, 522 N.Y.S.2d 429,

amended at 1987 N.Y. Misc. LEXIS 2528, *2 (Jefferson Cty. Ct. 1987).  A Balisong is not a common

folding knife; rather, it is a type of folding knife that has a two-piece, split handle that folds back to

reveal the knife blade, and does *not* resist opening.  See id.[2]  Mott was the first case to address the

issue, and it found that a Balisong did not meet *either* of the definitional elements of a gravity knife.

First, "[a]lthough a person with the requisite skill can *rapidly* open a Balisong knife with one hand,

the knives do not have blades which open *automatically* by operation of inertia, gravity or both."

Mott, 1987 N.Y. Misc. LEXIS 2528 at *2-3 (emphasis added).  Second, "the blade of a Balisong

does not lock into place at the moment it is released," but instead needs physical manipulation.  Id.

The Mott court also observed that "the legislature was extremely careful and specific in

naming which devices would be unlawful" as "per se weapons," and had named specific weapons

like "plum ballistic knives" and "chuka sticks."  Id. at *3-4.  If the legislature had "desired to outlaw

[Balisongs] it would have done so by name."  Id. at *4.  Two years later, an Ondondaga County

Court followed Mott's reasoning to reach the same conclusion.  See Dolson, 142 Misc. 2d at 780-81,

538 N.Y.S.2d at 394-95.  The first time an Appellate Division addressed the definition was 2003,

when the Second Department likewise concluded it did not cover a Balisong.  See People v. Zuniga,

303 A.D.2d 773, 774, 759 N.Y.S.2d 86, 87 (2d Dept. 2003).

### c.  The City's Unique and Expansive Interpretation

The City's expansion of the gravity knife law to include common folding knives resulted in a

substantial uptick in the volume of reported "gravity knife" cases beginning in the year 2006.[3]  It has

---

[2] To the extent the Court finds additional background information helpful, the "Wikipedia" entry for Balisong knives is essentially accurate.  See http://en.wikipedia.org/wiki/Balisong_(knife) (last visited Nov. 10, 2011).

[3] Of the 130 New York State cases in the Lexis database that contain the term "gravity knife" as of Nov. 10, 2011, more than half were decided in or after 2006, and a strong majority of these originate from New York City.

also attracted media attention,[4] as well as discussions on the internet.[5]  One of the first court decisions to address this expansion of the gravity knife law was <u>United States v. Irizarry</u>, 509 F. Supp. 2d 198 (E.D.N.Y. 2007), which concerned whether NYPD officers could detain a man for carrying a folding knife.  <u>See id.</u> at 199-200.  Judge Weinstein concluded that the "Husky"-brand folding utility knife at issue there did not fall within the Penal Law's definition of gravity knife and suppressed evidence found in the man's detention and search.  <u>See id.</u> at 209-10.

The significance of <u>Irizarry</u> is that the arresting officer was able to open the knife with a "wrist-flick" motion in court, and the court specifically found the knife was "capable of being opened by an adept person with the use of sufficient centrifugal force."  <u>Id.</u> at 204.  However, the court also found that the knife was "not designed to open by use of centrifugal force" and had a "construct[ion] so that it has a bias to close."[6]  <u>Id.</u> at 205.  (In other words, the knife was a common folding knife.)  The ease with which it could be opened (in any manner) depended on the degree of mechanical resistance present in the blade, and while increasing that resistance would make it more difficult to "wrist-flick" the blade open, it would also make the knife less practical as a tool.  <u>See id.</u>

Other issues aside, it is unavoidable that the <u>Irizarry</u> court found that the basic *ability* to open a folding knife with a "wrist-flick" was not enough.  Something more was needed.

The New York Court of Appeals picked up from here when it addressed the gravity knife definition for the first time in 2010.  <u>See</u> <u>People v. Dreyden</u>, 15 N.Y.3d 100, 905 N.Y.S.2d 542 (2010).  The <u>Dreyden</u> court held that a charging document needed to include "nonconclusory allegations establishing the basis of the arresting officer's belief that defendant's knife was a gravity knife."  <u>Id.</u> at 102-03.  Citing *only* Judge Weinstein's <u>Irizarry</u> decision, the court explained that the

---

[4] <u>See, e.g.</u>, <u>Is NYPD's Knife Crackdown Just a Tad Overzealous?</u>, Gothamist (Jan. 1, 2011), <u>available at</u> <u>http://gothamist.com/2011/01/27/is_nypds_knife_crackdown_just_a_tad.php</u> (last visited Nov. 10, 2011).
[5] <u>See, e.g.</u>, <u>http://www.bladeforums.com/forums/showthread.php/817584-Axis-lock-a-gravity-knife</u> (last visited Nov. 10, 2011), where a claimed NYPD officer explains that in the City, the gravity knife law "is construed to apply to ANY folding knife with a blade that locks open."
[6] DA Vance conveniently ignores these parts of Judge Weinstein's analysis of the New York statute, instead pretending that these concepts are novel, have been invented by Plaintiffs, and bear no relation to the statute.

gravity knife statute "distinguishes gravity knives from certain folding knives that cannot *readily* be opened by gravity or centrifugal force." Id. at 103-04 (emphasis added). The Court of Appeals' second decision was People v. Brannon, 16 N.Y.3d 596, 925 N.Y.S.2d 393 (2011), where the court concluded that police could stop people seen with folding knives to determine whether the knives were gravity knives or were instead "a similar, but legal object, such as a pocketknife." Id. at 602.

