11 CV 3918 (BSJ) (RLE)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KNIFE RIGHTS, INC.,
JOHN COPELAND; PEDRO PEREZ,
KNIFE RIGHTS FOUNDATION, INC.
and NATIVE LEATHER, LTD.

                                                    Plaintiffs,

                            -against-

CYRUS VANCE, JR. in his Official Capacity
as the New York County District Attorney;
and CITY OF NEW YORK,

                                                    Defendants.

**THE CITY OF NEW YORK'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS
THE AMENDED COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for City of New York*
*100 Church Street, Room 5-153*
*New York, N.Y. 10007*

*Of Counsel: Louise Lippin*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

THE STANDARD FOR DISMISSAL .................................................................................. 2

FACTUAL BACKGROUND ................................................................................................ 5

ARGUMENT .......................................................................................................................... 8

       POINT I
            KNIFE RIGHTS, INC., AND THE KNIFE
            RIGHTS FOUNDATION, INC. DO NOT HAVE
            STANDING TO COMMENCE THIS ACTION ......................................... 8

       POINT II
            PLAINTIFFS COPELAND AND PEREZ LACK
            STANDING TO CHALLENGE PENAL LAW
            § 265.00(4). ................................................................................................ 11

       POINT III
            THE CHALLENGED SECTIONS OF NEW
            YORK STATE PENAL LAW ARE NOT
            UNCONSTITUTIONALLY VAGUE .......................................................... 12

               Fair Notice Requirement .............................................................. 16

               Sufficient Guidance For Enforcment of the Law .................... 19

       POINT IV
            PLAINTIFFS ARE NOT ENTITLED TO
            INJUNCTIVE RELIEF. ............................................................................. 24

CONCLUSION ..................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                     **Pages**

Aguayo v. Richardson; 473 F.2d 1090 (2d Cir. 1974)......................................... 9

Ashcroft v. Iqbal; 556 U.S. 662, 129 S.Ct 1937 (2009). ............................... 3, 4

ATSI Communications, Inc. v. Shaar Fund, Ltd.; 493 F.3d 87, 98 (2d Cir. 2007) ...................... 3

Bacon v. Neer; 631 F.3d 875 (8th Cir. 2011) ................................................ 24

Beal v. Missouri Pacific Railroad Corp.; 312 U.S. 45 (1941) ............................ 24

Bell Atlantic Corp. v. Twombly; 550 U.S. 544 (2007)................................... 3, 4

Black Jack Distributors, Inc. v. Beame; 433 F.Supp. 1297 (1977).................... 24

Boddie v. Schneider; 105 F.3d 857 (2d Cir. 1997)....................................... 3

Brady v. State of New York; 80 N.Y.2d 596 (1992). ..................................... 13

Broadrick v. Oklahoma; 413 U.S. 601 (1973), ........................................... 15

Carter v. McKoy; 2010 U.S. Dist. LEXIS 83246 (S.D.N.Y. 2010)................... 20

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)................. 3

City of Chicago v. Morales; 527 US 41 (1999) .......................................... 23

Civil Service Commission v. National Ass'n. of Letter Carriers,
   413 U.S. 548 (1973)....................................................................... 15

Conley v. Gibson; 355 U.S. 41 (1957).................................................... 2

Denney v. Deutsche Bank AG; 443 F.3d 253, 263 (2d Cir. 2006)................... 8

Dickerson v. Napolitano; 604 F.3d 732 (2d Cir. 2010) ............................... 13

Farrell v. Burke; 449 F.3d 470, 493 (2d Cir. 2006). .................................. 14

Gentile v. State Bar of Nevada; 501 U.S. 1030 (1991)............................... 14

Gildan Activewear, Inc. Securities Litigation; 636 F.Supp.2d 261 (S.D.N.Y. 2009) ................... 3

Grandon v. Merrill Lynch & Co., Inc.; 147 F.3d 184 (2d Cir. 1998)................ 3

Grayned v. City of Rockford; 408 U.S. 104 (1972)......................... 13, 14 , 15, 19, 20

Havens Realty Corp. v. Coleman; 455 U.S. 363 (1982)................................................ 10

International Audiotext Network, Inc. v. American Telephone & Telegraph Co.;
    62 F3d 69 (2d Cir. 1995)......................................................................... 3, 22

Johnson v. New York; 1988 U.S. Dist. LEXIS 9397 (S.D.N.Y. 1978)......................... 15

Johnson v. Rowley; 569 F.3d 40 (2d Cir. 2009)............................................................ 3

Kolender v. Lawson; 461 U.S. 352 (1983) .............................................................. 14, 19

LaFleur v. Whitman, 300 F.3d 256 (2d Cir. 2002) (1983) ........................................... 3

League of Women Voters of Nassau County v. Nassau County Board of Supervisors;
    737 F.2d 155 (2d Cir. 1984)........................................................................ 9

Leibovitz v. NY City Transit Authority; 252 F.3d 179 (2d Cir. 2001)......................... 8

Lujan v. Defenders of Wildlife; 504 U.S. 555 (1992))............................................... 8, 9

Magnifico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ....................................... 3

Merring v. Town of Tuxedo, New York, et al;
    2009 U.S. Dist. LEXIS 61444 (S.D.N.Y. 2009)........................................ 15

In re Michael Grudge M; 80 A.D.3d 614 (2d Dep't 2010)........................................... 21

National Endowment for the Arts, et al v. Finley, et al; 524 U.S. 569 (1998) ............. 13

Nnebe v. Daus; 644 F.3d 147 (2d Cir. 2011)........................................................ 8, 9, 10

Pani v. Empire Blue Cross Blue Shield; 152 F.3d 67 (2d Cir. 1998) ........................... 3

Papachristou v. City of Jacksonville; 405 U.S. 156, 162 (1972) ........................... 13, 14

People v. Berrier; 223 A.D.2d 456, leave denied, 88 N.Y.2d 876 (1996).................... 19

People v. Brannon; 16 N.Y.3d 596 (2011). ................................................................. 20

People v. Birth; 49 A.D.3d 290 (1st Dep't 2008) .................................................. 20, 21

People v. Cavines; 70 N.Y.2d 882 (1987) .................................................................. 21

People v. Cruz; 48 N.Y.2d 419 (1979), appeal dismissed, 446 U.S. 901 (1980) ........ 15

People v. Daly; 2011 NY Misc LEXIS 4966 (Crim. Ct. NY Co. 2011)............. 17, 18, 19

People v. Dreyden; 15 N.Y.3d 100 (2010) ................................................................. 21

