UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

KNIFE RIGHTS, INC., et al.,

                               Plaintiffs,

-v-

CYRUS VANCE, JR., et al.,

                               Defendants.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 2 5 2013

11 Civ. 3918 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

    Plaintiffs Knife Rights, Inc., John Copeland, Pedro Perez, Native Leather, Ltd., and Knife Rights Foundation, Inc. filed suit against Manhattan District Attorney Cyrus Vance, Jr., and the City of New York under 42 U.S.C. § 1983 on June 9, 2011. Plaintiffs allege that Defendants' application of New York Penal Law § 265.01's prohibition on the possession of switchblade knives and gravity knives to possessors of common folding knives ("CFKs") makes § 265.01 void for vagueness under the Due Process Clause of the Fourteenth Amendment.

    Defendants have each moved to dismiss Plaintiffs' claims for lack of standing and failure to state a claim. The Court agrees that Plaintiffs lack standing to attack the prohibitions on both switchblade knives and gravity knives. Therefore, Defendants' motions are GRANTED and the case is DISMISSED.

I.     BACKGROUND

    The core allegation of Plaintiffs' complaint is that Defendants enforce the law against criminal possession of a weapon in the fourth degree, N.Y. Penal Law

§ 265.01 (McKinney 2013), against possessors of "folding pocket knives that are designed to resist opening from the closed position," which Plaintiffs call "Common Folding Knives" ("CFKs"). (Am. Compl. ¶¶ 1, 3, ECF No. 61.)

Section 265.01 states in relevant part that a "person is guilty of criminal possession of a weapon in the fourth degree" when he or she possesses any "gravity knife" or "switchblade knife." N.Y. Penal Law § 265.01. A "switchblade knife" is defined in the Penal Law as "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife." Id. § 265.00(4). A "gravity knife" is defined as "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device." Id. § 265.00(5).

A.   Pedro Perez and John Copeland

On April 15, 2010, New York City Police officers stopped Perez and charged him with possession of a gravity knife. (Am. Compl. ¶¶ 33–37.) On October 10, 2011, Copeland was charged by New York Police Department officers with possession of a gravity knife. (Am. Compl. ¶¶ 25–28.) The charges against Perez and Copeland were both resolved by Adjournments in Contemplation of Dismissal. (Am. Compl. ¶¶ 31, 38.) Neither Plaintiff alleged that N.Y. Penal Law § 265 was void for vagueness when he was charged with possession of gravity knives in 2010 or 2011. (See id.)

2

Both Plaintiffs now claim that they want to possess knives similar to the ones that they possessed when charged, but that they have not bought such knives because they lack certainty about the law and whether "any particular CFK might be deemed a prohibited switchblade or gravity knife." (Am. Compl. ¶ 32, 39.)

B. Native Leather, Ltd.

Plaintiff Native Leather is a New York City knife retailer. On June 17, 2010, District Attorney Vance "announced plans to pursue charges" against retailers, including Native Leather, for "marketing prohibited switchblade and gravity knives." (Id. ¶¶ 40–41.) In response, Native Leather, like other retailers, entered into a Deferred Prosecution Agreement under which it turned over many of its knives, paid monetary penalties, and pledged to cease from selling prohibited knives. (Id. ¶ 42–44.) Native Leather did not allege that N.Y. Penal Law § 265 was void for vagueness before turning over the knives it possessed.

Native Leather states that to avoid further prosecution, it only sells knives that a "designated employee is not able to 'wrist-flick' open," and does not sell "assisted-opening knives" that it would otherwise sell. (Am. Compl. ¶¶ 45–46.)

C. Knife Rights, Inc., and Knife Rights Foundation, Inc.

Plaintiffs Knife Rights, Inc. ("Knife Rights"), and Knife Rights Foundation, Inc. ("the Foundation"), are nonprofit organizations. (Id. ¶¶ 10, 13.) Knife Rights sues on behalf of members and supporters whom Defendants have arrested, charged, prosecuted, and/or threatened to arrest, charge, and prosecute for carrying CFKs. (Id. ¶¶ 47–51.) The Foundation alleges that it "has paid or contributed

3

towards, and continues to pay and contribute towards, some of the monetary expenses that Knife Rights has incurred and continues to occur in consequence of Defendants' threatened enforcement of [N.Y. Penal Law § 265.01] . . . at the expense of other organizational priorities." (Id. ¶ 52.)

D. Procedural History

Defendants argue that no party has standing to challenge the definition of "switchblade knife," because no one charged or threatened to charge Copeland, Perez, and Native Leather with possession of a switchblade. (City of New York's Mem. of L. in Supp. Mot. to Dismiss (City Mem.) 11–12.) Defendants also argue that no party has standing to challenge the definition of "gravity knife," because Copeland, Perez, and Native Leather face no actual or imminent injury from the ban on gravity knives, especially because no party has alleged the specific types of knives it wants to sell or to carry. (Mem. of L. in Supp. D.A. Vance's Mot. to Dismiss (Vance Mem.) 11–12.) Defendants also allege that Knife Rights and the Foundation lack standing entirely because they face no injury whatsoever from the knife ban. (City Mem. 8–11; Vance Mem. 8–10.)

