**MANDATE**

# UNITED STATES COURT OF APPEALS
## FOR THE
### SECOND CIRCUIT

N.Y.S.D. Case #
11-cv-3918(KBF)

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of September, two thousand and fifteen.

Before:     Robert A. Katzmann,
             *Chief Judge,*
           Amalya L. Kearse,
           Reena Raggi,
              *Circuit Judge*s.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/15/2015

Knife Rights, Inc., John Copeland, Pedro Perez,
Knife Rights Foundation, Inc., Native Leather, Ltd.,

    Plaintiffs - Appellants,

v.

Cyrus Vance, Jr., in his Official as the New York
County District Attorney, City of New York,

    Defendants - Appellees.

**JUDGMENT**
Docket No. 13-4840

The appeal in the above captioned case from a judgment of the United States District Court for the Southern District of New York was argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's judgment of dismissal is AFFIRMED as to Knife Rights and Knife Rights Foundation, and VACATED as to Native Leather, Copeland, and Perez. The case is REMANDED as to these three plaintiffs for further proceedings in accordance with the opinion of this court.

           For The Court:

           Catherine O'Hagan Wolfe,
           Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

**MANDATE ISSUED ON 10/15/2015**

13-4840-cv
Knife Rights, Inc. v. Vance

# In the
# United States Court of Appeals
# For the Second Circuit

————

August Term, 2014

(Argued: January 13, 2015    Decided: September 22, 2015)

Docket No. 13-4840-cv

————

KNIFE RIGHTS, INC., JOHN COPELAND, PEDRO PEREZ, KNIFE RIGHTS FOUNDATION, INC., NATIVE LEATHER, LTD.,

*Plaintiffs-Appellants*,

—v.—

CYRUS VANCE, JR., in his Official Capacity as the New York County District Attorney, CITY OF NEW YORK,

*Defendants-Appellees.*[*]

————

Before:

KATZMANN, *Chief Judge*, KEARSE and RAGGI, *Circuit Judges.*

————

[*] The Clerk of Court is directed to amend the official caption as shown above.

1

This appeal challenges a judgment of the United States District Court for the Southern District of New York (Forrest, *J.*) dismissing for lack of standing an as-applied vagueness challenge to a New York law criminalizing the possession of "gravity knives."  N.Y. Penal Law §§ 265.00(5), 265.01(1); see 42 U.S.C. § 1983. Plaintiffs, two individuals and a business previously charged with violations of the law, and two organizations advocating with respect to knife rights, maintain that they satisfactorily pleaded the actual or imminent threat of harm necessary to the injury-in-fact element of constitutional standing.  We agree that the individual and business plaintiffs have standing to pursue declaratory and injunctive relief in this case, but not the advocacy organizations.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

———————

DANIEL L. SCHMUTTER, Greenbaum, Rowe, Smith & Davis LLP, Woodbridge, New Jersey, *for Plaintiffs-Appellants*.

BENJAMIN E. ROSENBERG (Patricia J. Bailey, *on the brief*), Assistant District Attorneys, *for* Cyrus R. Vance, Jr., District Attorney of New York County, New York, New York, *for Defendant-Appellee Cyrus R. Vance, Jr.*

MICHAEL J. PASTOR, Senior Counsel (Kristin M. Helmers, Counsel, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York, *for Defendant-Appellee City of New York.*

————————

REENA RAGGI, *Circuit Judge*:

In this action for declaratory and injunctive relief, plaintiffs John Copeland, Pedro Perez, Native Leather, Ltd., Knife Rights, Inc., and Knife Rights Foundation, Inc., invoke 42 U.S.C. § 1983 to charge the City of New York and the New York County District Attorney, Cyrus R. Vance, Jr., with applying New York law criminalizing the possession of "gravity knives," see N.Y. Penal Law §§ 265.00(5), 265.01(1), in such a way as to render the proscription unconstitutionally vague, thereby depriving plaintiffs of the notice mandated by due process. The United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*), dismissed plaintiffs' amended complaint for lack of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), concluding that no plaintiff had demonstrated standing to pursue that challenge. See Knife Rights, Inc. v. Vance, No. 11 Civ. 3918 (KBF), 2013 WL 5434610 (S.D.N.Y. Sept. 25, 2013). Plaintiffs now appeal, arguing that they each satisfactorily alleged the imminent

3

threat of harm necessary to demonstrate the injury in fact required for constitutional standing.

For the reasons stated herein, we conclude that plaintiffs Copeland, Perez, and Native Leather adequately allege standing, but that the organizational plaintiffs, Knife Rights and Knife Rights Foundation, do not. Accordingly, we affirm the judgment of dismissal as to Knife Rights and Knife Rights Foundation, but we vacate the judgment against Copeland, Perez, and Native Leather and remand the case to the district court for further proceedings as to these three plaintiffs consistent with this opinion.

