# EXHIBIT "H"

EXHIBIT "H"

Plaintiffs' Trial Exhibit P-13



WWW.AKTI.ORG

### U.S. Sporting Knife Industry - $5.9 Billion Economic Impact on U.S. Economy
- 3,881 direct U.S. Employees at 61 Companies
- 19,405 Ancillary Support Jobs in other industries
- $986.87 Million Gross Revenues (2007) at manufacturer/importer level
- $5.921 Billion Total Economic Impact on U.S. Economy

*Source: 2007 Report – The AKTI State of the Sporting Knife Industry*

### Anglers and Hunters Spend Nearly $65 Billion Annually
- 30 Million people fished in 2006 (16 and older)
- Anglers spent $42 Billion
- 12.5 Million people hunted in 2006
- Hunters spent $22.9 Billion

*Source: U.S. Department of the Interior, Fish & Wildlife Service, and U.S. Department of Commerce, U.S. Census Bureau. 2006 National Survey of Fishing, Hunting, and Wildlife-Associated Recreation.*

### 35.6 Million Households Own Pocket Knives; 24.8 Million Own Hunting Knives
- 35,595,000 Million U.S. Households own an outdoor or pocket knife
- Of all outdoor and pocket knife owners - 68.8 % are men, 31.2 % are women
- Of total U.S. population - 22.97 % of pocket knife owners are men, 9.72 % are women
- 24,775,000 Million U.S. Households own a hunting knife
- Hunting knife owners are 60.46 % men, 39.54 % women
- Of total U.S. population - 13.84 % of hunting knife owners are men, 8.77 % are women

*Source: 2008 Doublebase Mediamark Research & Intelligence*

### Assisted-opening and One-hand-opening Knives are 80 % of All Knives Sold
- Courts in California, Texas, Illinois and Michigan have expressly ruled that assisted-openers are not switchblades
- 90 % of all hunters and fishermen use knives, often the same knives they carry every day
- 80 % of new knife sales in past five years were one-hand openers and assisted-openers
- Multi-tools with one or more knife blades are considered one-hand-openers for purposes of this study. They are generally banned as carry-ons by airlines and school districts with zero-tolerance policies.

*Source: 2007 Report – The AKTI State of the Sporting Knife Industry (unpublished data)*

### 30-40 Million Public Safety, Non-Issue Military, Construction, Recreational Users
- 900,000 active law enforcement officers employed (2006) - 90 % own at least three knives
- 2.1 Million EMTs, firefighters, security guards (2006) - 90 % own knives or multi-tools
- 2.2 Million active and reserve military servicemen/women - 90 % own at least two knives
- 7.7 Million construction employees (2008) - 60 % own at least two knives, 35 % own multi-tools
- 17.7 Million campers (2005) - 70 % own knives, 20 % own multi-tools
- 16.9 Million boaters/sailors (2007) - 40 % own knives, 30 % own multi-tools
- 4 Million Boy Scouts and volunteer/leaders (2007) - 75 % own knives
- 140 Million hikers, bikers, landscapers, gardeners (2008) - 20 % own knives

*Source: Estimate of total calculated by AKTI as range due to overlapping hobbies and job functions. 2008 Proprietary Report prepared for AKTI member company from data supplied by New York Times, Wall Street Journal, CNN Money, Bureau of Labor Statistics, U.S. Census Bureau, Congressional Budget Office, nmma.org, usdoj.gov, undercurrent.org, outdoorindustryfoundation.org, National Garden Association and other sources deemed reliable but unnamed per confidentiality agreements with AKTI.*



 

Keeping Knives in American Lives Since 1998



# AKTI Approved Knife Definitions

The American Knife and Tool Institute (AKTI) is a 501(c)6 nonprofit organization representing all aspects of the knife industry. As a part of its mission to educate and inform members of the knife community as well as the public, legislative and law enforcement entities about knives and knife laws, AKTI offers these definitions for knife designs or knife styles which are the subject of federal and /or state prohibitions.

AKTI suggests that law-abiding citizens should be able to carry knives, cutting tools, and for that matter edged weapons, without the fear of arbitrary, inconsistent and ineffective restrictions as to blade shape, style, length or other such characteristics.

AKTI further suggests that to the extent there are existing laws which prohibit the possession or carrying of certain types of knives, these laws must be construed narrowly and with deference to the United States Constitutional requirement of due process, as well as the right reserved to the citizens by the United States Constitution and the Constitutions of various states to keep and bear arms.