### CUSTOMARY & ORDINARY MEANING

Another important consideration is ordinary and customary meaning, as well as understanding in the industry, because this is evidence of the meaning that language should have for a reasonable person. See Parker v. Levy, 417 U.S. 733, 754 (1974); United States v. Farhane, 634 F.3d 127, 143 (2d Cir. 2011); United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993). The original "gravity knife" was a World War II German design that was not a folding knife at all. See Complaint ¶ 17. Rather, the blade *fell* downward from the knife's body when activated. See id. Modern industry definitions recognize traditional gravity knives, and they sometimes recognize a second type of "gravity knife" that is a folding knife that does *not* resist opening. See Ex. C, Am. Knife & Tool Inst., AKTI Approved Knife Definitions at 4-5 (2011).

### ARGUMENT

#### POINT I:
#### ALL PLAINTIFFS HAVE STANDING BECAUSE THE
#### DA'S ENFORCEMENT CAUSES INJURY IN FACT
#### THAT IS BOTH TRACEABLE AND REDRESSABLE

Knife Rights is a leading advocate for people who use knives and edged tools, and it has expended, and continues to expend, significant organizational resources to respond to DA Vance's actions. Moreover, Plaintiffs Copeland and Perez independently have standing because the DA's enforcement impacts their ability to purchase a new common folding knife. Of course, once the Court has established the standing of at least one of the Plaintiffs, it does not need to further

address the issue.  See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 (1977).

And there is abundant support for each Plaintiffs' standing.

> **a.  Knife Rights Has Standing Because the DA's Enforcement Impairs its Resources**

It is well established that a person (including an organization) has standing if they (1) suffer

"injury in fact" that is (2) "traceable" to the defendant's conduct, and if (3) the court can redress the

injury.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Ragin v. Harry Macklowe Real

Estate Co., 6 F.3d 898, 904 (2d Cir. 1993).

> 1.  The Complaint Provides Ample Notice of Knife Rights' Standing

The DA's argument is that "Plaintiff Knife Rights has failed to *properly allege* it has standing."

DA Br. p. 9 (emphasis added).  While Knife Rights can readily show standing *in fact* – that DA

Vance's actions do indeed directly and tangible impact it – the DA's "properly allege" motion fails

for the simple reason that a Complaint need only include "a short and plain statement of the

grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(1)-(2).  Here, the Complaint provides ample notice

that Plaintiff Knife Rights, an organization, "brings this action on behalf of both itself and its

members."  Complaint ¶ 43.  The Complaint explains that "[o]ne of the core purposes of Knife

Rights is to vindicate the legal rights of individuals and businesses who are unable to act on their

own behalf."  Id.  And, the Complaint explains that the DA's enforcement injures businesses that

deal with common folding knives in New York City, and threatens individuals, because it creates

uncertainty as to what is legal in the City.  See id. ¶¶ 46-47.  This is ample notice that the DA's

actions injure Knife Rights' members and supporters, that injury then results to Knife Rights, and

that Knife Rights seeks relief on its own behalf.

The DA offers *no* authority that supports its supposed legal rule that would require an

organizational plaintiff to effectively provide *discovery* in a pleading by intricately detailing all of the

specific facts that give rise to its standing in its complaint.  The Supreme Court has eschewed the DA's claim for a heightened pleading requirement, explaining that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  Lujan, 504 U.S. at 561 (quotation and alteration omitted); accord Bennett v. Spear, 520 U.S. 154, 168 (1997).  While a party must ultimately establish standing in fact, it can rely upon "affidavit or other evidence" and "evidence adduced at trial" to do so.  Lujan, 504 U.S. at 561 (quotation omitted).  The Declarations submitted herewith supply that other evidence.

The authorities the DA *does* rely upon do not support the existence of its supposed rule of pleading particularity.  If anything, the cases show that an organizational plaintiff does *not* need to particularly describe the precise bases for its standing in its complaint.  The Court in Warth v. Seldin, 422 U.S. 490 (1975) (DA Br. p. 9), said only that "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing," but the Court also observed that all facts must to be construed in favor of the plaintiff at the pleading stage.  Id. at 501.  And, in Ragin v. Harry Macklowe Real Estate Co. (DA Br. p. 10), the complaint contained only the allegation that the organization "ha[d] been frustrated" by and "had to devote significant resources to identify and counteract the defendant's racially discriminatory steering practices."  Ragin, 6 F.3d at 905 (quoting complaint) (alteration omitted).  Both the District Court and the Second Circuit relied upon testimony provided at trial to establish the facts showing standing.  See id.  Just the same, in Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638 (2d Cir. 1998) (DA Br. p. 9), the complaint alleged only that the organization's exclusion from a parade had damaged it "in many ways," including "ridicule" and "isolation."  Id. at 650 (quoting complaint).  Citing the need to "broadly interpret[]"

complaints, the Second Circuit concluded the "complaint sets forth sufficient general factual allegations of harm."  Id.

2.  To Establish Standing *in Fact*, Knife Rights Need Only Show a "Perceptible Impairment" to its Resources that is Traceable and Redressable

To the extent the Court finds it necessary to address whether Knife Rights has standing *in fact*, Knife Rights can easily meets its burden of showing a "perceptible impairment" to its resources that is traceable to the DA and redressable by this Court.  Indeed, the Second Circuit has recently emphasized that "only a *perceptible impairment* of an organization's activities is necessary for there to be an injury in fact."  Nnebe v. Daus, 644 F.3d 147, 157 (2d Cir. 2011) (emphasis added).  The Nnebe case concerned New York City laws that authorized the suspension of taxi cab licenses without a prior hearing.  See id. at 150-51.  The Second Circuit found standing because the organization "infrequently counsels drivers whose licenses have been suspended pursuant to the challenged policy."  Id. at 156 (quotation omitted).  Even though this occurred only a "few" times a year and the organization could not identify *any* priorities that had suffered, the Second Circuit nevertheless found that the counseling amounted to "some perceptible opportunity cost" that the organization "expended" in consequence of the policy.  Id. at 157.