People v. Fana; 2009 N.Y.Misc LEXIS 956 at 9 (Crim. Ct. NY Co. 2009)................................. 19

People v. Herbin; 86 A.D.3d 446 (1st Dep't 2011) ....................................................... 16

People v. Jouvert; 50 A.D.3d 504 (1st Dep't 2008) ...................................................... 20

People v. Kong Wang; 17 Misc.3d 133A (Sup. Ct. 1st Dep't 2007)..................................... 17, 21

People v. Munoz; 9 N.Y.2d 51 (1961)................................................................. 17, 20

People v. Nelson; 69 N.Y.2d 302 (1987) ................................................................. 14

People v. Smith; 309 AD2d 608 (1st Dep't 2003).................................................... 20, 21

People v. Smith; 44 N.Y.2d 613 (1978)................................................................... 14

People v. Stuart; 100 N.Y.2d 412 (2003)............................................................ 16, 20

People v. Velez; 278 A.D.2d 53 (2000), leave denied, 96 N.Y.2d 808 (2001) ........................... 21

People v. Voltaire; 18 Misc.3d 408, 411 (Crim. Ct. Kings Co. 2007)................................... 17, 19

Ragin v. Harry Maclowe Real Estate Co.; 6 F.3d 898 (2d Cir. 1993)..................................... 10

Ruggiere v. Bloomberg; 2009 U.S. Dist. LEXIS 94416 (E.D.N.Y. Oct 9, 2009), .......................... 3

Staron v. McDonald's Corp.; 51 F.3d 353 (2d Cir. 1995) ................................................. 2

Steffel v. Thompson, 415 U.S. 452, 463, fn. 112 (1974)................................................. 24

Thibodeau v. Portuondo; 486 F.3d 61 (2007)............................................................. 22

United Food & Commercial Workers Union Local 751 v. Brown Group,
    517 U.S. 544 (1996)................................................................................ 9

United States v. Charles; 1981 U.S. Dist LEXIS 15429 (SDNY 1981) ...................................... 14

United States v. Hariss; 347 U.S. 612 (1954) ...................................................... 13, 15

United States v. Irizarry; 509 F.Supp.2d 198 (EDNY 2007),............................................. 16,

United States v. Nadi; 996 F.2d 548 (2d Cir. 1993), cert. denied, 510 U.S. 933 (1993).............. 13

United States v. Ochs; 461 F.Supp 1 (S.D.N.Y. 1978).............................................. 15, 18

United States v. Powell; 423 U.S. 87 (1975) ........................................................... 15

United States v. Raines; 362 U.S. 171 (1960) ......................................................... 13

United States v. Schneiderman; 968 F.2d 1564, 1568 (2d Cir. 1992),
   cert. denied, 507 U.S. 921 (1993) ................................................................ 14, 19, 22

United States v. Spy Factory, Inc.; 951 F.Supp. 450 (S.D.N.Y. 1997) ................................. 16, 20

Warth v. Seldin; 422 U.S. 490 (1975) ................................................................ 9

**Statutes**

42 United States Code § 1983 ................................................................ 2, 8, 9

Federal Rule of Civil Procedure 12 (b)(6) ................................................................ 2, 3

New York State Penal Law § 265.01(1) ................................................................ 2, 7, 8, 12, 15, 17, 18, 23

New York State Penal Law § 265.00(4) ................................................................ 2, 11, 12, 16, 23

New York State Penal Law § 265.00(5) ................................................................ 2, 4, 11, 12, 15, 16, 17, 19, 20, 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

KNIFE RIGHTS, INC.;
JOHN COPELAND; PEDRO PEREZ;
KNIFE RIGHTS FOUNDATION, INC.;                          11 CV 3918 (BSJ)(RLE)
and NATIVE LEATHER, LTD.,

                                          Plaintiffs,

                    - against -

CYRUS VANCE, JR., in his Official Capacity
as the New York County District Attorney;
and CITY OF NEW YORK,

                                          Defendants.

------------------------------------------------------------------------ X

### THE CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION  TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### PRELIMINARY STATEMENT

Defendant, the City of New York ("City"), submits this memorandum of law in

support of its motion to dismiss the amended complaint ("Complaint") pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure ("FRCP") as against the City on the grounds that

plaintiffs have failed to state a claim against the City upon which relief can be granted.

Plaintiffs challenge "New York City's enforcement of State laws that prohibit

'switchblade' and 'gravity' knives against ordinary folding pocket knives that are designed to

resist opening from the closed position."  Plaintiffs have designated such "ordinary folding

knives" "Common Folding Knives" ("CFK"), and claim that they are an "entirely different class

than switchblade and gravity knives because the mechanisms of [CFKs] (unlike switchblade and

gravity knives) have a mechanical bias in favor of the closed position, and a user must overcome

this bias in order to open the blade from its closed position."  Complaint, ¶1.  Plaintiffs go on to

claim that the relevant statutes do not provide sufficient notice that CFKs might be prohibited such that enforcement action against people who carry CFKs "violates the Due Process Clause of the Fourteenth Amendment [because the statute is] void-for-vagueness." Complaint, ¶ 1. Pursuant to 42 USC § 1983, plaintiffs seek declaratory judgments that the challenged provisions, New York State Penal Law ("Penal Law") §§ 265.01(1), 265.00(4) [relevant to switchblade knives] and 265.00(5) [relevant to gravity knives] are void-for-vagueness as applied to CFKs. Complaint, ¶¶ 57-60. Plaintiffs also seek injunctive relief to restrain the enforcement of these provisions with respect to CFKs. Complaint, at Wherefore clause.

Accepting the facts alleged in the Complaint as true, as required for this motion, the Complaint must nonetheless be dismissed. First, the corporate plaintiffs, Knife Rights, Inc. and the Knife Rights Foundation, Inc., lack standing to bring this action on behalf of their members, and on their own behalf. Further, the Complaint contains no allegations whatsoever relevant to plaintiffs' First Cause of Action seeking a finding that Penal Law § 265.00(4), relevant to switchblade knives, is unconstitutional. While the Complaint is peppered with the term "switchblade" and its definition, there are no facts alleged to support a finding that the provision is unconstitutionally void for vagueness. Finally, the Complaint fails to state a claim against the City of New York, and specifically against the New York City Police Department ("NYPD") -- that branch of the City responsible for enforcement of the New York State Penal Law. Accordingly, the City now moves pursuant to FRCP 12(b)(6) for dismissal of this action as against it.

## THE STANDARD FOR DISMISSAL

Pursuant to FRCP 12(b)(6), dismissal is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." Staron v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir. 1995) (quoting, Conley v.