Because the Court agrees that all parties lack standing to challenge the definitions of "switchblade knife" and "gravity knife," Defendants' motions to dismiss are GRANTED.[1]

---

[1] Because the Court resolves the Motions to Dismiss on standing, the Court need not reach Defendants' further argument that the prohibitions on possessing gravity or switchblade knives under N.Y. Penal Law § 265.00(4)–(5) are not unconstitutionally vague. (See City Mem. 12–23; Vance Mem. 13–24.)

4

II. STANDARDS OF REVIEW

A. Rule 12(b)(1)

The Court considers a motion to dismiss for lack of standing as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. See, e.g., Rothstein v. UBS AG, 708 F.3d 82, 90 (2d Cir. 2013). On such motions, the Court must "borrow from the familiar Rule 12(b)(6) standard, construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein." See Donoghue v. Bulldog Investors Gen. P'ship, 696 F.3d 170, 173 (2d Cir. 2012).

B. Rule 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[M]ere conclusory statements" or "threadbare recitals of the elements of a cause of action" are insufficient. Id.

5

C.  Standing

Article III of the United States Constitution limits the jurisdiction of the federal courts to adjudicating actual "cases" and "controversies." Allen v. Wright, 468 U.S. 737, 750 (1984). "[A]n essential and unchanging part" of Article III's case-or-controversy requirement is standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." Horne v. Flores, 557 U.S. 433, 445 (2009) (citing Lujan, 504 U.S. at 560–61).

Where a plaintiff claims standing based on an imminent rather than actual harm, the standard is high. "'[T]hreatened injury must be certainly impending to constitute injury in fact,'" and "'[a]llegations of possible future injury' are not sufficient." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

D.  "Void for Vagueness"

"The 'void for vagueness' doctrine, grounded in the Due Process Clause, 'requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" United States v. Hashmi, No. 06 Crim. 442 (LAP), 2009 WL 4042841, at *6 (S.D.N.Y. Nov. 18, 2009) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)).

III. DISCUSSION

The Court agrees that all Plaintiffs lack standing to challenge the provisions defining "switchblade knife" and "gravity knife." The Court therefore need not reach the question whether the provisions are in fact void for vagueness.

A. Standing as to Perez, Copeland, and Native Leather

Plaintiffs allege that Perez and Copeland want to carry certain knives and that Native Leather wants to sell certain knives, but that all parties fear arrest under the switchblade and gravity knife provisions. (Mem. of Law in Opp'n to Def. City's Second Mot. to Dismiss (Pls.' Opp'n to City) at 24; Am. Compl. ¶¶ 32, 39, 46.)

Plaintiffs' concerns are insufficient to confer standing, because they fail to present a "concrete, and particularized" and "actual or imminent" injury in fact that arises from the definitions of "switchblade" and "gravity" knives being unconstitutionally vague. See Lujan, 504 U.S. 560–61. Copeland and Perez may have faced injury when they were arrested, and Native Leather may have faced an injury if D.A. Vance pursued charges against it for selling prohibited knives. (Am. Compl. ¶ 30–31, 38, 40, 42.) But no Plaintiff moved to dismiss the charges on the basis that the provisions in question were unconstitutionally vague. Instead, both individual Plaintiffs resolved their charges through Adjournments in Contemplation of Dismissal, and Native Leather voluntarily entered into an agreement with the City in exchange for its agreement not to pursue charges. Thus, no Plaintiff currently faces "certainly impending" harm as a result of the statute, Lujan, 504

7

U.S. at 565 n.2, that would be "redressable by a favorable ruling," Horne, 557 U.S. at 445.

The injury that Plaintiffs do allege is completely hypothetical and "highly speculative." Clapper, 133 S. Ct. at 1148. Perez and Copeland claim that they want to possess a knife "similar" to the one they possessed at the time of their arrests.[2] (Am. Compl. ¶ 32, 39.) But neither individual alleges the make and model of knife that he wants to carry or specifically describe it, and this Court declines—especially on such limited factual allegations—to engage in "guesswork as to how independent decisionmakers will exercise their judgment." Clapper, 133 S. Ct. at 1150 (citing Whitmore, 495 U.S. at 159–60). Nor do Plaintiffs allege any facts showing why they cannot purchase another type of tool or knife not prohibited by law.