## I.    **Background**

### A.    Statutory Framework

Under New York law, criminal possession of a weapon in the fourth degree is a class A misdemeanor punishable by no more than one year in prison. See N.Y. Penal Law §§ 70.15(1), 265.01(1). Switchblades and gravity knives are among the weapons specifically proscribed by § 265.01(1). New York defines a "switchblade knife" as "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the

4

knife." Id. § 265.00(4). It defines a "gravity knife" as "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device." Id. § 265.00(5). The New York Court of Appeals has explained that the latter definition distinguishes gravity knives from "certain folding knives that cannot readily be opened by gravity or centrifugal force." People v. Dreyden, 15 N.Y.3d 100, 104, 905 N.Y.S.2d 542, 544 (2010).

Plaintiffs assert that, consistent with these definitions and judicial gloss, § 265.01(1) has been enforced without controversy for decades by reference to the "essential attribute of both switchblade and gravity knives," i.e., the lack of any "mechanical resistance (or bias) against opening from the closed position that must be overcome in order for [these knives] to open." Am. Compl. ¶ 2. Plaintiffs complain that, more recently, defendants have construed the definition of "gravity knife" in such a way as to render the statutory prohibition unconstitutionally vague. Specifically, defendants have applied the law to any folding knife—even ones "designed to resist opening from the closed position"

("common folding knives"[1])—if it would be possible for some person to open the knife by means of a wrist-flicking motion.  Id. ¶ 3.[2]  Plaintiffs argue that a person in possession of a common folding knife, particularly one that the person himself is unable to open with a wrist flick, cannot be expected to know that his possession is criminal because some as-yet-unidentified person may be able to flick open the knife.  On this appeal, we do not consider the merits of plaintiffs' vagueness claim, but only their standing to pursue it.  Because past enforcement efforts against certain plaintiffs are relevant to their standing, we proceed to summarize those efforts.

---

[1] While "common folding knives" is not a statutorily defined term, the parties have employed it in their papers to reference knives "designed to resist opening from the closed position."  Am. Compl. ¶ 3; see Appellee (Vance) Br. 6 n.4.  We do likewise in this opinion.

[2] The parties dispute whether wrist flicking necessarily implicates centrifugal force, compare Appellee (Vance) Br. 44–47, with Appellants' Reply Br. 24, a question that we need not answer on this appeal.

B.    Defendants' Enforcement Efforts Against Plaintiffs

        1.    Copeland and Perez

Plaintiffs John Copeland and Pedro Perez are, respectively, an artist and an art dealer.  Both had routinely carried folding knives for use in their work until 2010 when such knife possession resulted in each man separately being charged with violating § 265.01(1).  Perez was so charged on April 15, 2010, when New York City police officers observed him at a Manhattan subway station with a metal clip protruding from his pocket.  Inquiry revealed the clip to be part of a Gerber brand common folding knife that Perez had purchased approximately two years earlier at Tent & Trail, an outdoor supply store in Manhattan. Plaintiffs assert that the charging officers were unable themselves to flick open Perez's knife, but based on the possibility that someone could do so, they issued Perez a desk appearance ticket charging him with unlawful possession of a gravity knife.

Some months later, on October 10, 2010, Copeland was similarly charged when police, observing a metal clip in his pocket, found him in possession of a Benchmade brand common folding knife, purchased the year before at Paragon

7

Sports in Manhattan. Plaintiffs assert that on two occasions before October 2010, Copeland had shown his Benchmade knife to New York City police officers and inquired as to the legality of its possession. On both occasions, the officers were unable to flick open the knife and so returned it to Copeland, advising that its possession was legal. By contrast, the officers who stopped Copeland in October 2010 were able to open the knife by "grasping the knife's handle and forcefully 'flicking' the knife body downwards" and, thus, issued Copeland a desk appearance ticket for violating § 265.01(1). Am. Compl. ¶ 30.

Perez and Copeland each retained counsel to defend the § 265.01(1) charges by disputing that the devices in their possession were proscribed gravity knives. The question was never resolved because, in both cases, the parties agreed to adjournments in contemplation of dismissal, a non-merits disposition. See N.Y. Crim. Proc. Law § 170.55(2); Hollender v. Trump Vill. Coop., Inc., 58 N.Y.2d 420, 423, 461 N.Y.S.2d 765, 766 (1983) (explaining that adjournment in contemplation of dismissal is "neither a conviction nor an acquittal").

In this action, Perez and Copeland assert their continuing interest in carrying common folding knives in New York City but maintain that they do not

8

do so for fear of again being charged with a § 265.01(1) violation, given their inability to determine which common folding knives defendants might deem prohibited by that law.