AKTI encourages law enforcement and the administration of criminal justice to be guided by these definitions. It must be noted, however, that these are recommendations, and AKTI cannot require any particular officer or court to observe them. Accordingly, AKTI cannot be responsible for any adverse consequences deriving from the misapplication or failure to apply these recommended definitions. See Expanded Introduction. (/resources/akti-approved-knife-definitions-intro/)

Also see:
Understanding Bias Toward Closure and Knife Mechanisms (/resources/additional-definitions) | Protocol for Measuring Blade Length (/resources/akti-protocol-for-measuring-knife-blade-length)

- Ballistic Knife (/resources/akti-approved-knife-definitions/#ballistic-knife)
- Bias Toward Closure (/resources/akti-approved-knife-definitions/#bias-toward-closure)
- Bowie Knife (/resources/akti-approved-knife-definitions/#bowie-knife)
- Dagger (/resources/akti-approved-knife-definitions/#dagger)
- Dirk (/resources/akti-approved-knife-definitions/#dirk)
- Effective Cutting Edge (/resources/akti-approved-knife-definitions/#effective-cutting-edge)
- Gravity Knife (/resources/akti-approved-knife-definitions/#gravity-knife)
- Inertia Knife (/resources/akti-approved-knife-definitions/#inertia-knife)
- Switchblade (/resources/akti-approved-knife-definitions/#switchblade)
- Stiletto (/resources/akti-approved-knife-definitions/#stiletto)

## Ballistic Knife

A device by which a blade becomes separated from the handle and is propelled or becomes a missile, utilizing energy stored by some mechanism within the device. A ballistic knife does not include a cross bow, spear gun, or archery bow. Further, the term ballistic knife does not include an implement described or labeled as a "throwing knife" unless the blade of such throwing knife becomes separated from the handle during the intended and normal use of the device.

## Comments on Ballistic Knives

*Among those states which currently prohibit "ballistic knives" are Colorado, Florida, Georgia and Virginia.*

Examples of a ballistic knife, which can be practically and routinely used as a knife in the conventional sense are unknown.

The distinguishing feature of a ballistic knife is that the blade can be launched or propelled as a projectile or missile separate from the handle. It is not inconceivable, however, that prohibitions as to ballistic knives might inappropriately be applied to a knife designed to be thrown. Accordingly, the definition includes the essential requirement of separation from the handle and the use of stored, as opposed to kinetic, energy. It is the position of AKTI that a ballistic knife should be regulated in the same manner as an archery bow, cross-bow, speargun, etc.

Back to the top (/resources/akti-approved-knife-definitions/#top)

## Bias Toward Closure

The tendency to remain in the closed or folded position, imposed by a spring or mechanical load, unless acted upon by manual force.

For more see Understanding Bias Toward Closure and Knife Mechanisms (/resources/additional-definitions).

Back to the top (/resources/akti-approved-knife-definitions/#top)

## Bowie Knife

It is the position of AKTI that the term "Bowie Knife" is too vague and cannot be satisfactorily defined with sufficient precision. Accordingly, any law which provides an offense has been committed by one who possesses or carries a "Bowie Knife" is constitutionally defective.

## Comments on Bowie Knives

*"Bowie" knives are prohibited in such diverse states as Texas, Rhode Island, Illinois and Idaho There is, however, no definitive criteria as to what exactly constitutes a Bowie knife.*

In September of 1827, a small group of individuals gathered on a sand bar along the river at Natchez, Mississippi for the purpose of fighting a duel. The members of this group included James Bowie, who was actually a "second" rather than one of the two principals to the duel. At some point, the orderly conventions of the duel were abandoned, and a melee developed, during which Bowie sustained three separate gunshot wounds, several edged-weapon wounds, and other trauma. Using a knife of some type, Bowie inflicted fatal wounds on two opponents.

There is no known definitive description or drawing of the knife that Bowie used in the 1827 Natchez sand bar fight. The whereabouts or disposition of the knife is similarly unknown.

Bowie's success in that encounter caused him to achieve considerable celebrity, and the term "Bowie Knife" quickly entered the lexicon. Bowie's status as a defender at the siege of the Alamo in 1836 no doubt cemented his place in American history. Everyone wanted a knife like that of Bowie, although few knew exactly what it looked like.