3.  The Impact on Knife Rights is not only Perceptible, it is *Substantial*

For Plaintiff Knife Rights, the direct result of the DA's enforcement has been, and continues to be, the substantial and ongoing expenditures of the organization's time, energy, and money.  Knife Rights can show *multiple* injuries that are not only "perceptible," but *substantial*.

Since the DA's June 2010 announcement, multiple members and supporters of Knife Rights, and also members of the general public, have regularly contacted Knife Rights to inquire about the DA's actions and the legality of knives in the City, and to request that Knife Rights take action to clarify the law.  Doug Ritter, the Chairman of Knife Rights, explains that individuals involved in the industry first approached Knife Rights in June 2010 at a nationwide knife show (the Blade Show)

held annually in Atlanta, and alerted him to the DA's actions.  See Dec. of Doug Ritter ("Ritter

Dec.") ¶ 6.  At the Blade Show, specific (identified) members of the industry requested information

and guidance regarding the legality of common folding knives in the City, and also that Knife Rights

take action to clarify the law.  See id. ¶¶ 8-9.  Since then, many other members of the knife industry

have contacted Knife Rights to similarly request information and guidance, and to request that Knife

Rights clarify the law.  See id. ¶¶ 17-19.  Mr. Ritter details 11 companies that have made these

requests.  See id. ¶ 17.  In addition, members of the public have contacted Knife Rights to inquire

about the legality of knives and to request assistance with knife charges.  See id. ¶ 12.  Finally, a knife

show organizer that used to hold shows in the City also sought Knife Rights' assistance to address

the DA's actions.  See id. ¶¶ 14, 16.  To eliminate any doubt, Plaintiffs are submitting corroborating

Declarations from five of the companies that requested that Knife Rights assist them in trying to

resolve the uncertainties that DA Vance's enforcement create:  Ka-Bar Knives, Inc. in Olean, New

York; Benchmade Knife Co. and Columbia River Knife & Tool Co., both in Oregon; KnifeWorks,

Inc., in Louisiana; and Taylor Brands LLC, in Tennessee.

     Knife Rights has expended, and continues to expend, significant organizational resources to

respond to these requests.  See id. ¶ 21.  First, Knife Rights spends its time and energy to counsel

with individuals making requests, including the requests detailed above.  See id. ¶ 20.  Beyond this,

Knife Rights representatives have traveled to three (additional) industry shows – two customarily

held in the City, but relocated to New Jersey as a result of DA Vance's actions(!) – for the primary

purpose of addressing articulated concerns about DA Vance's use of the switchblade and gravity

knife laws.  See id. ¶¶ 10, 13-16.  Knife Rights also traveled to the City to meet with impacted

retailers and address their concerns, and also to learn more about the DA's actions.  See id. ¶ 11.

Knife Rights retained a criminal attorney to advise it on the DA's enforcement, and it also retained

defense counsel for some of its members.  See id. ¶ 12.  All of these activities have consumed

significant amounts of Knife Rights' time, energy, and money and have impaired Knife Rights' ability to address its other organizational goals.  See generally id. ¶¶ 21-23.

    These injuries are more than enough to establish Knife Rights' standing to challenge the DA's enforcement actions.  Indeed, under Nnebe, any *one* of these injuries would be independently sufficient:  The court in Nnebe found an adequately "perceptible" injury where the organization "infrequently" counseled affected drivers, but could not identify any impact to organizational priorities.  Nnebe, 644 F.3d at 157.  The court in Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898 (2d Cir. 1993) (DA Br. p. 10), found an adequately "perceptible" injury where the organization spent time investigating the conduct and filing an administrative complaint.  See id. at 905.

    Knife Rights' demonstration is far more substantial and demonstrates a clear basis for standing.  Hence, even were the Court to conclude that the Complaint requires further detail, amendment would cure this non-substantive issue, and the Court should grant leave to amend.  See Dougherty v. Bd. of Zoning Appeals, 282 F.3d 83, 89-92 (2d Cir. 2002).

### b.  Copeland and Perez Have Standing Because the DA's Enforcement Impacts Their Ability to Purchase Common Folding Knives

    Plaintiffs Copeland and Perez also have standing because the would-be purchasers of an item have standing to challenge the application of a law or policy restricts the item's sale.  In Craig v. Boren, 429 U.S. 190 (1976), both beer sellers and underage persons (who would otherwise consummate beer transactions) had standing to challenge a drinking-age law that restricted the sale of 3.2% beer.  See id. at 197; see also Bryant v. Yellen, 447 U.S. 352, 366-67 (1980) (plaintiffs would purchase land but for acreage limitation); Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 262-63 (1977) (plaintiff had contract to purchase property that was contingent on repeal of zoning law).  Here, Plaintiffs Copeland and Perez would purchase common folding knives similar to the ones the NYPD took, but they cannot find them for sale in the City.  See Complaint ¶¶ 31, 38. The DA's enforcement results in retailers refusing to stock the knives.  See id. ¶¶ 46-47.

The DA claims (p. 11) that the Complaint is defective because it does not include "the make and model" of the common folding knives that Copeland and Perez would like to purchase and does not "specifically describe" them in other (unspecified) ways.  However, the Complaint already describes the knives that Copeland and Perez would purchase in significant detail.  Copeland would like to replace a Benchmade brand folding knife "with a blade of approximately 3 inches and a locking mechanism that locks the blade in place once it is in its fully open position," as well as "a stud mounted on the blade that allows a user to . . . swivel the blade open with his or her thumb."  Complaint, ¶¶ 26-27, 31.  Perez seeks to replace a Gerber brand folding knife "with a blade of approximately 3.75 inches and a 'linerlock' locking mechanism that locks the blade in place once it is in its fully open position," which also has "a stud mounted on the blade that allows a user to . . . swivel the blade open with his or her thumb."  Id. ¶¶ 34-35, 38.  This is *already* more than the "short and plain statement" that Rule 8(a) requires.