Gibson, 355 U.S. 41, 45-46 (1957)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 566 U.S. 662, 679 (2009)

The complaint is deemed to include any statements or documents incorporated in it by reference.  See, Magniafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); International Audiotext Network, Inc. v. American Telephone & Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995). In deciding whether to dismiss a complaint, the court may also consider matters of public record, see, Chambers v. Time Warner, Inc., 282 F3d 147, 153 (2d Cir. 2002);  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); see also, Gildan Activewear, Inc. Securities Litigation, 636 F.Supp.2d 261, 268 (S.D.N.Y. 2009), as well as state court records pertaining to the underlying criminal prosecutions.  See, LaFleur v. Whitman, 300 F.3d 256, 257 n.1 (2d Cir. 2002).  To survive the motion, plaintiffs must show a cognizable claim and allege facts that, if true, would support such a claim.  See, Boddie v. Schneider, 105 F.3d 857, 860 (2d Cir. 1997). A complaint must include "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."  Id.

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  While the Court is required to accept the material facts alleged in the complaint as true and to construe all reasonable inferences in favor of the nonmoving party, see, Grandon v. Merrill Lynch & Co., Inc., 147 F.3d 184, 188 (2d Cir. 1998); Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009), such is "inapplicable to legal conclusions."  Ruggiere v. Bloomberg, 2009 U.S. Dist. LEXIS 94416, *6 (E.D.N.Y. Oct 9, 2009) (citing, Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

- 3 -

Detailed factual allegations are not required, but the Complaint must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic, supra, 550 U.S. at 555. It is not sufficient to provide naked assertions devoid of any factual support. See Ashcroft v. Iqbal, supra, 556 U.S. at 678. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (internal quotation marks and citations omitted).

Plaintiffs have failed to meet this standard as they have failed to allege facts that, if true, would support a cognizable claim upon which relief can be granted as against the City. They have failed to meet their burden to show that the challenged provisions of the Penal Law are void for vagueness. Rather, without providing a definition of CFKs, plaintiffs assert that such knives "fall into an entirely different class than switchblade and gravity knives," Complaint, ¶ 1, and that the application of the Penal Law to CFKs violates the due process provision of the Constitution. As will be illustrated below, such claim is belied by the clear statutory definitions and plaintiffs' own description of the knives they possessed at the time of their arrests. Even if a CFK has a "mechanical bias in favor of the closed position," as plaintiffs claim, the fact remains that if the blade of a CFK can be "released from the handle or sheath thereof by the force of gravity or the application of centrifugal force and . . . when released, is locked in place by means of a button, spring, lever, or other device," Penal Law § 265.00(5), it

meets the statutory definition of a gravity knife and is therefore unlawful.  Choosing to call a knife a Common Folding Knife does not preclude its being a prohibited gravity knife as defined in the Penal Law.

For the reasons set forth herein, defendant, City, maintains that plaintiffs have failed to provide factual allegations sufficient to support their right to the relief sought. Accordingly, the City's motion should be granted and the Complaint dismissed as to the City of New York.

## **FACTUAL BACKGROUND**

According to the Complaint, plaintiff Knife Rights, Inc. ("Knife Rights") "promotes legislative and legal action, as well as research, publishing, and advocacy, in support of people's ability to carry and use knives and tools."  Complaint, ¶ 10.  One of Knife Rights' stated "core purposes" "is to vindicate the legal rights of individuals and businesses who are unable to act on their own behalf in light of the costs and time commitments involved in litigation."  Complaint, ¶ 47.  Plaintiffs claim that Knife Rights' unnamed individual members and supporters have been "arrested, charged, prosecuted, and/or threatened [with] arrest, charge, and prosecution" by the City for carrying CFKs.  Complaint, ¶ 48.  Plaintiffs further claim that unnamed members and supporters of Knife Rights who would "possess and/or carry [CFKs] in New York City . . . refrain from doing so based on their understanding that Defendants would arrest, charge, and prosecute them for allegedly violating the [challenged provisions of the Penal Law]."  Complaint, ¶ 49.

Plaintiffs further claim that unnamed member and supporter businesses of Knife Rights that have sold CFKs in New York City in the past refrain from doing so based on the same understanding, Complaint, ¶ 50, and that unnamed member and supporter businesses that would sell CFKs to New York City retailers are unable to do so because the retailers will not sell

their products as a result of the City's "past and ongoing threatened enforcement of the [challenged provisions of the Penal Law]. Complaint, ¶ 51. Plaintiffs also complain about the initiation of enforcement actions by the Office of the District Attorney ("District Attorney") against retail stores within the City of New York that sell knives ("NYC Retailers") and the agreements entered into by the District Attorney and the NYC Retailers wherein they agreed to pay "approximately $1.8 million and to generally turn over Common Folding Knives held in inventory, in exchange for the [District Attorney's][1] agreement not to pursue charges." Complaint, ¶¶ 40, 42; see also, Complaint, ¶¶ 4-6. Plaintiff, Native Leather, Ltd. ("Native Leather") is one of these NYC Retailers. Complaint, ¶¶ 14, 44-46. Pursuant to the Deferred Prosecution Agreement ("DPA") between the District Attorney and Native Leather, a copy of which is annexed to the Declaration of Louise Lippin ("Lippin Dec.") as Exhibit A, Native Leather agreed to "permanently cease and desist" from selling any and all weapons prohibited by the Penal Law. See, Exhibit A, ¶4(a).

According to the Complaint, The Knife Rights Foundation, Inc. ("The Foundation") is a non-profit 501(c)(3) corporation "organized to promote education and research regarding knives and edged tools." Complaint, ¶ 13. Plaintiffs state that The Foundation has paid some of the monetary expenses incurred by Knife Rights due to the enforcement of the Penal Law, thus compromising its "other organizational priorities." Complaint, ¶ 52.