Similarly, the only harm that Native Leather currently suffers is its inability to sell illegal knives in order to "adhere to its compliance program." (Am. Compl. ¶ 44.) An agreement to follow the law hardly creates an actual and imminent injury in fact. Native Leather further argues that it is unable to stock certain knives because of a speculation that "some other person" might be able to "wrist-flick' them open and thus implicate the statute. (Id. at 45.) That concern is mere conjecture. "A plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." Nat'l Org. Marriage,

---

[2] The Court notes that Perez and Copeland were arrested for possessing—and profess a future desire to possess—knives that were allegedly gravity knives, not switchblade knives. (See Am. Compl. ¶¶ 30–32, 37–39.) Furthermore, Native Leather and other retailers turned over knives "similar" to those possessed by Perez and Copeland—i.e., also gravity knives. (See Am. Compl. ¶¶ 40–42.) Thus, even if Plaintiffs could claim an injury based on their interest in possessing "similar" knives in the future, those claims are relevant only to the gravity ban, not the switchblade ban.

8

Inc. v. Walsh, 714 F.3d 682, 689 (2d Cir. 2013). Native Leather's desire to skirt the edges of the law does not create an injury sufficient for Article III standing. See Boyce Motor Lines v. United States, 342 U.S. 337, 340 (1952) ("Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.").

Because all three Plaintiffs allege an injury that is far "too speculative for Article III purposes," Lujan, 504 U.S. at 565 n.2, their Complaint is a prototypical request for an advisory opinion. Plaintiffs ask this Court to determine that the statute is unconstitutionally vague without showing any actual or imminent and redressable harm deriving from the statute. The advisory nature of this request is particularly clear because Plaintiffs fail to describe with specificity the nature of the knives they wish to own or the injury caused by their inability to do so. Under such circumstances, the Court's standing inquiry must be "especially rigorous." Clapper, 133 S. Ct. at 1147 (quoting Raines v. Byrd, 521 U.S. 811, 819 (1997)). The Court refuses to entertain a request for an advisory opinion: "Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." Id. at 1146.

    B.    <u>Standing as to Knife Rights and the Foundation</u>

Knife Rights and the Foundation make an even more attenuated claim for standing: they argue that they have standing because they have expended resources to oppose the switchblade ban. (See Pls.' Opp'n to City 21–23; Am. Compl. ¶ 52.)

9

While Knife Rights and the Foundation cannot bring a § 1983 suit on behalf of their members, they have standing to sue if they themselves "independently satisfy the requirements of Article III"—that is, that they themselves have suffered an actual or imminent injury in fact that is fairly traceable to Defendants' conduct and that can redressed by a favorable decision. Nnebe v. Daus, 644 F. 3d 147, 156 (2d Cir. 2011).

Plaintiffs argue that the expenditure of litigation expenses that causes a "perceptible impairment" to their other priorities can constitute an injury in fact sufficient to show standing. See Nnebe, 644 F.3d at 157–58. But to sue based on litigation expenses, a plaintiff organization must be challenging a practice by defendants that <u>actually</u> affects its members. Otherwise, the organization itself has suffered no actual or imminent harm. See, e.g., Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982); Nnebe, 644 F.3d at 157–58; Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 905 (2d Cir. 1993); New York v. U.S. Army Corp. of Eng'rs, 896 F. Supp. 2d 180, 191 (E.D.N.Y. 2012). "An organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III" Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976).

Here, the injury that the organization Plaintiffs allege to their members is—like the injury alleged by the individual Plaintiffs, and for the same reasons—merely "speculative." Lujan, 504 U.S. at 565 n.2. At most, Knife Rights and the Foundation have expended litigation resources in order to avoid an entirely

10

hypothetical possibility that the government's policies will injure their members. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." See Clapper, 133 S. Ct. at 1151.

IV. CONCLUSION

Plaintiffs have failed to allege a "concrete, particularized, and actual or imminent" injury that would be "redressable by a favorable ruling." Horne, 557 U.S. at 445. Therefore, no Plaintiff has standing to challenge the prohibition on possessing switchblade knives. As such, the Court need not address whether the Penal Law's definition of "switchblade knife" is unconstitutionally vague.[3]

For the reasons set forth above, defendants' motions are GRANTED and the case is DISMISSED. The Clerk of Court is directed to close the motions at ECF Nos. 62 and 65 and to terminate this case.

SO ORDERED.

Dated: New York, New York
September 24, 2013

K. B. Forrest
KATHERINE B. FORREST
United States District Judge

---

[3] While the Court does not reach the issue, the Court notes that several courts have already held that the definitions of knives are not vague. See, e.g., People v. Herbin, 927 N.Y.S.2d 54, 56 (App. Div. 2011) ("[T]he statutory prohibition of possession of a gravity knife is not unconstitutionally vague. . . . [The statute's] language provides notice to the public and clear guidelines to law enforcement as to the precise characteristics that bring a knife under the statutory proscription.") (citations omitted); People v. Kong Wang, No. 570304/05, 851 N.Y.S.2d 72, at *1 (App. Term Oct. 31. 2007) (per curiam) ("[T]he Penal Law provisions defining 'gravity knife' are not impermissibly vague as applied to defendant.") (citations omitted).

11