### 2. Native Leather

Plaintiff Native Leather operates a retail store in Manhattan, where it sells, among other things, common folding knives. Plaintiffs allege that in June 2010, defendant Vance initiated enforcement actions against numerous New York City knife retailers, claiming that an undercover investigation had revealed the retailers' sale of proscribed gravity knives. Many retailers resolved these actions by agreeing to pay fines, totaling an aggregate of nearly $1.9 million; to surrender various folding knives in their inventories; and to refrain from future sales of gravity knives. Seven retailers, including Native Leather, did so by entering into deferred prosecution agreements.

Under its agreement, Native Leather not only paid a monetary fine and forfeited certain folding knives, but also adopted a compliance program approved by the district attorney's office and pledged "to permanently cease and desist" from selling any prohibited gravity knives in the future. J.A. 251.

9

Pursuant to its compliance program, Native Leather has a designated employee test each common folding knife in its inventory by making several attempts to open the knife by means of a wrist-flicking action. Native Leather only sells common folding knives that the designated employee cannot flick open on even a single attempt.

Although most provisions of Native Leather's deferred prosecution agreement have now expired, it asserts that it maintains its compliance program "to avoid running afoul" of defendants' interpretation of the statutory prohibition of gravity knives. Am. Compl. ¶ 45. At the same time, it professes concern that its program cannot assure that "some other person" will not be able to flick open one of its knives despite its own employee's inability to do so. Id. Thus, it complains that, while it wishes to sell a wide assortment of common folding knives, it does not do so because it cannot confidently determine which such knives defendants will deem "gravity knives" in violation of § 265.01(1).

### 3. Knife Rights and Knife Rights Foundation

Knife Rights is a membership advocacy organization that "promotes legislative and legal action, as well as research, publishing, and advocacy, in

support of people's ability to carry and use knives and tools." Id. ¶ 10. Knife Rights also seeks to "vindicate the legal rights of individuals and businesses who are unable to act on their own behalf in light of the costs and time commitments involved in litigation." Id. ¶ 47. Knife Rights asserts that defendants have charged or threatened to charge certain of its members with violations of § 265.01(1). As a result, some (unidentified) members have refrained from carrying or selling folding knives for fear of being so charged.

Knife Rights Foundation is a nonprofit organization intended "to promote education and research regarding knives and edged tools." Id. ¶ 13. Knife Rights Foundation alleges that it "has paid or contributed towards . . . some of the monetary expenses that Knife Rights has incurred . . . in consequence of Defendants' threatened enforcement" of § 265.01(1), which "expenditures have come at the expense of other organizational priorities of Knife Rights Foundation." Id. ¶ 52.

C.    Prior Proceedings

On June 9, 2011, plaintiffs Copeland, Perez, and Knife Rights initiated this action, seeking (1) a declaration that N.Y. Penal Law §§ 265.00(5) and 265.01(1)

11

are unconstitutionally vague as applied to common folding knives, and (2) an injunction preventing defendants' continued enforcement of these statutes as to such knives.[3]  Defendants moved for dismissal pursuant to, inter alia, Fed. R. Civ. P. 12(b)(1) and (c), whereupon plaintiffs successfully sought leave to amend. This resulted, among other things, in the addition of Native Leather and Knife Rights Foundation as named plaintiffs.

Defendants thereafter renewed their motion for dismissal, arguing that the court lacked subject matter jurisdiction because no plaintiff alleged the injury in fact necessary to satisfy Article III's case-or-controversy requirement.  The district court agreed and entered judgment for defendants on September 25, 2013.  As to plaintiffs Copeland and Perez, the district court determined that any injury was "completely hypothetical" and "highly speculative," because neither

---

[3] Plaintiffs also sought declaratory and injunctive relief with respect to the application of the switchblade prohibition of §§ 265.00(4) and 265.01(1) to common folding knives designed to resist opening from their folded and closed positions.  On appeal, however, plaintiffs challenge dismissal only by reference to the § 265.00(5) gravity knife ban.  See Appellants' Br. 3 ("Switchblade knives are not at issue here.").  Accordingly, plaintiffs appear to have abandoned their challenge to the switchblade ban, and we do not consider it here.  See Hughes v. Bricklayers & Allied Craftworkers Local No. 45, 386 F.3d 101, 104 n.1 (2d Cir. 2004).

had alleged "the make and model of knife that he wants to carry or specifically describe[d] it." Knife Rights, Inc. v. Vance, 2013 WL 5434610, at *4 (internal quotation marks omitted). As to Native Leather, the district court stated that the store's "desire to skirt the edges of the law does not create an injury sufficient for Article III standing." Id. The district court further concluded that Knife Rights and Knife Rights Foundation's expenditure of resources to avoid "an entirely hypothetical possibility that the government's policies will injure their members" did not confer standing because the threat of harm to the organizations and their members was too speculative. Id. at *5.