In the late 1820s and early 1830s, schools of knife fighting were established in and around New Orleans, Louisiana to teach the technique of fighting with the "Arkansas Toothpick" and/or "Bowie Knife."(8) (/resources/footnotes-definitions/#note8) Concurrently, states in the lower Mississippi drainage acted to outlaw such knives. Typical of these was the Tennessee Law at Chapter 137 of the Acts of 1837-38, which provided as follows:

"Any person who carries under his cloths, or concealed about his person, a Bowie Knife, Arkansas Toothpick, or other weapon of like form, shape, or size, is guilty of a misdemeanor, . . ." Section 6630 of Shannon's Code (Tennessee).

In the intervening 170 or so years since the Natchez Sandbar duel, the label "Bowie Knife" has been applied to a wide variety of styles. No agreement exists among historians as to exactly what constitutes a Bowie Knife. Given this uncertainty and a lack of agreement among people who have exhaustively studied and researched the topic, AKTI suggests that "Bowie Knife," and for that matter "Arkansas Toothpick," are terms which are simply too generalized and vague, and about which there would be too much potential for inconsistent application as to be enforceable under the United States Constitution.

If historians who have studied and researched the topic are incapable of agreeing on a definition of a Bowie Knife, then ordinary persons are not given sufficient guidance so that they may know exactly what is or is not prohibited.

Back to the top (/resources/akti-approved-knife-definitions/#top)

## Dagger

A knife having a generally straight fixed blade with dual effective cutting edges.

## Comments on Daggers

*A substantial number of American jurisdictions prohibit the possession or carrying of daggers. Among those states are Hawaii, Massachusetts, Minnesota, Missouri, New Mexico and Iowa.* However, there is no rational explanation as to why governments should prohibit daggers. Moreover, typically there is no guidance as to whether any given object is or is not a dagger. The California statutory definition is illustrative.

"As used in this section, a 'dirk' or 'dagger' means a knife or other instrument with or without a hand guard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. A non-locking folding knife, a folding knife that is not prohibited by Section 653K, or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and locked into position." *West's Annotated California Penal Code, Section 12020( c)(24).*

The California law provides that any person who "carries concealed upon his or her person any dirk or dagger" is subject to punishment by imprisonment for a period not exceeding one year. *Section 12020 (a)(4)*.

There is obviously a problem where a fundamental right reserved to the people under the Constitution is infringed by such an arbitrary and indefinite state law. We have the right to keep and bear arms. If the state must, for some compelling reason, restrict this right, then it must do so in the least restrictive manner and with specificity. The California definition of dagger, which is essentially an instrument capable of ready use as a stabbing weapon, is very non-specific, and for that matter, overboard.

The answer to the question of whether an item is or is not a dagger should not be determined on the basis of the identity of the person possessing the object nor, for that matter, the whim of a law enforcement officer. It should not turn on whether the person is wearing a biker vest or a vested suit. Moreover, a citizen should not need to seek expert advice from a military historian, or one who has studied the history and development of weapons. The law should be written with clarity.

AKTI notes that Section 5.07 of the Model Penal Code, captioned "Prohibited Offensive Weapons," provides:

. . . "Offensive Weapon" means any bomb, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, a blackjack, sandbag, metal knuckles,**dagger**, or other implement for the infliction of serious bodily injury that **serves no common lawful purpose** (Model Penal Code Section 5.07 – emphasis supplied).

The authors of the Model Penal Code neither define dagger nor offer any explanation as to why it would be suitable **only** for offensive uses and have no other common, lawful purpose. AKTIsuggests that a knife coming within the suggested definition of a dagger can be a useful tool for innumerable lawful and especially defensive purposes. Given that we have a right to keep and bear arms, we should have a right to keep and bear effective arms. It makes no sense to cede the possession and bearing of effective edged weapons to those willing to live and act outside the law.

Back to the top (/resources/akti-approved-knife-definitions/#top)

## Dirk

It is the position of AKTI that the label "dirk" is too vague and cannot be satisfactorily defined with sufficient precision. Accordingly, any law which provides an offense has been committed by one who possesses or carries a dirk or dirk knife is constitutionally defective.

## Comments on Dirks

*Various states, including California (see comments for Dagger), Connecticut, Maine, Ohio, Georgia, New Mexico, Minnesota and Idaho prohibit dirks.*

A modicum of research will reveal that what is now understood to be the "classic" or historically correct example of a "dirk" developed in mid-17th century Scotland. (9) (/resources/footnotes-