The only authority the DA cites is Golden v. Zwickler, 394 U.S. 103 (1969), but this case is readily distinguished.  The plaintiff in Golden sought to distribute anonymous handbills for a specified U.S. Representative in an upcoming election.  See id. at 105-06.  However, after the plaintiff filed his action, the Representative left the House.  See id. at 106.  Because the Representative no longer sought re-election, the Supreme Court concluded that the plaintiff lacked standing – it was now "wholly conjectural that another occasion might arise when Zwickler might be prosecuted for distributing the handbills referred to in the complaint."  Id. at 109.  In marked contrast, the present case concerns the DA's *ongoing* threat of enforcement.

c. **Knife Rights is Entitled to Preserve its Claim to Associational Standing**

The Second Circuit recently concluded that its 1974 ruling in Aguayo v. Richardson, 473 F.2d 1090 (2d Cir. 1974), is still "good law," and that organizations do not have standing to bring § 1983 actions on behalf of their members and against State officials.  See Nnebe v. Daus, 644 F.3d

147, 156 (2d Cir. 2011).  Plaintiffs respectfully submit that they believe there is a realistic chance that the <u>Aguayo</u> rule will be overturned, and in the event this occurs, Knife Rights has pleaded *both* bases for standing to preserve its claim to associational standing.

The DA tries to make much out of <u>Nnebe</u> and the Second Circuit's continued disclaimer of associational standing (pp. 9-10), but Knife Rights has already independently demonstrated standing on its own behalf, so the issue of associational standing is moot.  Knife Rights only needs to satisfy *one* theory of standing to proceed with its case.  <u>See</u> <u>Nnebe</u>, 644 F.3d at 156.

**POINT II:**
**PLAINTIFFS' COMPLAINT PLAINLY STATES A CLAIM:**
**IT IS VAGUE TO APPLY THE SWITCHBLADE AND**
**<u>GRAVITY KNIFE LAWS TO COMMON FOLDING KNIVES</u>**

The Due Process Clause prohibits States and localities from enforcing legal prohibitions that "are not clearly defined."  <u>Grayned v. Rockford</u>, 408 U.S. 104, 108 (1972); <u>see also</u> <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983).  Federal law provides a cause of action against State officials who act under color of law to deprive people of their constitutional protections.  <u>See</u> 42 U.S.C. § 1983. The Complaint alleges that DA Vance threatens to use the switchblade and gravity knife laws to prosecute businesses that sell common folding knives in the City, and cites as a specific example the enforcement actions that the DA announced in June 2010.  <u>See</u> Complaint ¶¶ 3-5, 39-42.  The Complaint explains that "because the mechanism of a Common Folding Knife resists opening from the closed position, the determination of whether the blade of any particular Common Folding Knife (or class of Common Folding Knives) opens 'readily' is intrinsically vague."  <u>Id.</u> ¶ 22.  It is therefore quite clear that the Complaint states a valid claim on its face.  <u>See, e.g.</u>, <u>Farrell v. Burke</u>, no. 97 Civ. 5708, 1998 U.S. Dist. LEXIS 16896, *5 (S.D.N.Y. Oct. 28, 1998) ("To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the Defendants acted under color of state law to deprive him of his constitutional or federal rights.") <u>aff'd</u>, 449 F.3d 470 (2d Cir. 2006).

The DA's motion relies on Rule 12(b)(6), but this is only a requirement that a Complaint "state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), with all facts construed in the Plaintiffs' favor, see Ashcroft v. Iqbal, 130 S. Ct. 1937, 1949 (2009). This motion fails, for it relies on mischaracterizing Plaintiffs' claim, construing the facts in the DA's own favor, and ignoring considerations that bear directly on the merits of Plaintiffs' claim.

While Plaintiffs' Complaint very plainly states a valid claim for relief, an objective analysis of the void-for-vagueness doctrine, along with the facts and circumstances in the Complaint, amply demonstrates that Plaintiffs' claim is meritorious.

a.  **The Statutes Do Not Provide Fair Notice**

The first question in void-for-vagueness analysis is whether the terms of the law provide fair notice. See Hill v. Colorado, 530 U.S. 703, 732 (2000). A prohibition must be clear enough "that men of common intelligence" do not need to "guess at its meaning and differ as to its application." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926). A law is unconstitutionally vague when there is "indeterminacy of precisely what" constitutes a violation. United States v. Williams, 553 U.S. 285, 306 (2008). The Supreme Court's decision in Gentile v. State Bar, 501 U.S. 1030 (1991), provides an instructive example of a law that failed to provide adequate notice. The State bar rule at issue there prohibited lawyers from commenting publicly on pending criminal cases, but exempted comments about the "general nature" of the offense that were provided "without elaboration." Id. at 1048. The Court concluded that the provision did not provide adequate notice "because 'general' and 'elaboration' are both classic terms of *degree*," and a "lawyer has no principle for determining when his remarks pass from the safe harbor of the general to the forbidden sea of the elaborated." Id. at 1048-49 (emphasis added).

To *construe* a State law, the Court must *begin* with the decisions of the highest court of the State. See Wainwright v. Stone, 414 U.S. 21, 22-23 (1973). The Court "must take the statute as

though it read precisely as the highest court of the State has interpreted it." Id. (quoting Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 273 (1940)); see also Johnson v. Fankell, 520 U.S. 911, 916 (1997). The Court should only resort to lower court decisions if it lacks authority from the State's high court. See Kolender, 461 U.S. at 355 n.4.