Plaintiff, John Copeland ("Copeland"), claims that he was stopped by NYPD officers on October 10, 2010 after they observed a "metal clip" in his pocket. Complaint, § 25. Copeland was carrying what he terms a CFK made by Benchmark "with a blade of

---

[1] The prosecutions and agreements complained of were commenced and entered into by the Office of the District Attorney. Plaintiffs' use of the term "City" and "District Attorney" interchangeably in this regard is inaccurate and misleading. In particular, the NYPD took no part in the prosecution of plaintiffs Copeland and Perez, the resolution of their criminal cases, or the drafting or execution of the agreements entered into by the NYC Retailers referenced by plaintiffs. See, Complaint, §§ 30, 38, 42.

approximately 3 inches and a locking mechanism that locks the blade in place once it is in its fully open position." Complaint, ¶ 27. The arresting officers were able to open the knife "by grasping the knife's handle and forcefully 'flicking' the knife body downwards," thus determining that it was a gravity knife, and charging Copeland with violation of Penal Law § 265.01(1). Complaint, ¶ 30; see also, criminal court complaint filed in the matter of People v. Copeland, ECAB # 1156789, a copy of which is annexed to the Lippin Dec. as Exhibit B. Copeland asserts that he accepted an adjournment in contemplation of dismissal ("ACD") on January 26, 2011. Complaint, ¶ 31.[2] Copeland claims that he had previously showed his knife to two NYPD officers who each "tried to open the knife from its closed position using a 'flicking' motion, but they could not, so they told Mr. Copeland that the knife was legal and returned it to him." Complaint, ¶ 29.

Similarly, plaintiff, Pedro Perez ("Perez"), claims that he was stopped by NYPD officers on April 15, 2010 after they observed a metal clip in his pocket. Complaint, ¶ 33. Perez was carrying what he terms a CFK made by Gerber "with a blade of approximately 3.75 inches and a 'linerlock' locking mechanism that locks the place in place once it is in its fully open position." Complaint, ¶ 35. According to the Complaint, the arresting officers were unable to open the knife with a "flicking" motion, but "asserted that it would (theoretically) be possible to do so, and that the possibility to open the knife using any type of 'flicking' motion made the knife a prohibited gravity knife" and thus charged Perez with violation of Penal Law § 265.01(1). Complaint, ¶ 37. To the contrary, however, the criminal court complaint filed in the matter of People v Perez, ECAB # 1099072, a copy of which is annexed to the Lippin Dec. as Exhibit C, states that it was "determined that said knife was a gravity knife because informant

---

[2] See, Footnote 1.

opened the knife with centrifugal force by flicking informant's wrist while holding the knife, and the blade locked in the open position . . . said knife does not require manual locking." Perez asserts that he accepted an ACD on November 17, 2010.  Complaint, ¶ 38.[3]

Copeland and Perez each claim that they no longer carry CFKs for fear that they will again be charged with violation of Penal Law § 265.01(1), and that they are unable to determine whether any particular CFK is prohibited under the statute.  Despite this fear, both Copeland and Perez claim that they would purchase another knife similar to the one they were carrying when they were arrested, but have been unable to do so because such knives are not available for sale in New York City.  Complaint, ¶¶ 32 and 39, respectively.

## ARGUMENT

### POINT I

### KNIFE RIGHTS, INC. AND THE KNIFE RIGHTS FOUNDATION, INC. DO NOT HAVE STANDING TO COMMENCE THIS ACTION.

Standing is a threshold issue in every federal litigation.  Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006); Leibovitz v. NY City Transit Authority, 252 F.3d 179, 184 (2d Cir. 2001).  To establish standing under Article III a plaintiff must have suffered an "injury in fact" that is "distinct and palpable," fairly traceable to the challenged acts of defendants, and likely to be redressed by a favorable decision.  Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) and Denny v. Deutsche Bank, AG, 443 F.3d 253, 263 (2d Cir. 2006) (each citing to Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  An organization, like an individual, must show that it satisfies the same requirements.

The Second Circuit has held that an organization does not have standing to assert the rights of its members under 42 USC § 1983, as the rights thereby secured are personal to

---

[3] See, Footnote 1.

those who are injured.  Nnebe, supra, 644 F.3d at 156; League of Women Voters of Nassau County v. Nassau County Board of Supervisors, 737 F.2d 155, 160 (2d Cir. 1984), citing, Aguayo v. Richardson, 473 F.2d 1090 (2d Cir. 1974) ("Neither [the] language nor the history [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violations of rights of members."); Warth v. Seldin 422 U.S. 490, 595-516 (1975).  Thus, the caselaw has been understood to preclude associational standing when an organization seeks damages on behalf of it members." United Food & Commercial Workers Union Local 751 v. Brown Group 517 U.S. 544, 553 (1996); Nnebe v. Daus, supra, 644 F.3d at 156.  Clearly Knife Rights lacks standing to bring this case on behalf of its members.

While an organization can bring a § 1983 suit on its own behalf, standing is only established here if Knife Rights and The Foundation can show "injury in fact" to the organization that is "distinct and palpable," fairly traceable to the challenged acts of defendants, and likely to be redressed by a favorable decision.  Nnebe, supra, 644 F.3d at 156 and Denny, supra, 443 F.3d at 263 (each citing to Lujan supra, 504 U.S. at 560-61).  Knife Rights has failed to satisfy the requirements for standing in this action as the Complaint alleges no injury to Knife Rights at all -- all references of injury are to its "members and supporters," including individuals who carry, or might want to carry CFKs, Complaint, ¶¶ 48, 49, businesses that have sold, or who would sell CFKs, and businesses that have sold, or who would sell CFKs to retailers in the City of New York.  Complaint, ¶¶ 50, 51.  As discussed above, Knife Rights has no standing to assert claims on behalf of its members, and even less so for its supporters, whoever they might be.

To the extent the Complaint can be construed as alleging injury to Knife Rights arising from its use of its resources to advise and advocate for its members in response to the challenged provisions of the Penal Law, such expenses are central to Knife Rights' "core

purpose:" -- "to vindicate the legal rights of individuals and businesses who are unable to act on their own behalf in light of the costs and time commitments involved in litigation."  Complaint, ¶ 47.  The use or depletion of its resources to accomplish the organization's "core purpose" cannot be deemed to be an "injury in fact" that is traceable to the challenged acts of defendants, and likely to be redressed by a favorable decision.  Nnebe, 644 F.3d at 156.  Indeed, Knife Rights exists for the very purpose of using its resources in just this way.  The Complaint contains no claim of any "perceptible impairment" of the organizations' funds or of its other activities due to this litigation, nor does Knife Rights seek damages for any such depletion of its resources. Nnebe, 644 F.3d at 156-57 citing, Ragin v. Harry Maclowe Real Estate Co., 6 F.3d 898, 905 (2d Cir. 1993), citing, Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982).  Knife Rights is simply fulfilling its responsibility to its members and will undoubtedly continue to act to vindicate their rights in the future, as it has in the past.  The decision in this particular case will not impact on Knife Rights' ability to fulfill its "core purpose."