Plaintiffs sought reconsideration, arguing that the district court had failed to consider their request for leave to amend and providing the court with a proposed second amended complaint indicating that, but for the alleged vagueness in defendants' application of § 265.01(1), plaintiff Copeland would purchase, possess, and use another "Benchmade model 10210 folding knife," and that plaintiff Perez would purchase, possess, and use another "Gerber model 05785 folding knife." Proposed Second Am. Compl. ¶¶ 54, 59. The district court denied reconsideration, noting, among other things, that amendment would

13

unduly prejudice defendants because discovery had been completed and summary judgment had already been awarded in their favor.

This timely appeal followed.

## II.   **Discussion**

### A.   Dismissal for Lack of Subject Matter Jurisdiction

#### 1.   The Jurisdictional Requirement of Standing

To ensure that persons are not denied liberty without due process, the law requires that criminal offenses be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983); accord Johnson v. United States, 135 S. Ct. 2551, 2556–57 (2015).  A statute that fails to do so is deemed unconstitutionally vague. Plaintiffs here sue for a judicial declaration that N.Y. Penal Law §§ 265.00(5) and 265.01(1) are unconstitutionally vague as applied to common folding knives, and for an order enjoining the future application of these statutes to such knives.

A court's jurisdiction to hear such a vagueness challenge is limited to an actual case or controversy.  See U.S. Const., art. III, § 2.  "The doctrine of standing

14

gives meaning to these constitutional limits," <u>Susan B. Anthony List v. Driehaus</u>, 134 S. Ct. 2334, 2341 (2014), by requiring a plaintiff to "allege[] such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf," <u>Warth v. Seldin</u>, 422 U.S. 490, 498–99 (1975) (internal quotation marks omitted). To establish Article III standing, then, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" <u>Susan B. Anthony List v. Driehaus</u>, 134 S. Ct. at 2341 (alteration in original) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992)).

The district court here concluded that plaintiffs failed to carry their standing burden at the first element. We review plaintiffs' challenge to this legal conclusion <u>de novo</u>, borrowing from the familiar Rule 12(b)(6) standard, which instructs us to construe the pleadings in plaintiffs' favor, accepting as true all material factual allegations contained therein. See <u>W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP</u>, 549 F.3d 100, 106 (2d Cir. 2008).

For an alleged injury to support constitutional standing, it "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Susan B. Anthony List v. Driehaus, 134 S. Ct. at 2341 (quoting Lujan v. Defenders of Wildlife, 504 U.S. at 560 (other quotation marks omitted)). The Supreme Court has described the imminence requirement differently in different contexts, without specifying whether the descriptions are synonymous or distinct. See, e.g., Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1150 & n.5 (2013) (employing "certainly impending" standard while acknowledging cases referencing "substantial risk" standard, but declining to address possible distinction); accord Susan B. Anthony List v. Driehaus, 134 S. Ct. at 2341 ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." (quoting Clapper)); see also Hedges v. Obama, 724 F.3d 170, 195–96 (2d Cir. 2013).

Where, as here, certain plaintiffs assert injury from threatened prosecution, the Supreme Court has instructed that imminence does "not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced."

16

_MedImmune, Inc. v. Genentech, Inc._, 549 U.S. 118, 128–29 (2007) (collecting cases); accord _Susan B. Anthony List v. Driehaus_, 134 S. Ct. at 2342; see generally _Steffel v. Thompson_, 415 U.S. 452, 480 (1974) (Rehnquist, J., concurring) (observing that "declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity"). Rather, in the context of pre-enforcement challenges to criminal statutes, imminent injury can be established by plausible allegations that a plaintiff "'inten[ds] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by . . . statute, and there exists a credible threat of prosecution thereunder.'" _Susan B. Anthony List v. Driehaus_, 134 S. Ct. at 2342 (quoting _Babbitt v. United Farm Workers Nat'l Union_, 442 U.S. 289, 298 (1979)).[4] The identification of a credible threat sufficient

---

[4] The Supreme Court has not limited standing to pursue pre-enforcement challenges only to plaintiffs intending conduct arguably affected with a constitutional interest. See _MedImmune, Inc. v. Genentech, Inc._, 549 U.S. at 122–25, 128–31 (recognizing standing to challenge patent validity based on clear threat of action for breach of license or infringement). Nevertheless, plaintiffs' intended conduct here is affected by such an interest—specifically, the due process interest in having notice of conduct curtailed by criminal statutes. While many pre-enforcement challenges have implicated the First Amendment right of free expression, see, e.g., _Susan B. Anthony List v. Driehaus_, 134 S. Ct. at 2342–44; _Holder v. Humanitarian Law Project_, 561 U.S. 1, 15–16 (2010); _Babbitt v. United_

to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue. A credible threat of prosecution, however, cannot rest on fears that are "'imaginary or speculative.'" Babbitt v. United Farm Workers Nat'l Union, 442 U.S. at 298 (quoting Younger v. Harris, 401 U.S. 37, 42 (1971)). Nor is it evident where plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." Id. at 298–99 (internal quotation marks omitted). That is hardly this case, at least not as to plaintiffs Native Leather, Copeland, and Perez.