The decisions of the New York Court of Appeals establish two basic principles that pertain to the distinction between a lawful folding knife and a prohibited gravity knife. People v. Brannon establishes that what differentiates a gravity knife is the manner in which a gravity knife opens, and People v. Dreyden establishes that the gravity knife definition distinguishes gravity knives from folding knives that cannot be opened "readily." See supra pp. 5-6.

The DA disputes the "readily" requirement and instead contends that there is a "simple, straightforward definition of a gravity knife has been applied by New York Courts and juries for decades," to wit: "the blade must open and lock into place in response to gravity and/or the application of centrifugal force." DA Br. p. 14. According to the DA, a gravity knife is simply "a knife that *can* be opened by centrifugal force." Id. p. 13 (emphasis added). If *any* police officer or DA investigator *can* cause a folding knife's blade to open with a "wrist-flick," even just once out of multiple attempts, then the folding knife *is* a gravity knife, in the DA's self-affirming view. Whether the knife's blade opens "readily" is irrelevant.

To make this argument, the DA *ignores* Brannon and oversimplifies Dreyden. See DA Br. pp. 15-16 & n.6. The DA places the core of its argument in a footnote(!) in which it cites to conventional dictionaries and contends that the "readily" statement "was not part of the Court's ruling, but rather an observation made by the Court in reviewing the sufficiency of a misdemeanor complaint." Id. p. 16 n.6.

Preliminarily, it is hard to understand why the DA thinks that its proffered "*anyone* can open the knife" standard is less vague than Dreyden's "*readily* opens" standard. Under either approach, a

-15-

person cannot determine whether their folding knife is legal because they cannot know whether

some police officer will be *capable* of opening the knife, or alternatively, whether some police officer

will conclude that the knife opens "*readily*."  Under either approach, a person must attempt to

conform his or her conduct to an indeterminate standard.  If anything, the DA's alternative standard

only shows the extent to which the standard *is not definite*.

Setting this aside, the DA's interpretation is incorrect as a matter of law, and the DA offers

no authority to support limiting Dreyden.  *Stare decisis* applies to Dreyden's "readily" statement

because the statement was "essential to the Court's ultimate holding."  Fletcher v. Kidder, Peabody

& Co., 81 N.Y.2d 623, 637, 601 N.Y.S.2d 686, 693 (1993); see also Hormel Foods Corp. v. Jim

Henson Prods., 73 F.3d 497, 508 (2d Cir. 1996).  Dreyden concerned the legal sufficiency of a

criminal complaint that contained "only a conclusory statement that the police officer had observed

defendant in possession of a gravity knife."  Dreyden, 15 N.Y.3d at 102.  The Second Department

found the language adequate because "the accusatory instrument did not have to contain the detailed

definition set forth in Penal Law § 265.00 (5), nor did it have to state that the knife was operational,

as the term 'gravity knife' is self defining."  People v. Dreyden, 23 Misc. 3d 34, 35, 879 N.Y.S.2d

283, 284 (2d Dept. 2009) rev'd, 15 N.Y.3d 100, 905 N.Y.S.2d 542 (2010).  The Court of Appeals

*reversed*, explaining that "[n]ot every knife is a weapon for purposes of Penal Law § 265.01(1), which

specifically outlaws possession of a gravity knife, among other weapons."  Recounting the definition,

the court then stated that this "definition *distinguishes* gravity knives from certain folding knives that

cannot *readily* be opened by gravity or centrifugal force."  Dreyden, 15 N.Y.3d at 103-04 (emphasis

added).  The court then concluded that the charging document was defective because it supplied "no

factual basis for the officer's conclusion that the knife was a gravity knife, as opposed to a pocket

knife, craft knife or other type of knife that does not fit the definition."  Id. at 104.

Hence, the charging document was defective *because* it failed to establish a basis for meeting the definition that the court articulated. That definition was essential to the holding.

Any lingering doubt is belied by the fact that the Court of Appeals supported its "readily" statement *solely* with a citation to the decision in United States v. Irizarry, 509 F. Supp. 2d 198 (E.D.N.Y. 2007), in which (as discussed) the court concluded that a folding utility knife was not a gravity knife – even though it was "capable of being opened by an adept person with the use of sufficient centrifugal force," and the arresting officer was able to perform the procedure in court. See id. at 204; Dreyden, 15 N.Y.3d at 104. Judge Weinstein ruled that the mere *ability* to open a folding knife with a "wrist-flick" was not enough. See supra p. 5. Thus, when the court cited Irizarry to support its statement, the import was that the *ability* to open a knife with a "wrist-flick" is not enough. The knife must open "readily." The DA ignores this.

The DA's simplified definition ultimately hangs on the DA's citation to conclusory statements in a handful of Appellate Division decisions. See DA Br. pp. 15-16. These decisions all contain generic and conclusory statements that the evidence was *sufficient to support a conviction* because (in substance) a police officer could cause the knife at issue to open in a courtroom demonstration. However, none of these decisions describe the details of that evidence – and they can hardly be taken as overruling Dreyden, given that all but one of the cases *precede* Dreyden. See People v. Neal, 79 A.D.3d 523, 524, 913 N.Y.S.2d 192, 194 (1st Dept. 2010); People v. Jouvert, 50 A.D.3d 504, 505, 856 N.Y.S.2d 84, 85 (1st Dept. 2008); People v. Birth, 49 A.D.3d 290, 290, 853 N.Y.S.2d 317, 318 (1st Dept. 2008); People v. Smith, 309 A.D.2d 608, 609, 765 N.Y.S.2d 777, 777 (1st Dept. 2003). Similarly, the court in In re Michael Grudge M., 80 A.D.3d 614, 915 N.Y.S.2d 286 (2d Dept. 2011), concluded only that a supporting deposition was adequate because it contained "a description of the gravity knife and its operation." Id. at 615, 915 N.Y.S.2d at 287. And, Carter v. McKoy, no. 09 Civ. 1030, 2010 U.S. Dist. LEXIS 83246 (S.D.N.Y. Aug. 9, 2010), merely reiterates that State courts have

upheld convictions where the officer could "demonstrat[e]" the ability to "wrist-flick" a knife open. See id. at *14.