Similarly, the only claim made by The Foundation is that it has contributed toward Knife Rights' expenses "at the expense of other organizational priorities" – namely, education and research.  Complaint, ¶¶ 13, 52.  The Foundation's choice to contribute some of its funding to Knife Rights' expenses does not give The Foundation standing in this matter.  While The Foundation may make choices as to how to allocate its funds within the parameters set forth by the Internal Revenue Service to maintain its non-profit tax exempt status, that choice can hardly be called an "injury in fact."

As neither Knife Rights nor The Foundation have articulated any "injury in fact" that it has suffered as a result of the acts of the City alleged in the Complaint these plaintiffs have failed to establish standing to commence this action on their own behalf or, in the case of Knife

Rights, on behalf of its members.  Accordingly, both causes of action should be dismissed with respect to plaintiffs, Knife Rights, Inc. and the Knife Rights Foundation, Inc.

**POINT II**

**PLAINTIFFS LACK STANDING TO
CHALLENGE PENAL LAW § 265.00(4).**

Plaintiffs Copeland, Perez, and Native Leather lack standing to bring the first cause of action which seeks declaratory and injunctive relief based on their claim that Penal Law § 265.00(4), pertaining to switchblade knives, violates their due process rights and is void-for-vagueness. Complaint, ¶¶ 57, 58.  While the complaint contains several mentions of switchblade knives, usually referring to them in tandem with gravity knives, there are no specific allegations whatsoever pertaining to Penal Law § 265.00(4) or switchblade knives, and certainly no claim that this provision of law, or the NYPD's enforcement of it, has caused any of the plaintiffs any "injury in fact."  Indeed, both Copeland and Perez were arrested for having unlawful gravity knives [not switchblade knives], in violation of Penal Law § 265.00(5), and each seeks to replace the knife he had with a similar one.  In neither case did plaintiff allege that the knife he possessed at the time of his arrest was deemed to be a switchblade knife, or that he wishes to purchase a switchblade knife.

While Native Leather claims that prior to June 2010 it sold knives with "'assisted-opening' mechanisms, which are designed to assist the user in opening the blade to its fully open position after it has been opened part way," but no longer does so "out of its fear that DA Vance would contend they were switchblade knives prohibited by the Penal Law," Complaint, ¶ 46, in fact, switchblade knives, by definition are not "assisted opening" knives.  Rather, a switchblade is defined by Penal Law § 265.00(4) as "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife."  As

- 11 -

switchblade knives are not "assisted-opening" knives, as defined by plaintiffs, Native Leather's decision to abstain from selling "assisted-opening" knives does not give it standing to challenge Penal Law § 265.00(4).  Moreover, as Native Leather's only articulated injury arises out of the acts of the District Attorney, Complaint, ¶¶ 44-46, it has failed to allege any claim against the City for which relief can be granted.

As there is no basis upon which plaintiffs can allege that the enforcement of Penal Law § 265.00(4) caused them in the past, or will cause them in the future, any injury whatsoever, let alone injury sufficient to give them standing to challenge that provision in this action, plaintiffs' first cause of action should be dismissed.

### POINT III

### THE CHALLENGED SECTIONS OF THE NEW YORK STATE PENAL LAW ARE NOT UNCONSTITUTIONALLY VAGUE.

Plaintiffs allege that their due process rights have been violated by the "invalidities" of Penal Law §§ 265.01(1), 265.00(4) and 265.00(5) and the City's "application of same" because those provisions are "void for vagueness, as applied to Common Folding Knives[4] that are designed to resist opening from their folded and closed position."  Complaint ¶¶ 57-60. As set forth below, however, the relevant sections of the Penal Law provide sufficient notice to an individual of normal intelligence and guidelines for enforcement personnel such that they clearly pass Constitutional muster, as applied. Accordingly, defendants are entitled to dismissal on both causes of action.

When a party challenges a statute as unconstitutionally vague, he carries the heavy burden of showing that the statute is impermissibly vague in all of its applications.  Facial

---

[4] While plaintiffs challenge the Penal Law provisions as "void-for-vagueness, as applied to Common Folding Knives," Complaint, ¶¶ 58 60, City construes the "as applied" challenge as one applied to the facts alleged with respect to plaintiffs.

challenges to statutes are generally disfavored, <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 741 (2d Cir. 2010); <u>National Endowment for the Arts, et al v. Finley, et al</u>, 524 U.S. 569, 580 (1998), since Courts are reluctant to formulate constitutional law that is broader than what is presented by the particular facts of the case, <u>United States v. Raines</u>, 362 U.S. 17, 21 (1960); or to rely on speculation. <u>Dickerson</u>, 604 F.3d at 741. Moreover, legislative enactments carry a strong presumption of constitutionality. <u>Brady v. State of New York</u>, 80 N.Y.2d 596, 602 (1992). In any event, plaintiffs have not articulated a facial challenge herein.

Only where First Amendment rights are involved are facial challenges generally permitted. <u>Dickerson</u>, 604 F.3d at 742, 744. "Vagueness challenges that do not involve the First Amendment must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity." <u>United States v. Nadi,</u> 996 F.2d 548, 550 (2d Cir. 1993) (citations omitted), <u>cert. denied</u>, 510 U.S. 933 (1993). Where a statute is "judged on an "as applied" basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." <u>Id.</u> Here, plaintiffs' challenge is "as applied," and does not implicate any First Amendment rights. Moreover, as will be shown, the challenged provisions of the Penal Law are not vague, but are clear and unambiguous, and plaintiffs' conduct, by possessing knives that meet the statutory criteria, is just as clearly forbidden.

Under due process jurisprudence, state and local laws must be of sufficient clarity to give individuals a reasonable opportunity to know what is prohibited or required thereby, so that they are "free to steer between lawful and unlawful conduct." Vague laws may trap the innocent by not providing fair warning. <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108-109 (1972), citing, among others, <u>Papachristou v. City of Jacksonville</u>, 405 U.S. 156, 162 (1972) and <u>United States v. Hariss</u>, 347 U.S. 612, 617 (1954).

- 13 -

Aside from giving individuals clear notice of the prohibited behavior, the vagueness doctrine addresses "the need to eliminate the impermissible risk of discriminatory enforcement." Gentile v. State Bar of Nevada, 501 U.S. 1030, 1051 (1991). Thus, the void-for-vagueness doctrine requires "that a legislature establish minimal guidelines to govern law enforcement," Kolender v. Lawson, 461 U.S. 352, 358 (1983), so as to "eliminate generally the risk of arbitrary enforcement." Farrell v. Burke, 449 F.3d 470, 493 (2d Cir. 2006). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned, 408 U.S. at 109.