      2.     Native Leather Demonstrates a Credible Threat of Imminent Prosecution for Intended Conduct

Native Leather asserts that it has in the past sold, and wishes again to offer for sale, a variety of common folding knives that it does not think violate

---

Farm Workers Nat'l Union, 442 U.S. at 297–301; Ellis v. Dyson, 421 U.S. 426, 430, 433–35 (1975); Steffel v. Thompson, 415 U.S. at 459, many of these same cases have also presented the due process interest in avoiding vague criminal prohibitions, see Humanitarian Law Project, 561 U.S. at 7, 10–11, 18–25; Babbitt, 442 U.S. at 295–96, 303; Ellis, 421 U.S. at 428, 430, 433–35. The Court has drawn no distinction between these constitutional interests in pronouncing a credible threat of prosecution sufficient to establish standing, nor have defendants urged us to do so here.

18

§ 265.01(1) because they have a mechanical bias in favor of the closed position that must be overcome in order to open them. It does not do so, however, because it cannot confidently determine which such knives defendants will deem proscribed gravity knives, and it does not wish to risk prosecution. This professed fear of prosecution is hardly conjectural or hypothetical, given that defendant Vance recently identified Native Leather as a § 265.01(1) violator and pursued enforcement action against it. In Susan B. Anthony List v. Driehaus, the Supreme Court located a "substantial" threat of future prosecution in a "history of past enforcement." 134 S. Ct. at 2345. The past enforcement there included a determination that probable cause supported a complaint that petitioners had made statements violative of the state law whose constitutionality they wished to challenge. See id. at 2339. The threat is even more substantial here because in Susan B. Anthony List, the complaint was withdrawn, see id. at 2340, while here, Native Leather was officially charged, paid fines, surrendered property in purported violation of law, implemented a prosecution-approved compliance program, and entered into a deferred prosecution agreement that expressly threatened future charges if its terms were not satisfied. See generally Steffel v.

Thompson, 415 U.S. at 456 & n.4 (recognizing imminent threat where parties stipulated that arrest warrants would be sought if plaintiff engaged in specified conduct); see also Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 392 (1988) (recognizing imminent threat where challenged statute would require plaintiffs "to take significant and costly compliance measures or risk criminal prosecution").  One of these terms required Native Leather "to permanently cease and desist" from selling knives prohibited by § 265.01(1), J.A. 251, the very statute that plaintiffs maintain defendants apply in a way that creates constitutionally impermissible vagueness.  While the agreement had expired in all other respects approximately nine months before Native Leather joined this lawsuit, the totality of these circumstances demonstrates a credible threat of imminent prosecution if Vance were to determine that Native Leather was again offering for sale common folding knives that he deemed proscribed gravity knives.  Certainly, defendants do not disavow such enforcement. See, e.g., Susan B. Anthony List v. Driehaus, 134 S. Ct. at 2345 (citing absence of disavowal as further support of credible threat).  Thus, Native Leather is not required either to pursue "arguably illegal activity," Steffel v. Thompson, 415 U.S. at 480

(Rehnquist, J., concurring), or to expose itself to criminal liability before bringing suit to challenge "the constitutionality of [the] law threatened to be enforced," MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 129.

City of Los Angeles v. Lyons, 461 U.S. 95 (1983), is not to the contrary. There, a plaintiff who had been placed in a chokehold by police effecting his arrest sued for declaratory and injunctive relief from an alleged municipal policy of excessive force in arrest. See id. at 97–98, 110. The Supreme Court concluded that plaintiff lacked standing to challenge the alleged policy because he failed to establish (1) an imminent threat that he would again be stopped by police, particularly as he expressed no intent to violate any law in the future; or (2) the blanket application of chokeholds by arresting Los Angeles police officers. See id. at 105–06. By contrast, here Native Leather has expressed its intent (but for the fear of prosecution) to engage in the very conduct that prompted defendants' prior enforcement action. See Susan B. Anthony List v. Driehaus, 134 S. Ct. at 2346 (identifying imminent harm where plaintiff alleged intent to engage in same

speech that was subject of prior enforcement proceeding).[5]  Moreover, while no

defendant in Lyons threatened plaintiff with future chokeholds, defendants here

expressly threatened to prosecute Native Leather for § 265.01(1) violations, as

determined by Vance, if Native Leather violated any term of its deferred

prosecution agreement, including the pledge permanently to cease and desist

from selling gravity knives.  See Steffel v. Thompson, 415 U.S. at 456 & n.4.[6]

---

[5] While petitioners in Susan B. Anthony List pleaded the specific statements they intended to make in future election cycles to support their professed fear of future prosecution, see 134 S. Ct. at 2343, we do not understand such specificity to be essential to standing, particularly where, as here, a statute is challenged for unconstitutional vagueness, see, e.g., Holder v. Humanitarian Law Project, 561 U.S. at 15–16 (concluding that plaintiffs who professed intent to provide designated terrorist groups with "similar support" to that previously provided—but who did not specifically describe future support—had standing to pursue vagueness challenge to prohibiting statute).  Thus, we reject the district court's determination that in this case—where certain plaintiffs have already been subjected to enforcement actions for violating a statute whose application they submit does not allow them to determine what is proscribed—these plaintiffs must specifically identify, by make and model, the common folding knives they wish to sell or possess to demonstrate standing.