These cases do *not* address the actual definitional requirements of a gravity knife, they do *not* purport to overrule or limit Dreyden, and they do *not* establish the DA's definition.

One of the DA's more remarkable claims is that its "wrist-flick" gravity knife definition has been in place and applied "for decades." See DA Br. p. 14. The DA cites two decisions to support this proposition – but both were decided within the past 16 months, and neither contains any statement that would support the DA's "decades" claim. See Dreyden, 15 N.Y.3d 100, 905 N.Y.S.2d 542; Michael Grudge M., 80 A.D.3d 614, 915 N.Y.S.2d 286.

The only case that the DA cites that concerns enforcement in past "decades" is the Onondaga County Court's decision in People v. Dolson, 142 Misc.2d 779, 538 N.Y.S.2d 393 (Onondaga Cty. Ct. 1989) (DA Br. p. 14). But Dolson, discussed supra pp. 3-4, did not concern any kind of common folding knife at all, but instead addressed Balisong (or "butterfly") knives. See id. at 780, 538 N.Y.S.2d at 394. It is unclear how this case supports the DA's position, as the County Court concluded that a Balisong did *not* meet the statutory definition of gravity knife, even though it was *possible* for a (skilled) person to open a Balisong quickly by using a "wrist-flicking" maneuver. See id. at 780-81, 538 N.Y.S.2d at 394.

### b. There is No Objective Standard to Govern Enforcement

The second question in void-for-vagueness analysis is whether "objective criteria" govern the law's application. See Posters 'N' Things, Ltd. v. United States, 511 U.S. 513, 526 (1994). The laws must "generally provide[] sufficient guidance to eliminate the threat of arbitrary enforcement." Farrell v. Burke, 449 F.3d 470, 493 (2d Cir. 2006). A statute cannot "necessarily entrust[] lawmaking to the moment-to-moment judgment of the policeman on his beat." Chicago v. Morales, 527 U.S. 41, 60 (1999) (quoting Kolender, 461 U.S. at 359).

There is no *objective* standard to govern the day-to-day determination of whether a folding knife that resists opening is a gravity knife.  To the contrary, the standard – whether it is "opens readily" or "can be opened" – is inherently subjective and depends upon the skill, strength, and judgment of the person attempting the "wrist-flick" maneuver.  This standard invites arbitrary and discriminatory enforcement:  if a police officer decides that a person is worthy of prosecution, he or she can "try hard" to open the knife, and perhaps request assistance from another officer who is especially skilled or strong.  Even if a person shows their knife to 100 police officers, and even if none of these officers can "wrist-flick" the knife open (or do so "readily"), the person still has no assurance that the 101st officer will not be able to.

In addition to the inherently subjective nature of the "wrist-flick" test, Plaintiffs explained in their Complaint that the day-to-day application of these laws is confounded by additional factors such as:  "Does the Common Folding Knife need to 'flick' open for *any* police officer, or is it sufficient if one police officer (alone) can get the blade to 'flick' open?  Does the officer need to be able to make the knife consistently "flick" open, or is it sufficient if the police officer is able to successfully perform the maneuver at least one time, out of multiple attempts?"  Complaint ¶ 22.  How does one pre-determine on their own whether a knife can be flicked open, particularly those with limited strength or dexterity?  And what about the variations from unit to unit of the same make and model knife, or the fact that some knives have adjustable tension screws, or the fact that the characteristics of a particular knife may change over time?  It is literally possible for different units of the same make and model to be both "prohibited" and "legal" at the same time!  The DA ignores these issues.[7]

---

[7] One of the cases the DA cites upheld a conviction where the officer needed multiple attempts to open the knife.  See DA Br. p. 15 (citing People v. Smith, 309 A.D.2d 608, 765 N.Y.S.2d 777 (1st Dept. 2003)).  One must wonder – how many people were acquitted on these same facts?

### c.  Relevant Factors the DA Ignores Show that Plaintiffs' Claim is Meritorious

Yet another deficiency in the DA's "12(b)(6)" motion is that it glosses over or ignores details from the Complaint that show how the application of the knife laws to common folding knives is vague.  The DA's approach is simply to construe all the facts in its own favor.

First, the DA's motion does not address the legislative history of the gravity knife law, even though the legislative history is highly relevant.  See Boutilier v. INS, 387 U.S. 118, 120 (1967); United States v. Farhane, 634 F.3d 127, 142 (2d Cir. 2011); Betancourt v. Bloomberg, 448 F.3d 547, 558 (2d Cir. 2006) (Calabresi, J., dissenting).  Plaintiffs referenced legislative history in their Complaint.  See Complaint ¶¶ 19-20.  The 1958 Sponsor's Memorandum indicates that the gravity knife law addressed knives that were "a circumvention" of, and the "successor" to, switchblade knives, and other parts of the 1958 Bill Jacket describe gravity knives as knives that open "automatically."  Ex. B, 1958 N.Y. "Bill Jacket," A. 913-1796, at 3, 14 (N.Y. 1958); see also CFCU Cmty. Credit Union v. Hayward, 552 F.3d 253, 263 (2d Cir. 2009) ("In New York, while not determinative, a legislator's sponsor memo submitted contemporaneously with the legislation is entitled to considerable weight in discerning legislative intent." (quotations omitted)).  A person unsure of whether the gravity knife law applied to a common folding knife could consult the 1958 Bill Jacket – which would suggest that the law does not apply unless a knife's blade opens with little or no effort ("automatically") in a manner akin to a switchblade.