The Supreme Court has articulated a two-part test to determine whether a statute is unconstitutionally vague as applied. First, the statute must provide sufficient notice of what conduct is prohibited; second, the statute must be written in such a manner as to avoid arbitrary and discriminatory enforcement. Id.; see also, Kolender v. Lawson, 461 U.S. 352, 357 (1983); Papachristou, 405 U.S. 156; People v. Nelson, 69 N.Y.2d 302 (1987); People v. Smith, 44 N.Y.2d 613, 618 (1978).

In order to succeed on a vagueness challenge, a plaintiff must do more than show that the provision of law in question employs "an imprecise but comprehensible normative standard." United States v. Schneiderman, 968 F.2d 1564, 1567 (2d Cir. 1992), cert. denied, 507 US 921 (1993). A statute is unconstitutionally vague when it fails to apprise a person of normal intelligence that the contemplated conduct is prohibited. Under a due process analysis, a law which forbids or requires the doing of an act is void for vagueness only when it specifies no guide or standard at all and people of common intelligence must necessarily speculate as to its meaning and the conduct which is prohibited. See, United States v. Charles, 1981 U.S. Dist.

LEXIS 15429 (SDNY 1981), citing, United States v. Powell, 423 U.S. 87, 92 (1975) and United States v. Harriss, 347 U.S. 612, 617 (1954); see also, People v. Cruz, 48 N.Y.2d 419 (1979), appeal dismissed, 446 U.S. 901 (1980). Due process does not mandate "impossible standards" in the drafting of statutes. Cruz, 48 N.Y.2d at 424. The due process clause does not require that a law be drafted with such specificity that it leaves no room for interpretation, nor is it void for vagueness merely because situations may exist in which it should not be applied. Grayned, 408 U.S. at 108-110. "Condemned to the use of words, we can never expect mathematical certainty from our language." Id. at 110. As the Supreme Court stated:

> [T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the [challenged provisions] may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.

Broadrick v. Oklahoma, 413 U.S. 601, 608 (1973), quoting, Civil Service Commission v. National Ass'n. of Letter Carriers, 413 U.S. 548, 578-79 (1973).

Under New York State Penal Law § 265.01(1), "a person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e or she possesses any . . . gravity knife, switchblade knife . . . ." A gravity knife is defined as "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device." Penal Law § 265.00(5). Such knives allow the blade to be "exposed by a simple flick of the wrist in a downward motion, locking the blade into position." Merring v. Town of Tuxedo, New York, et al, 2009 U.S. Dist. LEXIS 61444 (S.D.N.Y. 2009), citing, Johnson v. New York, 1988 U.S. Dist. LEXIS 9397 at *2, n.1 (S.D.N.Y. 1978); United States v. Ochs, 461 F.Supp 1, 4 (S.D.N.Y. 1978)). "Centrifugal force is 'the apparent force that is felt by an object

- 15 -

moving in a curved path that acts outwardly away from the center of rotation.'" United States v. Irizarry, 509 F.Supp.2d 198 (EDNY 2007) (citing, Merriam-Webster's Collegiate Dictionary (11[th] ed. 2005)). A switchblade knife is "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife." Penal Law § 265.00(4). These sections of the Penal Law challenged by plaintiffs clearly meet the standards set forth above, and thus are not void for vagueness.

**Fair Notice Requirement**

Plaintiffs claim that the Penal Law provisions do not give adequate notice as to what knives might violate those provisions, and that the City -- specifically the NYPD -- has improperly enforced the Penal Law against those carrying CFKs, in violation of their due process rights. Plaintiffs' claims are without basis in law or fact.

"The crux of [the notice] prong of the vagueness analysis is the requirement that the statute be sufficiently clear to provide notice to potential wrongdoers that the conduct in which they are engaged has the potential for civil or criminal liability." United States v. Spy Factory, Inc., 951 F.Supp. 450, 466 (S.D.N.Y. 1997). "[O]nly the actual conduct of the [persons] involved can be considered; the Court must disregard other, more innocent or questionable hypothetical conduct under the statute." Id. The challenged provisions of the Penal Law cannot be considered unduly vague as applied to the actions of plaintiffs as they clearly give the required notice.

Indeed, Penal Law § 265.00(5) has survived numerous vagueness challenges in New York State courts. See, e.g., People v. Herbin, 86 A.D.3d 446 (1st Dep't 2011) (Finding that the language of Penal Law § 265.00(5) is not unconstitutionally vague as it "provides notice to the public and clear guidelines to law enforcement as to the precise characteristics that bring a knife under the statutory proscription."); see also, People v. Stuart, 100 N.Y.2d 412, 420-21

- 16 -

(2003) (same); People v. Kong Wang, 17 Mis.c3d 133A (Sup. Ct. App. Term 1st Dep't 2007) (same); People v. Voltaire, 18 Misc.3d 408 (Crim. Ct. Kings Co. 2007) (same).  In each case the court found that the legislature had spelled out the elements of an offense in explicit words and that Penal Law § 265.00(5) was not void for vagueness.  In contrast, in People v. Munoz, 9 N.Y.2d 51 (1961), the Court of Appeals struck down a New York City Administrative Code provision which made it unlawful for persons under 21 years of age to possess "knives and sharp pointed or edged instruments in public places," finding that the statute was too vague and general to indicate what items were prohibited.  The Court said that the language of the statute would include such innocuous items as knitting needles, fountain pens, safety razors and nail files.  Such is clearly not the case with Penal Law §§ 265.01(1) or 265.00(5),[5] which specifically describe the offense, the type of knife that is prohibited, and provide guidelines for enforcement.

      Despite the clear and unambiguous language of the challenged provisions, plaintiffs assert that because CFKs are not designed or intended to open with centrifugal force, that they are not gravity knives.  Complaint, ¶¶ 1, 3.  The statutory test, however, is one of operability, not design or intent.  There is no requirement that the owner know that his or her knife is a gravity knife, as there is no mens rea element implied in Penal Law § 265.01(1).  In People v. Daly, 2011 NY Misc LEXIS 4966 (Crim. Ct. NY Co. 2011) the defendant argued that because he used the knife in his trade, he was not guilty of violating Penal Law § 265.00(5).  "In effect, the defendant [in Daly] contends that his possession of the knives was lawful because he did so without criminal intent, but there is no such exemption in Penal Law § 265.01(1)."  Id. at **10-11.  The court rightly rejected this argument.  Similarly, here, the fact that plaintiffs might use their knives for their work does not provide a lawful basis to find that plaintiffs' knife

---

[5] Cases challenging Penal Law § 265.00(4), specific to switchblade knives, have not been found.

possession was lawful since the legality of the knife hinges on its operability, and not the intent of the person carrying it.   If a person is in possession of a knife that can be opened with centrifugal force and locks in the open position by means of a device without the use of the other hand, it is a gravity knife, despite the manufacturer's or the owner's intent, and the person is guilty of possession of a weapon in the fourth degree under Penal Law § 265.01(1).