[6] Lyons might also be distinguished for another reason:  it did not involve a vagueness challenge.  In Lyons, plaintiff's claim focused on the actions of law enforcement and, in particular, the possibility that an officer might use unconstitutional force in a future encounter.  By contrast, plaintiffs' claims here

Accordingly, to the extent the district court concluded that Native Leather failed to satisfy the injury-in-fact element of standing, we vacate its judgment in favor of defendants and remand for further proceedings.

3.  Copeland and Perez Demonstrate a Credible Threat of Imminent Prosecution for Intended Conduct

Copeland and Perez assert that they have in the past carried, and wish again to carry, common folding knives, but do not do so because they cannot confidently determine which such knives defendants will deem gravity knives prohibited by § 265.01(1), and they do not wish to risk prosecution. Their professed fear is also not conjectural or hypothetical. Each man has already been charged with a § 265.01(1) violation for carrying a common folding knife. Each was obliged to retain counsel to secure an adjournment in contemplation of dismissal. See Susan B. Anthony List v. Driehaus, 134 S. Ct. at 2345. To be sure, that non-merits disposition, unlike the deferred prosecution agreement applicable to Native Leather, did not expressly threaten future prosecution if Copeland or Perez were again to carry the knives prompting charges against

---

focus on the actions and reasonable apprehensions of private actors, who seek to engage in conduct whose legality they cannot reasonably determine.

them.  But certainly nowhere in the record of this litigation have defendants disavowed that they would criminally charge Copeland and Perez again in the same circumstances.  See id. at 2345; Holder v. Humanitarian Law Project, 561 U.S. at 16 (recognizing imminent threat where government had "not argued . . . that plaintiffs will not be prosecuted if they do what they say they wish to do"); see also Babbitt v. United Farm Workers Nat'l Union, 442 U.S. at 302 (noting that plaintiffs were "not without some reason in fearing prosecution" where state had "not disavowed any intention of invoking the criminal penalty provision").  Indeed, the contrary can be inferred from defendant Vance's defense of the wrist-flick test supporting these plaintiffs' past arrests.  See Appellee (Vance) Br. 44–47.[7]

Thus, Copeland and Perez are not similarly situated to the plaintiff in City of Los Angeles v. Lyons, 461 U.S. 95, because (1) they affirmatively wish to

---

[7] Vance makes this point in urging this court to conclude as a matter of law that N.Y. Penal Law §§ 265.00(4)–(5) and 265.01(1) are not void for vagueness as applied to common folding knives designed to resist opening from their folded and closed position.  See Appellee (Vance) Br. 41–55.  We decline to rule on this matter in advance of the district court, which has not yet had an opportunity to construe the statutory text or to review the record evidence developed in discovery as to defendants' application of the statute.

engage in the very conduct that resulted in defendants charging them with violations of § 265.01(1); and (2) the record indicates that, upon becoming aware of any such conduct by plaintiffs, defendants would again charge them with violations of law.[8]

Because these circumstances demonstrate a credible threat of prosecution, neither Copeland nor Perez is required to pursue arguably illegal activity or to expose himself to criminal liability before bringing suit to challenge the constitutionality of the law threatened to be enforced.  See MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 129; Steffel v. Thompson, 415 U.S. at 480 (Rehnquist,

---

[8] In Lyons, the Supreme Court emphasized that plaintiff had nowhere asserted that Los Angeles police always employed a chokehold in citizen encounters, or that the city authorized such conduct.  See City of Los Angeles v. Lyons, 461 U.S. at 106.  Thus, it was "no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse."  Id. at 108.  By contrast, the crux of plaintiffs' claim here is that defendants generally "apply the State laws prohibiting . . . gravity knives to include Common Folding Knives that—in their view—can be 'readily' opened with a 'wrist-flicking' motion," with the result that "NYPD officers arrest and charge individuals found carrying such Common Folding Knives with Criminal Possession of a Weapon in the Fourth Degree, and [Vance] prosecutes the alleged offenses."  Am. Compl. ¶ 3; see id. ¶¶ 15–16 (alleging that defendants "continue to enforce" and "threaten to enforce" gravity knife prohibition).

J., concurring). To the extent the district court concluded that these plaintiffs failed to satisfy the injury-in-fact element of standing, we vacate its judgment in favor of defendants and remand for further proceedings.

4.     <u>Knife Rights and Knife Rights Foundation</u>
       <u>Fail To Demonstrate Standing</u>

We reach a different conclusion as to the standing of organizational plaintiffs Knife Rights and Knife Rights Foundation.