The ordinary or customary meaning of terms, and their custom and usage within an industry, are also highly relevant.  First, they help the Court to identify the "core" of a prohibition, which is essential to determining whether a particular application is vague.  See Skilling v. United States, 130 S. Ct. 2896, 2933 (2010).  Second, they show the meaning that the terms should have for a reasonable person.  See Parker v. Levy, 417 U.S. 733, 754 (1974); Farhane, 634 F.3d at 143; United States v. Santillana, 109 Fed. Appx. 665, 668 (5th Cir. 2004); United States v. Elias, 269 F.3d 1003,

1017 (9th Cir. 2001); United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993). And, of course, in concluding that Balisong knives are not gravity knives, New York courts have suggested that the customary meaning of "gravity knife" is indeed relevant. See supra p. 4. As discussed above, supra p. 6, customary industry definitions do *not* classify a folding knife that resists opening as a gravity knife. The DA addresses these considerations by *mischaracterizing* Plaintiffs' claim, contending that Plaintiffs "have essentially ignored" the statutory definition in favor of the customary definition. See DA Br. pp. 13-14. But this is not Plaintiffs' claim. Rather, customary definitions are significant factors – and they should not be ignored merely because they support finding that the law is vague.

Interestingly, the DA *does* assert that the customary definition of "centrifugal force" is relevant (p. 14), but it seemingly ignores that the "wrist-flick" maneuver is generally understood by most knowledgeable individuals to rely upon accelerating and then *stopping* the knife – which is commonly understood as *inertia*, not centrifugal force. So this aspect of customary understanding is actually another confusing factor that suggests that the "wrist-flick" application is vague.

The DA's motion also ignores that the history of enforcement is relevant to determining whether an application of a law is vague, and particularly any history of arbitrary or discriminatory enforcement. See Smith v. Goguen, 415 U.S. 566, 582 n.31 (1974); Papachristou v. Jacksonville, 405 U.S. 156, 168-70 (1972); Cunney v. Bd. of Trs. of Grand View, no. 10-0485-cv, 2011 U.S. App. LEXIS 21114, *24 (2d Cir. Oct. 19, 2011) ("Defendants' various interpretations . . . serve only to reinforce our view that the ordinance's vagueness authorizes arbitrary enforcement"). When the DA began its enforcement actions in 2010, it allowed some of the retailers to continue selling *functionally identical* "custom" knives that were of high value. See Complaint ¶ 42. This fact supports the conclusion that the DA has applied the law arbitrarily and also shows how the DA's application of the law is vague – and it is yet another factor that the DA ignores in its motion. Does a "gravity knife" or "switchblade" cease to be prohibited when it costs hundreds or thousands of dollars?

Finally, the circumstances of a particular case are also pertinent. A person's attempt to comply with a vague standard may highlight the deficiency at issue, while a person whose conduct was plainly and unambiguously prohibited cannot complain of a lack of notice. <u>Compare</u> <u>Posters 'N' Things</u>, 511 U.S. at 525-26 (alleged "drug paraphernalia" was clearly within statute and included items specifically listed in the statute), <u>with</u> <u>Gentile v. State Bar</u>, 501 U.S. 1030, 1049-51 (1991) (vague aspects of the law frustrated petitioner's attempt to comply). Plaintiff John Copeland showed his knife to *two* different NYPD police officers, but neither was able to "wrist-flick" it open. In the third encounter an officer could, so he charged Mr. Copeland with Criminal Possession of a Weapon. <u>See</u> Complaint ¶¶ 28-29. The DA addresses this only by contending – without citing any support for the proposition – that Plaintiffs must plead out various specific details regarding the folding knife and how the different officers performed their "wrist-flicks." <u>See</u> DA Br. pp. 20-22.

Even were it appropriate for the DA to rely on its own characterizations of the facts to seek demurrer – and it plainly is not – the DA has not demonstrated the absence of issues of fact!

### d.   The DA's "As-Applied" Objection is Ill-Conceived

Plaintiffs contend it is unconstitutionally vague to apply the switchblade and gravity knife laws to common folding knives designed to resist opening from the closed position. Plaintiffs do *not* challenge enforcement of the switchblade and gravity knife laws in other applications – notably, against actual switchblades and gravity knives. This means that Plaintiffs' claim is "as-applied," rather than "facial." <u>See</u> <u>Doe v. Reed</u>, 130 S. Ct. 2811, 2817 (2010).

The DA argues that Plaintiffs can only pursue "as-applied" claims, and dovetails this into the unsupported assertion that "Plaintiffs have failed to allege" sufficient facts to show that the laws are invalid as-applied. DA Br. pp. 19-20. The DA demands intricacies like the precise model of knife that each Plaintiff had (in addition to the manufacturer, blade length, and description, included in the Complaint), the contention that each Plaintiff was subjectively unaware his knives could opened

with a "wrist-flick," and a description of any tension adjustment screw.  Id. pp. 20-22.  The DA claims that Copeland must plead out more particular details about the prior occasions that NYPD officers inspected his knife, such whether the knife remained the same, how the officers "flicked" it, and whether he changed it.  Id. p. 21.

The DA tries to ground its heightened-pleading argument in concepts of "facial" and "as-applied" relief.  See DA Br. p. 20.  However, the DA's view on the nature and limitations of "facial" and "as-applied" relief is both fundamentally wrong and unsupported.