According to the Complaint, Copeland purchased his knife precisely because of its operability -- he could "manipulate the blade open by using only one hand . . . [and] because the blade locked in place once open." Complaint, ¶ 28.   Similarly, Perez selected his knife "because he wanted a knife that he could open with one hand . . . [and] because the blade locks in place once open." Complaint, § 36.   The fact that each plaintiff claims that they use their knives for legitimate purposes does not allow them to circumvent the strict and clear statutory criteria.   While exemptions have been made for certain knives for those with hunting and fishing licenses, see, e.g., People v. Daly, 2011 N.Y. Misc. LEXIS 4966 at **11, such is not the case here.   Knives just as those described by plaintiffs have been found to be gravity knives.   United States v. Ochs, 461 F.Supp 1 (S.D.N.Y. 1978) ("A gravity knife differs from a penknife in that by depressing its button, accompanied by a flicking of the wrist, the blade exits the handle and locks into place.   It can be opened and remain so without touching the lock.").

Further, the fact that there may be knives that meet the statutory definition that are sold in local stores as "folding knives" and designed as tools does not render the provision unconstitutionally vague.   The gravity knife's original intended function as a tool for World War II paratroopers to cut their parachutes, Complaint, ¶ 18, "did not then, and does not now, alter its obvious and inherently dangerous nature.   The intended use or design of the knife by its manufacturer is not an element of the crime and is irrelevant to the issue of whether the knife is a

- 18 -

gravity knife." People v. Fana, 2009 N.Y.Misc LEXIS 956 at ***9 (Crim. Ct. NY Co. 2009).[6]
The fact that the statute may reach individuals who claim to own gravity knives for legitimate
purposes does not render the statute void for vagueness. Id. Moreover, it is not necessary that a
person know that the knife is a gravity knife. "All that is required for guilt in each case – besides
proof that the knife was a gravity knife – is the defendant's knowledge that he possessed a knife;
not that he knew that the knife fit the statutory description of a gravity knife." People v. Daly,
2011 N.Y. Misc. LEXIS 4966 at **5-6; see also; People v. Berrier, 223 A.D.2d 456, 457, leave
denied, 88 N.Y.2d 876 (1996); People v. Fana, 2009 N.Y.Misc LEXIS 956 (Crim. Ct. NY Co.
2009); People v. Voltaire, 18 Misc.3d 408, 411 (Crim. Ct. Kings Co. 2007).

Thus, Penal Law § 265.00(5) provides a clear and objective standard for
determining whether a knife is a gravity knife that is within the understanding of a person of
normal intelligence, meeting the first prong of the Supreme Court's void-for-vagueness test.

## Sufficient Guidance for Enforcers of Law

The second part of the vagueness "as applied" analysis is "the requirement that a
legislature establish minimal guidelines to govern law enforcement." Kolendar v. Lawson, 461
U.S. 352, 358 (1983).  The courts recognize, however, that "[e]ffective law enforcement often
'requires the exercise of some degree of police judgment' but this alone does not render a statute
unconstitutional." United States v. Schneiderman, 968 F.2d at 1568, citing Grayned, 408 U.S. at
114).   Where guidelines can provide objective criteria against which to measure possible
violations of the law, the likelihood of arbitrary enforcement is minimized and the statute can
surmount this element. Id. Courts can "scrutinize the statute to discern whether its language 'is

---

[6] In United States v. Irizarry, 509 F.Supp.2d 198 (E.D.N.Y. 2007), however, the court, in dicta, determined that a
Husky Sure-Grip Folding Knife was "designed, sold, and used as a folding knife," and was not a gravity knife.
"Although the officer was ultimately able to open the Husky with centrifugal force at the hearing, it was obviously
not designed to be opened in this fashion and does not readily open through such force." Id. at 210.    Neither
plaintiff was arrested for possessing this kind of knife.

so imprecise that discriminatory enforcement is a real possibility.'" <u>Spy Factory</u>, 951 F.Supp at 467.  <u>See</u> <u>also</u>, <u>Grayned</u>, 408 U.S. at 114 (If a provision defines boundaries sufficiently distinct for both citizens and law enforcement, it is not impermissibly vague.).  "If a statute is so vague that a potential offender cannot tell what conduct is against the law, neither can a police officer." <u>People v. Stuart</u>, 100 N.Y.2d at 420-21; <u>see</u> <u>also</u>, <u>People v. Munoz</u>, 9 N.Y.2d 51 (1961).  The provisions challenged herein properly provide clear enforcement standards by authorizing the police to arrest a person where they have probable cause to believe that he knowingly and voluntarily possesses a knife which meets the statutory definition of a gravity knife.

By its very definition, whether a knife satisfies the criteria of Penal Law § 265.00(5) cannot be determined without a test of its operability, as there is "no inherently distinguishing mark or physical trait that would allow for the plain identification of a gravity knife." <u>People v. Brannon</u>, 16 N.Y.3d 596, 603 (2011).  Thus, until operated, a gravity knife can easily be mistaken for a pocketknife or folding knife.  Courts have found that Penal Law § 265.00(5), providing the criteria for what constitutes a gravity knife, including its mode of operation, gives sufficient guidance for enforcement of the law.  Specifically, courts have found that a demonstration of a knife's operation consistent with the statutory criteria is sufficient to determine that the knife in question is a gravity knife.  In <u>Carter v. McKoy</u>, 2010 U.S. Dist. LEXIS 83246 (S.D.N.Y. 2010), the Court found that the officers testimony and "demonstration of the knife's operation – was sufficient to permit a rational fact finder to conclude that the knife at issue was a gravity knife." Id. at *14 (<u>citing</u>, <u>People v. Jouvert</u>, 50 A.D.3d 504, 506 (1st Dep't 2008) (officer's description and demonstration of knife is sufficient to support conclusion that it is a gravity knife); <u>People v. Birth</u>, 49 A.D.3d 290, 290 (1st Dep't 2008) (same); <u>People v. Smith</u>, 309 AD2d 608, 609 (1st Dep't 2003) (same)) (parallel citations omitted).  This is true, even if the

knife did not operate in accordance with the statutory criteria on every attempt.  Id., (citing People v. Smith, 309 A.D.2d at 609. ("[T]he fact that the knife malfunctioned on some of the detective's attempts to operate it did not defeat the proof of operability.").  See also, People v. Cavines, 70 N.Y.2d 882 (1987); People v. Kong Wang, 17 Misc.3d 133A (Sup. Ct. 1st Dep't 2007) ("That the second knife did not open on the officer's initial attempt at trial did not preclude a finding of its operability as a gravity knife."); People v. Birth, 49 A.D.3d 290, 290 (1st Dep't 2008) (NYPD officer's description and demonstration of knife is sufficient to support conclusion that it is a gravity knife.  There was no obligation for the officer to attempt the demonstration in a seated position or with his weaker hand).  In In re Michael Grudge M, 80 A.D.3d 614 (2d Dep't 2010), the court found that the statement of the arresting officer in a supporting deposition describing the knife and its operability was sufficient to determine that it was a gravity knife.  See also, People v. Velez, 278 A.D.2d 53 (2000), leave denied, 96 N.Y.2d 808 (2001).[7]