Insofar as these plaintiffs sued on behalf of their members, "[i]t is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." <u>Nnebe v. Daus</u>, 644 F.3d 147, 156 (2d Cir. 2011) (collecting cases). Plaintiffs argue that <u>Nnebe</u> and the precedent on which it relies conflict with <u>Warth v. Seldin</u>, 422 U.S. at 511. But as <u>Nnebe</u> observed, this court has reaffirmed its rule as to organizational plaintiffs' representative standing even after <u>Warth v. Seldin</u>; thus, individual panels are bound "by the implicit determination of prior panels that the rule survives <u>Warth</u> 'until such time as [our prior decisions] are overruled either by an <u>en banc</u> panel of our Court or by the Supreme Court.'" <u>Nnebe v. Daus</u>, 644 F.3d at 156

26

n.5 (alteration in original) (quoting United States v. Wilkerson, 361 F.3d 717, 732 (2d Cir. 2004)).[9]

Insofar as the organizational plaintiffs sue on their own behalf, they must independently satisfy the requirements of Article III standing. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 378–79 (1982) (holding that organization's

---

[9] Our precedent appears to have framed "standing" in the context of organizational claims under § 1983 more as a statutory than as a constitutional question. See League of Women Voters v. Nassau Cnty. Bd. of Supervisors, 737 F.2d 155, 160 (2d Cir. 1984) ("This Circuit has restricted organizational standing under § 1983 by interpreting the rights it secures to be personal to those purportedly injured."); Aguayo v. Richardson, 473 F.2d 1090, 1099 (2d Cir. 1973) (Friendly, C.J.) (framing question as "whether the welfare organizations have standing under the civil rights statute, 42 U.S.C. § 1983, and its jurisdictional implementation, 28 U.S.C. § 1343(3)," and concluding that neither language of statute nor its history "suggests that an organization may sue under the Civil Rights Act for the violation of rights of members"). As such, our adherence to this precedent in concluding that Knife Rights and Knife Rights Foundation lack "standing" might be understood to speak to the plausibility of their representational claim under § 1983, rather than to our own power under Article III. See generally Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387 & n.4 (2014) (observing that whether plaintiff comes within the "zone of interests" protected by statute "requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim," but that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case" (emphasis in original) (internal quotation marks omitted)).

standing to sue on its own behalf requires same inquiry as in case of individual: "Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?" (internal quotation marks omitted)); accord Nnebe v. Daus, 644 F.3d at 156. Knife Rights and Knife Rights Foundation attempt to carry this burden by citing the expenses they incurred in opposing defendants' application of § 265.01(1). Even assuming that such expenditures "perceptibly impaired" these organizations' activities, they at best demonstrate past injury. Havens Realty Corp. v. Coleman, 455 U.S. at 378–79 (concluding that nonprofit organization established standing in its own right to pursue Fair Housing Act challenge to apartment owner's racial steering practices, where organization's "ability to provide counseling and referral services" to its clients had been "perceptibly impaired" by need to "devote significant resources to identify and counteract" defendants' challenged practices (internal quotation marks omitted)). Such injury might admit standing to sue for compensatory damages. See id. But it is not an injury that can be redressed through the prospective declaratory and injunctive relief sought in this action. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109 (1998) ("Because

28

respondent alleges only past infractions of [law], and not a continuing . . . or . . . future violation, injunctive relief will not redress its injury."); see also City of Los Angeles v. Lyons, 461 U.S. at 112–13 (recognizing standing to pursue damages remedy for past injury, but denying standing to seek injunctive relief absent imminent threat of future harm).

In their reply brief, plaintiffs briefly suggest that injunctive relief would redress future injury by precluding defendants from applying § 265.01(1) in a way that will prompt these organizations to incur opposition expenses. Even if these organizations' voluntarily incurred future expenses could satisfy the injury-in-fact element of standing, cf. Clapper v. Amnesty Int'l USA, 133 S. Ct. at 1155 (holding that plaintiffs "cannot manufacture standing by incurring costs in anticipation of non-imminent harm"), such expenses would not be incurred because Knife Rights and Knife Rights Foundation themselves face any imminent threat of prosecution under § 265.01(1). Thus, because these plaintiffs do not allege a credible threat that they will be prosecuted under § 265.01(1), see Holder v. Humanitarian Law Project, 561 U.S. at 15, they must show that both anticipated expenditures and ensuing harm to their organizations' activities are

29

"certainly impending," <u>Clapper v. Amnesty Int'l USA</u>, 133 S. Ct. at 1147.  They

have not even attempted to make such a showing.

Accordingly, we affirm that part of the judgment dismissing Knife Rights

and Knife Rights Foundation for lack of standing.