The DA's view appears to be that if the Court grants "as-applied" relief, then the decision applies only to the particular plaintiffs and precise facts at issue and otherwise has no precedential value.  (So, the City and DA would be free to continue prosecuting pocket knives.)  But this is not the case – the scope of the relief that a court hearing *any* challenge grants depends simply on "the universality of the infirmity" that is ultimately established.  See Skilling, 130 S. Ct. at 2940 (Scalia, J., concurring).  The terms "facial" and "as-applied" *are not pleading requirements*, but instead relate to the breadth of relief that a court orders.  See Citizens United v. FEC, 130 S. Ct. 876, 893 (2010).  "The label is not what matters."  Doe, 130 S. Ct. at 2817.  By the DA's reasoning, the Craig v. Boren Court should have found no standing because the plaintiffs did not identify the *precise* types of 3.2% beer that they wanted (*e.g.*, "Coors Light in 12-ounce cans packaged in a six-pack").

Each Plaintiff places the infirmity that is at-issue in this case before the Court because each Plaintiff can show that the defective aspect of the law has been, and continues to be, applied against it.  The Court's finding that it violates due process to apply the switchblade and gravity knife laws to common folding knives will be a finding of infirmity that goes beyond the parties to this case, notwithstanding the "as-applied" label.  Indeed, it is for just this reason that Justice Scalia contends there is no need to have "facial" relief at all.  See Skilling, 130 S. Ct. at 2940 (Scalia, J., concurring).

The only authority the DA cites is <u>Dickerson v. Napolitano</u>, 604 F.3d 732 (2d Cir. 2010) (DA Br. p. 20), but this case does not support the DA's position.  <u>Dickerson</u> observes that "any law that is unconstitutional in every set of circumstances is also necessarily unconstitutional when applied to any plaintiff" – meaning that an individual plaintiff can challenge a defective law that is applied against it.  <u>See id.</u> at 743-44.  Moreover, <u>Dickerson</u> expressly rejects the DA's claim that Plaintiffs need to plead out their subjective mental states in the Complaint.  <u>See id.</u> at 745-46 (standard does not consider "whether a particular plaintiff actually received a warning").

**POINT III:**
**THE COURT *CAN* GRANT EQUITABLE RELIEF BECAUSE**
**THE DEPRIVATION OF LIBERTY AND PROPERTY INTERESTS**
<u>**UNDER A VAGUE CRIMINAL LAW *IS* IRREPARABLE INJURY**</u>

It is well established that constitutional deprivations are *per se* irreparable injuries for which there is no adequate remedy at law.  <u>See Jolly v. Coughlin</u>, 76 F.3d 468, 482 (2d Cir. 1996); <u>Mitchell v. Cuomo</u>, 748 F.2d 804, 806 (2d Cir. 1984).  People are entitled to enjoy their constitutional rights *in fact*.  The Supreme Court has repeatedly affirmed injunctions against the threatened enforcement of vague laws.  <u>See, e.g.</u>, <u>Kolender v. Lawson</u>, 461 U.S. 352, 361 (1983) (loitering law); <u>Colautti v. Franklin</u>, 439 U.S. 379, 380-81 (1979) (abortion law).

The DA's claim that this Court lacks power to issue an injunction is meritless.  This case does not concern prosecution arising from *past* conduct, but rather, it concerns *future* conduct.  As such, the DA's citation to <u>Beal v. Missouri Pacific Railroad Corp.</u>, 312 U.S. 45 (1941), and <u>Steffel v. Thompson</u>, 415 U.S. 452 (1974), is inapposite.  These only disclaim jurisdiction to enjoin "prosecution *for past conduct*."  <u>Steffel</u>, 415 U.S. at 463 n.12 (emphasis in source).  The DA *quotes* this qualifying statement, apparently missing its actual significance.  <u>See</u> DA Br. p. 24.

The remainder of the DA's argument relies on a repudiated line of authority.  The DA cites a 2008 decision from another Circuit that reasoned that because "in the past few decades" the Supreme Court had upheld injunctions against future enforcement only where First Amendment

-24-

rights were involved, *ipso facto* there must have been a change to the equity jurisdiction of the federal courts.  See DA Br. p. 25 (citing Bacon v. Near, 631 F.3d 875 (8th Cir. 2008)).  Apparently unbeknownst to the DA, the Supreme Court rejected this argument in 2009, when it affirmed a decision of the Second Circuit that *enjoined* the New York Attorney General from future enforcement of State laws that violated the Supremacy Clause.  See Cuomo v. Clearing House Ass'n, 129 S. Ct. 2710, 2722 (2009).  There is no merit to the DA's claim that injunctions are only appropriate to protect the First Amendment.

### CONCLUSION

The ultimate question in this case is whether it is vague to apply the switchblade and gravity knife laws to common folding knives.  The DA is not entitled to evade this question by unilaterally asserting that the laws are not in fact vague.  And this is particularly the case where the DA's motion relies on its own characterizations and ignores significant details from the Complaint.

Nor is the DA entitled to evade judicial review by dreaming up additional details that could, theoretically, have been included in the Complaint – and then claiming that the Complaint is defective because it does not include them.  To the contrary, the Complaint easily meets the requirement of "a short and plain statement" and provides ample notice of the grounds for Plaintiffs' as-applied vagueness claim, the DA's actions that give rise to it, and the connection between the DA's actions and the Plaintiffs' injuries.  (Of course, even if it did not, the DA's "properly allege" arguments are not defenses on the merits and would be no basis for dismissing the Complaint without leave to amend.)  Finally, the documentation submitted herewith eliminates any doubt that Plaintiff Knife Rights can establish standing *in fact*.

Plaintiffs have plainly stated a claim upon which relief can – and should – be granted.

Dated:  New York, New York
            November 11, 2011

**DAVID JENSEN** PLLC

By: _____
        David D. Jensen, Esq.
61 Broadway, Suite 1900
New York, New York 10006
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com
*Attorney for Plaintiffs*