Here, as stated in the Complaint at ¶ 30, and in the criminal court complaint, see Exhibit B, the officer who arrested Copeland performed the required operational test.  The officer stated that he knew that the knife Copeland was carrying was a gravity knife based on his "training and experience and based on deponent's observations that the blade of the knife is released from the handle of the knife by the application of centrifugal force and that when the blade is released, it locks in place automatically by means of a spring or other devise and the locking of the blade requires no further action by the user."  Clearly, the Copeland knife meets the statutory criteria of a gravity knife.

---

[7] In contrast, in People v. Dreyden, 15 N.Y.3d 100, 101 (2010), the accusatory instrument, failing to provide a factual basis for officer's conclusion that the knife was a gravity knife amounted to a jurisdictional defect.

Similarly, in the criminal court complaint for Perez, see Exhibit C, the arresting officer states that he was informed by Lieutenant Luke that he "recovered a gravity knife from defendant's rear left pants pocket." Lt. Luke determined that the knife was a gravity knife "because [he] opened the knife with centrifugal force by flicking [his] wrist while holding the knife, and the blade locked in the open position . . . [and] that said knife does not require manual locking." In spite of the sworn statement made by the arresting officer, the Complaint asserts that the officers were not able to open his knife using a flicking motion. Complaint, ¶ 37. In deciding whether to dismiss a Complaint, however, the court may consider any statements or documents incorporated in it by reference. See International Audiotext Network, Inc. v. American Telephone & Telegraph Co., 62 F3d 69, 72 (2d Cir. 1995). This would include the accusatory instruments for Copeland and Perez.

Plaintiffs do not argue that the knives cannot be opened and locked into a fully opened position with one hand. Indeed, both Copeland and Perez assert that this feature was desirable. Complaint, ¶¶ 28, 36, respectively. Rather, they argue, among other things, that because one person may be able to open the knife with centrifugal force, and another may not, that the provision is unconstitutionally vague. That enforcement personnel may vary in strength or in "flicking ability" does not render the statutory definition vague where, as here, the statute provides a clear explanation of how it may be determined whether a particular knife is a gravity knife. See Thibodeau v. Portuondo, 486 F.3d 61, 67 (2007) (vagueness challenge rejected because challenged provision of law "establishes reasonable limiting criteria and standards" that "guide law enforcement in applying the statute"); United States v. Schneiderman, supra, 968 F.2d at 1568 (vagueness challenge rejected where the law defined "drug paraphernalia" by enumerating 15 examples and by listing eight factors to consider among "all other logically

relevant factors" so as to "minimize the likelihood of arbitrary enforcement"); <u>see also</u>, cases cited on pages 20-21, <u>supra</u>.

While plaintiffs state that CFKs "are designed to resist opening from the closed position" and "have a mechanical bias in favor of the closed position," Complaint, ¶ 1, the fact remains that if a CFK can be opened, and the blade locked in place, with centrifugal force it is a prohibited gravity knife.

Applying the Supreme Court's two-part test to the challenged sections of the Penal Law, it is clear that they provide sufficient notice to individuals and guidelines for enforcement and are not vague as applied to plaintiffs.  Penal Law §§ 265.01(1), 265.00(4), and 265.00(5) do not provide a vague description of a particular type of behavior, as was the case in <u>City of Chicago v. Morales</u>, 527 U.S. 41 (1999), but rather give a clear description of what constitutes a gravity knife.[8]  The intended use of the knife is of no relevance, nor is whether it was originally designed to be a gravity knife.  A knife that opens with the use of centrifugal force and whose blade locks in place by means of a spring or other device is a gravity knife under the plain meaning of the statute.

As demonstrated, the challenged Penal Law provisions are not unconstitutionally vague, but are clear, unambiguous, and appropriate as they give a person of normal intelligence clear guidance as to whether a knife meets the statutory definition and is thus unlawful within the Stare of New York.  Moreover, they provide sufficient guidance for law enforcement.  The NYPD has heeded that guidance in its enforcement of the Penal Law with respect to plaintiffs.  Since the provisions fully comport with due process considerations, the Plaintiffs' claims must be dismissed as they fail to state a claim upon which relief can be granted.

---

[8] <u>See</u>, Footnote 6.

## POINT IV

## PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF.

Where, as here, injunctive relief has been sought to restrain imminent, but not yet pending prosecution, courts have found that the injury is insufficient to support a grant of injunctive relief. <u>Steffel v. Thompson</u>, 415 U.S. 452, 463, fn. 112 (1974); <u>Beal v. Missouri Pacific Railroad Corp.</u>, 312 U.S. 45 (1941); <u>Black Jack Distributors, Inc. v. Beame</u>, 433 F.Supp. 1297 (S.D.N.Y. 1977). Recently, the Supreme Court has only upheld federal injunctions to restrain criminal proceedings that threaten to chill the exercise of First Amendment rights. <u>See, Bacon v. Neer</u>, 631 F.3d 875 (8th Cir. 2011). Plaintiffs make no First Amendment claim, or allege any other injury warranting injunctive relief.

## CONCLUSION

For the reasons set forth herein, the City of New York's motion for judgment on the pleadings should be granted on the first and second causes of action, the injunctive relief sought denied, and the Complaint dismissed as against the City of New York.

Dated:      New York, New York
            October 15, 2012

                              Respectfully submitted,

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                                City of New York
                              Attorney for the City of New York
                              100 Church Street, Room 5-153
                              New York, New York 10007
                              (212) 788-0790

                    By:      _____
                              LOUISE LIPPIN  (LL4712)
                              Assistant Corporation Counsel

- 24 -