B.    <u>Denial of Leave To Amend</u>

Plaintiffs contend that, even if their first amended complaint fails to

demonstrate standing, the district court erred in denying their request to file a

second amended complaint.  Federal Rule of Civil Procedure 15(a)(2) states that a

party may amend its pleadings more than once "only with the opposing party's

written consent or the court's leave."   At the same time, the rule instructs that

courts should "freely give" leave to amend "when justice so requires."  <u>Id.</u>  This

comports with the law's "strong preference for resolving disputes on the merits."

<u>Williams v. Citigroup Inc.</u>, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation

marks omitted).   At the same time, it affords district courts considerable

discretion to deny amendment when there has been "'undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, [or] futility of amendment.'" <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 191 (2d Cir. 2008) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)); <u>see</u> <u>AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.</u>, 626 F.3d 699, 725 (2d Cir. 2010).

Where, as here, parties appeal the denial of leave to amend, we review only for abuse of discretion, <u>see</u> <u>Williams v. Citigroup Inc.</u>, 659 F.3d at 212, which ordinarily we will not identify absent an error of law, a clearly erroneous assessment of the facts, or a decision outside the available range of permitted choices, <u>see</u> <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 140 (2d Cir. 2013).

Plaintiffs contend that the district court's determination that amendment would be "especially prejudicial" to defendants was infected by factual error as reflected in statements that summary judgment motions had already been filed and granted, and that discovery had concluded. <u>Knife Rights, Inc. v. Vance</u>, No. 11 Civ. 3918 (KBF), 2013 WL 6182921, at *2–3 (S.D.N.Y. Nov. 20, 2013). Upon review of the record, it appears that no summary judgment motions had been filed or decided in the case, and that the deposition of plaintiffs' proposed expert remained to be taken. Nevertheless, we do not think the district court's

misstatements on these points reflect a clearly erroneous assessment of the relevant facts. The court had, indeed, granted judgment in favor of defendants, albeit on motions to dismiss rather than on motions for summary judgment. Moreover, the misstatement was of no significance because the proposed amendment sought to supplement plaintiffs' pleadings as to standing, the very issue on which dismissal had been granted. Thus, there is no reason to think that the district court was referencing any other judgment than the one it had in fact granted.

As for the outstanding defense deposition of plaintiffs' expert—whose opinions plaintiffs presumably knew—plaintiffs do not assert that the proceeding would have made any difference to the challenged dismissal determination. Thus, the misstatement as to the status of discovery was not material to the denial of leave to amend.

Plaintiffs further fault the district court's determination that amendment would have prejudiced defendants by requiring further discovery. We identify no error in this conclusion as it pertained to plaintiffs Knife Rights and Knife Rights Foundation. To cite a single example, the fact that the second amended

complaint alleges injury to <u>both</u> organizations' activities, whereas the first amended complaint alleged such injury only to Knife Rights Foundation, supports the district court's additional discovery determination.

As to Native Leather, Copeland, and Perez, the additional discovery challenge appears moot as plaintiffs sought leave to amend to avoid dismissal of their first amended complaint, and we here vacate that dismissal as to these three plaintiffs. Nevertheless, we note that the proposed amendment identifies the makes and models of the common folding knives that Copeland and Perez assert they wish to possess—matters that may be relevant to the further pursuit of this action, but that would not appear to require further discovery. Thus, we do not foreclose the district court on remand from taking such steps—whether by way of amendment, a simple interrogatory response, or otherwise—as it may deem warranted to make these knife models part of the record, so as to facilitate orderly future proceedings.

III. **Conclusion**

To summarize, we conclude as follows:

1.     Plaintiffs Native Leather, Copeland, and Perez have standing to challenge defendants' application of N.Y. Penal Law §§ 265.00(5) and 265.01(1) because each has expressed a present intent to possess such knives (but for defendants' challenged enforcement actions) and each has demonstrated a credible threat of prosecution based on defendants' (a) recent enforcement actions against them, (b) express threat to prosecute Native Leather further under the terms of a deferred prosecution agreement, and (c) continued defense of the wrist-flick test that allegedly prompted plaintiffs' past violation charges.

2.     Our precedent precludes Knife Rights and Knife Rights Foundation from asserting standing on behalf of their members under 42 U.S.C. § 1983.  Nor can these organizational plaintiffs demonstrate standing to sue on their own behalf based on claimed injury to their activities from expenditures diverted to oppose defendants' actions.  Such past injuries cannot be redressed by the declaratory and injunctive relief sought in this action, and plaintiffs fail to

demonstrate that any future expenditures and attending injuries are certainly impending.

3.     The district court did not abuse its discretion in denying plaintiffs' motion for leave to amend their complaint a second time to address defects in standing.

Accordingly, the district court's judgment of dismissal is AFFIRMED as to Knife Rights and Knife Rights Foundation, and VACATED as to Native Leather, Copeland, and Perez.  The case is REMANDED as to these three plaintiffs for further proceedings consistent with this opinion.