# EXHIBIT "F"

# EXHIBIT "F"

Plaintiffs' Trial
Exhibit
**P-19**

# UNITED STATES PATENT OFFICE.

CLAES W. BOMAN, OF NEW YORK, N. Y., ASSIGNOR TO JOSEPH RECKEN-DORFER, OF SAME PLACE.

## HOLDER FOR KNIFE-BLADES.

SPECIFICATION forming part of Letters Patent No. 273,292, dated February 27, 1883.

Application filed September 30, 1882. (No model.)

*To all whom it may concern:*

Be it known that I, CLAES W. BOMAN, of the city, county, and State of New York, have invented certain new and useful Improvements
5 in Knives and Similar Articles, of which the following is a specification.

My invention relates to that class of knives and analogous articles in which a sliding blade or its equivalent, capable of freely mov-
10 ing back and forth in a case or handle within certain limits, so that it will drop by gravity in one direction or the other, according to which end of the case is held uppermost, is combined with a spring locking device adapted to lock
15 the instrument in its advanced or retracted position.

For the purpose of disengaging the locking mechanism from the blade it has been usual to make use of a depressible knob, button, or its
20 equivalent, which, when depressed, acts to release the blade. Heretofore this knob or its equivalent has been placed on the side of the case or handle, and the consequence is, that when the handle is grasped in the hand there
25 is liability, when the knife is in use, that the knob or button which projects laterally from the handle will be pressed by the hand, with the effect of releasing the blade. Furthermore, the knob or button when thus arranged
30 renders the knife awkward to handle, and forms a lateral projection which is apt to catch in the pocket.

In order to remedy these and other objections, and to obtain a knife of this kind which
35 is more convenient to carry and use, I have combined with the blade, the handle, and locking device a pressure-cap, which is placed at the rear end and on the prolongation of the knife-handle, is longitudinally movable, and is
40 combined or provided with a retracting-spring, which moves the cap in a direction opposite to that in which it is pressed by hand. The cap is connected with the locking mechanism in such manner that when pushed forward by
45 hand against the stress of the retracting-spring it will act to move the locking mechanism in a direction to release the blade. When hand-pressure is removed from it, the retracting-spring returns it at once to its normal posi-

tion, and the locking mechanism is in condi-
50 tion to automatically engage the blade at the proper point. By "retracting-spring" I intend the spring which returns the pressure-cap to the position from which it is moved by hand. The locking mechanism should of course be
55 spring-controlled, so as to automatically engage the blade, and the same spring which controls the pressure-cap can, if desired, be used to control the locking mechanism. The construction and arrangement of the locking
60 mechanism can obviously be widely varied, and I do not restrict myself to any special form of such mechanism. In illustration of my invention I have shown in the accompanying drawings locking mechanism analogous to the
65 lead-grasping mechanism of an "automatic" pencil; but in lieu of that mechanism other blade-locking devices can be combined with and operated by the spring-controlled pressure-cap.

I have hereinbefore stated that the inven-
70 tion is applicable to knives and analogous or similar articles. I include under this head tooth-picks, button-hooks, and other flat articles which can be arranged in small compass like a knife-blade.

75 In the drawings, Figure 1 is a longitudinal central section of an instrument embodying my invention, the parts being represented in the position they assume when the knife-blade protrudes. Fig. 2 is a like section of the same
80 with the blade retracted within the case or handle. In this figure the pressure-cap is shown pushed forward far enough to permit the jaws to open.

A is the external tubular case or handle, of
85 any suitable configuration and material. Within it is fastened the metallic tube B, which virtually forms part of the handle or case, and constitutes also a support for the cylindrical portion of the shank or tang of the blade C,
90 adapted to slide freely back and forth therein. The rear portion of the shank is reduced to the form of a comparatively slender stem, $x$, which extends rearwardly between jaws $b$, which are capable of sliding lengthwise in the tube B,
95 the extent of their movement being limited by a stud on one of their stems, which will project into a slot in the tube, or by other suita-

2                                    273,222

ble means analogous to those employed in the "automatic" pencil for a like purpose. The jaws, which are provided with external swells or inclines, like the jaws of an "automatic" lead and crayon holder, have a spring action, and normally stand apart. They are forced together, so as to grasp the stem $x$, by being drawn back against the part $a$ of the tube B, which is formed by cutting away the tube on opposite sides at that point, and then bending inwardly the metal at the rear edges of the openings thus formed, which produces a contracted tip or nozzle similar in function to the tip or nozzle of an "automatic" pencil. The jaws are normally held in a closed condition by means of a spiral retracting-spring, $e$, which is confined between the end of the tube B and a pressure-cap, $f$, fastened on the rearwardly-projecting end of the jaws, which pressure-cap projects far enough beyond the rear of case A to allow it to be pushed inwardly by hand sufficiently to release the jaws when it is desired to loose their grasp on the stem $x$ of the knife-blade. In the stem $x$ are cut peripheral notches $y$ $y$ at the points where the jaws meet it at the two extremes of its movement, these notches being made for the purpose of permitting the jaws to engage the stem, and thus lock it in position, either when the blade projects, as shown in Fig. 1, or is retracted, as shown in Fig. 2. For the purpose of limiting the range of movement of the blade, the stem $x$ at its rear is provided with a pin or finger, $g$, which projects through the space between the stems of the jaws $b$ into a longitudinal slot, $h$, of the proper length formed in the tube B.

The operation is as follows: Suppose the blade to be retracted, and it be desired to project it from the case. The device is held point downward, and the pressure-cap is pushed in. The jaws are thus caused to loose their hold on the stem $x$, and the released knife falls by its gravity until the finger $g$ brings up against the front end of slot $h$. In this position the front notch, $y$, in the stem will, when pressure is removed from the cap $f$, be entered by the jaws $b$, and the knife will then be locked in its advanced position. To retract the blade, the same operation is gone through with, holding the point of the instrument uppermost.

In this instrument it will be noticed that the following features are combined:

First. The blade, when released, is free to drop by gravity in one direction or the other within prescribed limits in the handle.

Second. The device for releasing the blade is on the rear end of the handle, and has a longitudinal instead of lateral movement; it is thus out of the way, and even if pressed by the hand in grasping the handle, it cannot be moved by this pressure, since the pressure is from the side instead of from the end.

Third. The releasing device thus placed at the rear of the handle is spring-controlled, so that it will automatically return to its original position when released from forward pressure. It thus permits the knife to be easily and conveniently handled with one hand only.

By "pressure-cap" I intend not only the special form of cap shown in the drawings, but any spring-controlled longitudinally-movable stem or prolongation of the handle arranged in the same position, and operating, when pressed forward against the stress of the spring, to effect the release of the blade or its equivalent.

Having now described my improvements, what I claim as new and of my invention is as follows:

The combination of the case or handle, the blade held in said case, and capable of sliding freely back and forth therein within certain limits, so that it will drop by gravity in one direction or the other, according to which end of the case is held uppermost, spring-controlled blade-locking mechanism, and the longitudinally-movable spring-controlled pressure-cap placed at the rear end of the handle, and adapted to disengage the blade from the locking mechanism, substantially as and for the purposes hereinbefore set forth.

In testimony whereof I have hereunto set my hand this 22d day of September, 1882.

CLAES W. BOMAN.

Witnesses:
  LEOPOLD ANSBACHER,
  JOE W. SWAINE.

(Model.)

## I. W. HEYSINGER.
### POCKET KNIFE.

No. 307,767.          Patented Nov. 11, 1884.



WITNESSES:

INVENTOR

Isaac W. Heysinger.

N. PETERS, Photo-Lithographer, Washington, D. C.

KR01455

# UNITED STATES PATENT OFFICE.

ISAAC W. HEYSINGER, OF PHILADELPHIA, PENNSYLVANIA.

## POCKET-KNIFE.

SPECIFICATION forming part of Letters Patent No. 307,767, dated November 11, 1884.

Application filed April 23, 1884. (Model.)

*To all whom it may concern:*

Be it known that I, ISAAC W. HEYSINGER, of Philadelphia, in the county of Philadelphia and State of Pennsylvania, have invented
5   a certain new and useful Improvement in Pocket-Knives, &c., of which the following is a full, clear, and exact description, reference being had to the drawings accompanying and forming a part of this specification, in which—
10   Figure 1 is a longitudinal vertical section of a knife embodying my invention, in which double parallel blades are shown. Fig. 2 is an enlarged similar view in section of the front portion of a single-bladed knife of my
15   construction. Fig. 3 is a view of the knife as it appears when in use. Figs. 4 and 5 show slightly different forms of the catch-actuating spring. Fig. 6 is a view of the metal blank out of which I prefer to form the catch
20   which holds the blade when the same is projected and closes the opening against foreign bodies when the same is retracted. Fig. 7 shows the catch in its completed form. Fig. 8 exhibits the forward end of the knife with
25   the blade-slot closed by the front edge of the spring-catch. Fig. 9 is a cross-sectional view of the handle, showing the top and bottom plates, *a a*, and the rim A, to which they are attached. Figs. 10, 11, 12, 13, and 14 show
30   samples of various similar tool-blades, which are adapted to be used interchangeably, if desired.

The lettering in all the figures is uniform.

My invention relates to a pocket, dirk, or
35   hunting knife, or similar tool in which the blade is carried in a longitudinal slot or channel in the handle, opening externally at one end, and is adapted to be projected point foremost from the open end of the said channel and
40   held thus projected by a stop or catch, upon releasing which the blade is retracted into the handle, where it lies concealed until required for use. The advantages of this form of tool are obvious, especially in emergencies,
45   as it can be readily operated with one hand, which is not the case with pocket-knives or like tools as ordinarily constructed.

The first part of my invention consists in providing the handle of the knife or other
50   tool with a spring-catch pivoted at or near the open end of the blade-slot, said catch being so constructed as to turn upon a central pivot alongside the blade, so that the knife as ordinarily held in the hand for use will present immediately under the thumb and over the pivot a segment of a cylinder or other elevated part, which, being properly roughened, will be rotated by drawing the thumb backward tangentially to the thumb-piece
60   along the axis of the handle, and thus raise the front edge of the catch and uncover the end of the blade-slot, whereby the blade will drop out by gravity if the handle be held downward, and conversely, or may be project-
65   ed by a sudden jerk, or by the action of a concealed spring. This tangential motion of the thumb in opening the knife, which combines the ordinary pressure of the hand against the handle, as when using it habitually, with a
70   simple slight backward pull, is so easy and natural that the knife is opened absolutely without effort, and almost without thought, while its action is instantaneous, either for opening or closing up the blade.

The second part of my invention consists of
75   providing the front part of the thumb-catch with a broad flap or edge as wide as the blade used therewith, which is adapted to close over the open end of the blade-channel and act as a perfect valve, completely closing the slot
80   against the entrance of foreign substances—such as dirt or moisture—which usually in time render this class of tools inoperative if carried in the pocket, the said edge also acting, when raised, as a stop to impinge against
85   the blade and prevent the retraction thereof by engaging in a transverse groove in the shank of the blade.

The third part of my invention consists of providing the blade with transverse grooves
90   at various points along its length, in addition to the groove which stops the blade when fully projected, so that the blade can be firmly fixed at various distances, whereby the knife may be used for purposes to which a long blade is
95   not adapted—as for sharpening pencils, as an eraser, for surgical uses as a lancet or bistoury, or to secure increased strength for heavy work upon the part of the blade required to be exposed.

100

KR01456

The fourth part of my invention consists in adapting a handle substantially of the class of knives specified to receive interchangeably various analogous tools—such as crochet-nee-
5 dles, brad-awls, screw-drivers, marking-pen-cils, button-hooks, &c.—which may be insert-ed and used at pleasure with a handle common to all, by which means relative cheapness as well as convenience is secured, the blades in
10 themselves being comparatively inexpensive and easy to make.

In addition to the foregoing, my invention consists of other peculiarities of construction, which will be hereinafter indicated in detail.
15 Referring to the drawings, Fig. 3 shows a knife constructed in accordance with my in-vention and having the blade projected. As will be seen, it consists of a hollow handle, A, the forward end of which is provided with a
20 lateral thumb-catch, D, by which the blade is held in place, as shown. The blade B is pro-vided with a number of cross-notches, b b b, along its length, by means of which the catch D is enabled to seat itself therein and lock the
25 blade at various distances of projection. These notches are formed in the body of the blade at its thickest part, and where beveled off to an edge they run out to nothing, as is shown.

In addition to the notches shown in Fig. 3,
30 which I sometimes dispense with in practice, there is another or principal notch, c, (shown in Fig. 10,) which holds the blade when fully projected, and the shank of the blade in rear of the notch c is made rectangular or solid in
35 cross-section, to slide freely in the groove of the handle and support the edges of the blade from knocking against the sides thereof when retracted. Near its rear end is a stop-lug, B', whereby the forward motion of the blade is
40 arrested when the cross-groove c lies beneath the forward edge or lip of the catch D by abutting against a projection within the han-dle A, whereby the blade B is allowed to drop out only to its proper position when the han-
45 dle is held downward.

The slot, groove, or channel in which the blade travels is shown in Fig. 2. It extends nearly from end to end of the handle, and is of a shape to correspond to the solid shank of
50 the blade B, which reciprocates like a plun-ger longitudinally therein. Near its open end (see Fig. 8) are raised lateral ears h, one upon each side, through which passes the cross-pin f, upon which turns the catch D when acted
55 upon by the thumb. This catch D may be of various forms within certain limits, but is preferably formed in the manner shown, with an elevation above the pin f, which I usually make the segment of a hollow cylinder (see
60 Fig. 7) having lugs d d pierced with holes d' d', through which passes the pin f, upon which the catch turns. The front edge or lip of the catch (see c³, Fig. 8) closes completely over the slot in the forward end of the handle
65 against the opposite side of the said blade-

slot, so as to make a symmetrical finish and present only a solid end, as habitually carried in the pocket; but when the elevated or roughened surface of the catch D is turned upon its pivot, by a tangential pull thereupon 70 to the rear, the forward edge or lip of the catch is raised, so as to open the groove and al-low the blade to drop, when the front end of the handle is held downward, until the forward motion thereof is arrested by the impinge- 75 ment of the stop B', Figs. 2 and 8, against a lug or projection within the handle provided therefor. I sometimes project the blade by a concealed spring, but prefer to use gravity, as being more safe and more simple. 80

To actuate the catch D and hold it firmly closed against the blade B when projected, or against the opposite side of the blade-slot when the same is retracted, I provide the catch D with a spring. (Shown in Figs. 4 and 85 5 as detached, and in Figs. 1 and 2 as in place.)

For cheapness I prefer to use a coiled spring, which is wound around the central pivot-pin, f, having its two ends extended, so as to en-gage by one extremity, e, against the catch D, 90 Fig. 2, and by the other extremity, e', against a projection of the fixed handle A, so that its resistance or tension may hold the catch firmly forward and downward against the backward pull required to open it. I sometimes insert 95 a flat spring in the handle, its point imping-ing against the rear edge of the catch to sus-tain it, or use other forms of spring, as cir-cumstances may require. This catch D may be cast, molded, drop-forged, or formed other- 100 wise. I prefer to make it of gun-metal or steel, and it may be dropped up from a blank of the form shown in Fig. 6, or cast in its fin-ished form and dressed up; or it may be struck up from a sheet of brass or other ma- 105 terial. I usually roughen or check its surface like the hammer - hold of a pistol, which in form and mode of action it somewhat resem-bles.

To resist the side pressure upward of the 110 blade against the forward lip of the catch D, I use a screw or rivet or other form of blade-support f', Fig. 3, across the front of the open end of the blade-slot, and immediately behind the lip of the catch D, so that the 115 shank of the blade will abut against the said support and be thus securely held. The front edge of the catch D is also supported by this cross-piece, lying directly behind it, against a hard backward thrust of the blade in its 120 handle. I sometimes forge or cast this cross-piece onto the handle, and when I use a screw or removable pin I sometimes so arrange the stop B' on the shank of the blade B that it may abut against the said pin f', so that by 125 withdrawing the said pin the blade B may be removed and others substituted therefor.

In constructing the handle, while I some-times cast or mold it of brass, malleable iron, white-metal, vulcanite, or other substance, in 130

KR01457

one solid piece, yet for neatness, strength, and lightness I prefer to make it with an open metal rim (see Figs. 2, 3, and 9) extending around the handle, within which rim the blade lies, and having formed upon it the elevated part $j'$, the function of which is to allow the requisite motion of the catch D without uncovering its rear edge, and also the lug or ear $a^4$, Fig. 2, on the front end of the lower surface of the blade-slot, which will readily draw out of the sand in ordinary castings, these two projections $j'$ and $a^4$ supporting the blade laterally. I usually form an ear, $a^2\ a^2$, at the rear part of the cross-pieces $j\ a^4$, Fig. 2, to avoid the use of more than a single rivet. These ears $a^2$ and $a^3$ do not extend entirely down to the surface of the rim A, Fig. 9, but allow a clear space beneath. (See Fig. 2.) I close the sides of the rim by plates of vulcanite, wood, horn, bone, or metal, to conform to the appearance of an ordinary pocket-knife, and secure lightness and strength. These plates, being notched or countersunk partly through their thickness at the front, are inserted so that the ears $a^2\ a^3$ engage and lock them in place, when the binding rivet or screw $a'$ is inserted at the rear. I also sometimes rivet the plates $a\ a$ at the sides as well as the end, or form them in other various and well-known ways.

Figs. 11, 12, 13, and 14 show several interchangeable tools, which may be inserted when the pin $f'$, the screw-plug C, Fig. 1, or the screw $a'$, Fig. 3, is removed, so that the blade-slot is opened.

In Fig. 1 I show a double construction, whereby two blades are adapted to lie parallel with each other, and to be projected from the same end of the handle, and independently of each other. These blades may be both knife-blades of different sizes, or different tools of the forms indicated in the figures below or others. For rapid changes I close this double barrel with a screw-plug, C, by withdrawing which the blades drop out at the rear end, and can be replaced or others substituted therefor. Where made very light for use—for instance, as an eraser—I provide the female thread at C for attachment to a pen-holder or pencil, or other like device; or I insert, instead of the plug C, a rubber eraser-head.

My invention, while more convenient for use than a knife requiring the use of two hands to open it, is especially useful when applied to dirk or bowie knives, or those in use by hunters, fishermen, &c., as the blade can be instantly projected by a turn of the wrist if it be possible to secure possession of the handle, while in sudden emergencies an ordinary clasp-knife could not be opened. It is also more useful for glove and shoe button hooks, and for various purposes where it is desirable to instantaneously open and close the blade by the use of a single hand—as, for instance, in cutting the cord while tying up packages, for cutting the leaves of books while reading, and for many other miscellaneous purposes which are constantly being met with in almost every one's experience.

Having now described my invention, what I claim, and desire to secure by Letters Patent, is—

1. In combination with the handle A, having an internal longitudinal blade-slot open at the end $a^5$, the blade B, having a guiding-shank at its rear end and adapted to reciprocate to and fro in said slot, together with the blade-holding catch D, pivoted at $f$ near the open end of said slot, said catch being provided with an elevated or partly cylindrical thumb portion above the pivot, so as to adapt the catch to be partially rotated and opened by a backward pull of the thumb thereupon, substantially as described.

2. In combination with the hollow handle A and blade and shank B, having the stop $c$, the spring thumb-catch D, pivoted at $f$, and provided with an edge or lip to engage with the said stop $c$, and an elevated or partially cylindrical thumb-hold adapted to be rotated upon its pivot by a backward tangential pull of the thumb against the same, so as to release the blade, the thumb-surface of the said catch being checked or roughened, to adapt it to be readily actuated by the thumb, substantially as set forth.

3. A lip or edge at the forward part of the rotating thumb-catch D, adapted to engage with a stop, $c$, upon the broad surface of the blade B when projected from the hollow handle A, and extending entirely across the said blade, and to close down when the blade is retracted, so as to entirely cover the open end of the blade-slot, substantially as shown and described.

4. In combination with the hollow handle A and thumb-catch D, the reciprocating blade B, provided with detents or stops $c\ b\ b\ b$ at various points, adapted to engage with the catch D, whereby the blade may be fixed and securely held when projected to different distances, substantially as described.

5. In combination with the outer open metallic rim, A, provided with opposite terminal ears $j$ and $a'$, the detachable side plates, $a\ a$, adapted to cover the open sides of said rim and form the internal slot or groove, $g$, substantially as described.

6. The hollow handle A, provided with the raised ear $j$, in combination with the thumb-catch D, pivoted at $f$, and adapted to have its rear end pass down inside the ear $j$ when the front edge is raised, substantially as described.

7. The thumb-catch D, dropped up from a metal blank, Fig. 6, into the form shown in Fig. 7, substantially as described.

8. In combination with the hollow handle A, having the solid supporting-ear $a^4$ at its forward end beneath the blade-slot, and the



KR01458

4                                    307,767

thumb-catch D, adapted to close by its forward edge or lip down against the said solid ear $a^4$, the cross-pin $f'$, extending across the blade-slot immediately behind the said edge
5 or lip of D, so as to sustain the blade against pressure upon its flat side, substantially as described.

9. In a pocket-knife adapted to have the blade drop out from a hollow handle and to
10 be held by a spring-catch, the cross-pin $f$ or $f'$, in combination with the blade B and stop B', said stop being adapted to impinge against the said cross-pin and arrest the forward motion of the said blade, substantially as described.

ISAAC W. HEYSINGER.

Witnesses:
    W. S. HOLZER,
    F. M. ROGERS.

(No Model.)

B. McGOVERN.

POCKET KNIFE.

No. 309,863.                    Patented Dec. 30, 1884.



Fig 1.



Fig 2.



Fig 3.



Fig. 4.

Witnesses
S.P. Williamson
W. J. Harland

Inventor
Bernard Mc Govern
By Smith & Hubbard
Attys.

N. PETERS. Photo-Lithographer, Washington, D. C.

KR01460

# UNITED STATES PATENT OFFICE.

---

## BERNARD McGOVERN, OF BRIDGEPORT, CONNECTICUT.

## POCKET-KNIFE.

---

SPECIFICATION forming part of Letters Patent No. 309,863, dated December 30, 1884.

Application filed February 11, 1884. (No model.)

*To all whom it may concern:*

Be it known that I, BERNARD McGOVERN, a citizen of the United States, residing at Bridgeport, in the county of Fairfield and
5 State of Connecticut, have invented certain new and useful Improvements in Knives; and I do hereby declare the following to be a full, clear, and exact description of the invention, such as will enable others skilled in the art
10 to which it appertains to make and use the same.

My invention relates to certain novel and useful improvements in the construction of knives, and has for its object to provide a de-
15 vice of this description which shall be readily adapted for the various uses to which it may be put, and in which there shall be no hinged or stationary connection between the blade and the handle, and exceedingly simple and
20 economical; and with these ends in view my invention consists in the details of construction and combination of elements hereinafter fully described, and then specifically designated by the claims.

25 In order that those skilled in the art to which my invention appertains may more fully understand its construction and operation, I will proceed to describe the same in detail, referring by letter to the accompany-
30 ing drawings, forming a part of this specification, in which—

Figure 1 is a longitudinal section of my improvement; Fig. 2, a side elevation of the same, showing the head to which the blade is se-
35 cured locked within one of the notches in the cylinder; Fig. 3, a side elevation showing the head thrown forward to its full extent, and locked in this position; and Fig. 4, a side elevation showing the spiral slot in the socket
40 and the pin arranged therein.

Similar letters denote like parts in the several figures of the drawings.

A is a socket having therein an elongated slot, B, deflected at its forward portion, as
45 seen at C.

D is a hollow cylinder, arranged within said socket, and also provided with an elongated slot, E.

F is a small pin, secured within this cylin-
50 der, so as to project laterally therefrom within

a spiral slot, G, in the socket. The rear ends of both the socket and the cylinder are closed, and between them is placed a coil-spring, H, so as to give the cylinder a spring movement.
55 The relative positions of the elongated slots B E are such that when the cylinder is forced within the socket to its full extent against the action of the spring the action of the pin F within the spiral slot G will cause the cylin-
60 der to turn and bring said slots into alignment, for the purpose presently explained.

I is the blade, the tang of which is riveted, soldered, or in any other suitable way secured to a head, J, fitting loosely within the cylin-
65 der D.

K is a small pin, projecting laterally from said head within the slot E, and it will be readily understood that the action of the pin F within the spiral slot will throw the pin K
70 into the deflected slot C when the spring H forces the cylinder forward.

L is a collar secured at the outer end of the cylinder. In assembling the several parts of my improvement I first place the coil-spring
75 within the socket and then introduce the cylinder. The pin F is driven into the latter through the spiral slot. The head J, with blade secured thereto, is now dropped into the cylinder and the pin K is driven into said head
80 through the slots B E. The device thus assembled is placed within a hollow cylindrical handle, M, open at both ends, and secured therein by means of a pin, N, passed through the handle into the collar L, or by a screw-
85 thread formed on the collar, the rear end of the socket being allowed to project, as shown, for the purpose presently explained.

I preferably make the diameter of the collar slightly greater than that of the socket, so
90 that the latter will move freely when forced down over the cylinder.

The operation of my improvement is as follows: The knife-blade being out to its full length, the position of the several parts is as
95 shown at Fig. 3, the pin K resting within the deflected slot C. By having a series of notches, *c*, along the edge *d* of the slot B the blade may be locked in any position, so as to project to any desired extent from the forward
100 end of the handle. By depressing the rear

2                                309,863

end of the socket the cylinder will be turned, owing to the action of the spiral slot on the pin F, until the elongated slots are brought into alignment.  The pin K will have thus left
5 the slot O, and when the knife is held in a position with the point of the blade up the head carrying the latter will drop by gravity within the cylinder.  The socket is now relieved of pressure, and the force of the spring, to-
10 gether with the action of the spiral slot on the pin F, will bind the pin K between the edge of the slot B and the edge of the slot E, thereby holding the head J within the cylinder.

15      When it is desired to use the knife, the socket is again depressed, and by holding the knife-point down the blade will readily drop out, and by relieving the socket of pressure
20 the action of the spiral slot on the pin F will throw the pin K within the deflected slot O and lock the blade in position.

It will be obvious that any device other than a knife-blade may be attached to the head J—
25 as, for instance, a button-hook, tooth-pick, pen, pencil, and the like—my invention not being confined in this respect to a knife-blade.

If desired, any suitable cap may be placed over the forward extremity of the handle and the parts protected from grit, dust, &c.

30      Having thus described my invention, what I claim as new, and desire to secure by Letters Patent, is—

·1. In a knife, the socket provided with elongated slot and spiral slot, and having in-
35 teriorly arranged therein a hollow cylinder having an elongated slot provided with one or more notches, and a pin adapted to travel in said spiral slot, in combination with a coiled spring placed between the rear ends of said socket and cylinder, and a blade or other
40 suitable device secured to a head provided with a pin projecting within the slot in the cylinder, whereby the said pin may be clamped or locked between the edge of the said slot and the edge of the slot in the socket, and at
45 any point along the length thereof, thereby allowing the extremity of the blade or other device to project to any desired distance beyond the end of the handle, substantially as hereinbefore set forth and described.

50      2. The socket having slots B G, in combination with the cylinder D, arranged within said socket, and having slot E, provided with one or more notches, c, and pin F, projecting within the slot G, coil-spring H between the
55 rear ends of the socket and cylinder, blade I, secured to the head J, which fits loosely within the cylinder, and pin K, projecting from said head within the slot E, substantially as set forth.

60      3. The handle M, having arranged therein the socket A, having elongated slot B and spiral slot G, cylinder D, arranged within the socket and provided with collar L, elongated slot E, notched, as shown, and pin F, project-
65 ing within the slot G, coil-spring H between the rear ends of said socket and cylinder, and head J, fitting loosely within the cylinder, and having pin K, projecting within the slot E, substantially as shown and described.

70      In testimony whereof I affix my signature in presence of two witnesses.

BERNARD McGOVERN.

Witnesses:
    S. S. WILLIAMSON,
    W. J. HAVILAND.

(No Model.)

# J. PUSEY.
## POCKET KNIFE.

No. 338,612.                    Patented Mar. 23, 1886.





WITNESSES:
John Nolan.
N H Curlworl

INVENTOR
Joshua Pusey.

N PETERS. Photo-Lithographer, Washington, D. C.

KR01463

# UNITED STATES PATENT OFFICE.

JOSHUA PUSEY, OF PHILADELPHIA, PENNSYLVANIA, ASSIGNOR TO GUS-
TAVUS A. GOLDSMITH, OF NEW YORK, N. Y.

## POCKET-KNIFE.

SPECIFICATION forming part of Letters Patent No. 338,612, dated March 23, 1886.

Application filed April 13, 1885.   Serial No. 162,164.   (No model.)

*To all whom it may concern:*

Be it known that I, JOSHUA PUSEY, a citizen of the United States, residing in the city and county of Philadelphia, and State of Pennsylvania, have invented certain new and useful Improvements in Knives and Analogous Implements, of which the following is a full, clear, and exact description, reference being had to the accompanying drawings, of which—

Figure 1 is a side elevation with the knife-blade protruded. Fig. 2 is a median longitudinal section in a plane parallel with the sides of the blade, or, as on line *a b*, Fig. 6, looking in the direction of the arrow marked 2, the blade being protruded, as in Fig. 1. Fig. 3 is a like sectional view looking in the direction of the arrow marked 3 in said Fig. 6. Fig. 4 is a longitudinal section, as on line *c d*, Fig. 6, looking in the direction of the arrow marked 4. Fig. 5 is an oblique front end view of the case with the rotatable sleeves removed. Fig. 6 is a full transverse section, as on line *f g*, Fig. 4, looking in the direction of the arrow marked 5.

This invention relates to that general class of knives or other elongated implements with tangs in which are combined, with a suitable case or handle, mechanism adapted to release the knife, &c., from the case, allowing it to drop out therefrom by gravity a predetermined distance when desired, and to lock the same when thus protruded, and also when retracted within said case.

The invention consists, primarily, in the combination of a transversely-slotted case, which constitutes the handle of the implement, a rotatable sleeve upon said case having a pin or stud passing through said slot in the case, in connection with a knife or other tool with a tang provided with a notch or offset, with which said pin or stud is adapted to engage, in order to prevent the knife, &c., from being pushed back into the case and which pin may, by rotating said sleeve, be brought out of the path of the knife, and thus allow the latter to drop from the case a certain distance, or back into the same if protruded therefrom, and to lock it in these respective positions.

The invention consists, secondly, in the combination, with the mechanism aforesaid, of a spring for automatically retaining the stop-pin in the path of the knife, &c., yet allowing it (the pin) to be rotated out of such path, against the stress of the spring, by turning the sleeve in the proper direction.

The invention further consists in a certain construction whereby different implements of the character mentioned may be combined within a common case or handle.

It consists, finally, in some details of construction, which will be hereinafter described, and pointed out in certain of the claims.

Referring now to the annexed drawings, wherein the same letters of reference indicate the same parts, *a* is a hollow case or tube, with an aperture, *b*, at its front end, corresponding in form to that of the cross-section of the knife or tang *c k*. The opposite end of the case is provided with a cap, *d*, that is preferably readily removable and replaceable, for reasons hereinafter mentioned.

*e* is a transverse slot near the front end of the case. (See Figs. 2 and 5.)

*f* is a sleeve loosely but neatly fitting upon the latter, and suitably milled or otherwise roughened, in order to provide a frictional hold for the thumb or finger for turning the same.

*g* is a pin or stud that is secured to said sleeve, and projects through a slot, *e*, a short distance within the case.

*h* is a plug inserted within the latter, having also an aperture, *i*, therein, corresponding in form to that of the cross-section of the knife or tang which slides therein. This plug is located, as shown, some distance in the rear of the pin *g*, and has attached to it a wire spring, *j*, Figs. 4 and 6, that bears lightly against the outer side of the pin, continually pressing the same against one extremity of slot *e*, in which normal or usual position the pin is in the path of the knife, &c., or tang, as shown. It will, however, be readily observed that the spring permits the pin to be moved in the slot *e* out of said path when sleeve *f* is rotated to the left in the present instance.

*c* is the sliding knife-blade, having the tang *k*, which latter has a notch or offset, *l*, and also a stop or projection, *m*, at its upper end, whose function is to arrest the fall of the knife (when sleeve *f* is rotated and the knife thereby released) by striking against the upper side of plug *h*, or other obstruction or pro-

jection within the case which may be substituted for said plug.

The operation of the devices is as follows: When the knife, &c., is retracted, the pin $g$ is in its path or presses against it, as hereinafter mentioned, and it cannot escape from the case. When the spring is employed, which is usually desirable, it is not necessary that the pointed end of the blade shall be retracted so far as to extend back of the pin, for the blade will be retained by friction arising from the spring pressing the pin against the side of the blade. This latter position is indicated by the dotted lines in Fig. 2. Now, while the blade is thus contained within the case, if the sleeve $f$ be rotated by the thumb or finger sufficiently to bring the pin transversely out of the path of the former, the case being held in a vertical position, with the front end down, the knife will instantly slide down through the slot $i$ in the plug and protrude through the aperture $b$ in the case, whereupon, the sleeve being released by removing the finger therefrom, the pin is brought back by the stress of the spring and stops against the end of the slot, at the same time entering the notch or slot $l$ in the tang of the knife. Thus it is obvious the knife or blade is prevented from being pushed back within the case until the sleeve is again turned in the manner before described. The cap $d$ is preferably made removable, in the present instance being screwed on the end of the case. This is in order to allow the blade to be dropped out at that end when the cap is taken off, so that the interior of the case may be readily freed from any dirt or other obstruction which is apt to collect therein when the device is carried in the pocket and to interfere with the operation of the spring or the free sliding of the blade. This feature of removable cap and blade is, so far as I am aware, novel in the general class of what may be termed "gravity" knives, and it affords a convenient means of obviating what I have observed to be an annoying defect in such implements not thus constructed. It also enables the ready replacement of a new blade when one is broken, and also facilitates sharpening the same when necessary.

In the foregoing description I have referred to a single blade with the mechanism relating thereto. It will be seen, however, that I am enabled to make use also of an additional blade or other tool with a case—such as the glove-buttoner, as shown—the case or handle and the plug $h$ being common to both implements.

Referring again to the drawings, $b'$ is a slot in the front end of the case, similar to slot $b$, in which slot or aperture $b'$ and in a slot, $i'$, in the plug $h$ the glove-buttoning hook $c'$ $k'$ is adapted to slide. A sleeve or ring, $f'$, in connection with a pin, $g'$, extending through a slot, $e'$, in the case, and a spring, $j'$, perform the same function with regard to the buttonhook as the corresponding parts before described with relation to the knife-blade, the

shank $k'$ of the former having a notch, $l'$, and a stop, $m'$, similar to $l$ and $m$, respectively. The operation of all these parts is identical with that of those connected with the knife, the sleeve $f'$ being, however, rotated in the opposite direction to that of sleeve $f$, in order to carry pin $g'$ out of the path of the button-hook and its shank. As seen in Figs. 3 and 4, the forward end of the hook is allowed to pass up beyond pin $g'$, and is thus prevented from escaping.

The dotted outline in Fig. 3 shows the position of the hook when protruded.

In order to soften and render noiseless the fall of the knife, &c., when allowed to drop back into the case, I sometimes insert a plug, $o$, of cork or soft rubber within the cap $d$.

The plug $h$ furnishes a convenient point of attachment for the ends of the springs $j$ $j'$. These may, however, be otherwise secured within the case. In fact, this plug may be dispensed with altogether and other equivalent means for guiding the tangs of the blade, &c., be substituted therefor. The upper side or edge of the tangs may be provided with one or more notches in addition to the one shown, whereby the blade may be held projected from the case at different distances from the end of the same. I may also observe that both ends of the case could be utilized, so that a knife-blade, &c., may be protruded from either or both ends thereof, the sleeve, pin, spring, &c., being duplicated at each end. If this construction be used, I would make the case in two sections transversely, and screw or otherwise join the two parts thereof together, so that they may be separated and put together again when necessary or desirable.

I may mention one signal advantage of a knife, &c., constructed according to my invention over others which I have seen, in which the blade is held by a spring-controlled latch or dog secured longitudinally in the side of the handle and projecting therefrom. It is that with my rotatable sleeve and pin device it is not necessary to seek any particular lateral point to be pressed upon in order to release the blade or shank holding dog, but the said sleeve may be turned and the blade, &c., released by pressing against it (said sleeve) in the proper direction at any point in its periphery. It is also to be remarked that by having the two sleeves rotatable in opposite directions the one will not be turned by the finger when the other is being rotated in order to release the one implement—that is to say, for instance, the movement required to drop the blade $c$ $k$ will not at the same time drop the buttoner $c'$ $k'$.

Having thus described my invention, I claim as new and wish to secure by Letters Patent—

1. The combination of the case or handle, the gravity-knife or other analogous implement having a notch or offset therein; the rotatable sleeve, the pin connected thereto and extending within the case through a transverse slot therein in the path of the knife, all con-

338,612

3

structed and adapted to operate substantially as and for the purpose stated.

2. The combination of the case or handle, the gravity-knife or other analogous tool provided with a notch or offset therein, and a stop for preventing said knife, &c., from escaping, the rotatable sleeve, the pin connected thereto and projecting within the case through a transverse slot therein in the path of the knife, &c., together with the spring pressing against said pin, all constructed and adapted to operate substantially as and for the purpose set forth.

3. The combination of the slotted case or handle provided with the rotatable sleeve and pin, the notched blade or other analogous tool, the spring, and the slotted plug $h$, substantially as and for the purpose set forth.

4. The combination, with a transversely-slotted case or handle having a gravity-knife or other analogous tool therein, with a notch in the tang thereof, and a rotatable sleeve on one end having a pin therein, of a removable cushioned cap, substantially as and for the purpose specified.

5. The combination of the slotted case or handle, the rotatable sleeves on one end of the handle having pins therein, the gravity-knife or other analogous tool having a notch in its tang, with a stop or projection thereon, and a slotted stop-plug for arresting the fall of such tool, substantially as and for the purpose set forth.

6. The combination of the double-slotted common case or handle, the two sleeves and respective pins adapted to be rotated in opposite directions, the double-slotted plug or guide $h$, and the two implements—such as a knife and glove-buttoner—provided with notches and stops, respectively, substantially as and for the purpose stated.

In testimony whereof I have hereunto affixed my signature this 11th day of April, A. D. 1885.

JOSHUA PUSEY.

Witnesses:
JOHN NOLAN,
FRANCIS S. BROWN.

KR01466

(No Model.)

## F. J. W. FISCHER.
### HOLDER FOR PENS, PENCILS, &c.

No. 356,996.

Patented Feb. 1, 1887.



*Witnesses:*
H. N. Low
E. H. Dick

*Inventor:*
Frederick J. W. Fischer
by Marcellus Bailey
his attorney

N. PETERS. Photo-Lithographer, Washington, D. C.

KR01467

# UNITED STATES PATENT OFFICE.

FREDERICK J. W. FISCHER, OF JERSEY CITY, NEW JERSEY, ASSIGNOR TO
THE EAGLE PENCIL COMPANY, OF NEW YORK, N. Y.

## HOLDER FOR PENS, PENCILS, &c.

SPECIFICATION forming part of Letters Patent No. 356,996, dated February 1, 1887.

Application filed October 14, 1886. Serial No. 216,222. (No model.)

*To all whom it may concern:*

Be it known that I, FREDERICK J. W. FISCHER, of Jersey City, in the State of New Jersey, have invented certain new and useful Improvements in Holders for Pens, Pencils, and other Articles, of which the following is a specification.

This invention is an improvement on that kind of a holder for pens, pencils, and other articles which is known as a "drop" or "gravity" holder—that is to say, a holder in which the pen, pencil, or other article is combined with a sheath or case in which it can move back and forth within prescribed limits, and with locking or retaining mechanism by which it is held either in protruded or in retracted position.

An article of this general description is disclosed in Letters Patent heretofore granted to myself and to others, and notably in Reissued Letters Patent No. 10,335, of June 5, 1883.

The improvement, generally stated, consists in combining, with the sheath, the pressure-cap, and the retracting-spring of such a holder, a plug or stopper which is adapted to fit and close the mouth of the sheath, and a "pusher-rod" connected at one end to the pressure-cap and hinged or loosely jointed at the other end to the plug or stopper. The pusher-rod, through the action of the retracting-spring, serves to draw the plug or stopper into or over the mouth of the sheath, so as to close it. By depressing the pressure - cap against the stress of the spring the pusher-rod is moved forward, carrying with it the plug or stopper, which, by reason of its being hung loosely to the rod, will tilt to one side to permit the pen or other article contained within the sheath to protrude beyond it. The whole device is cheap, easily made, and efficient.

The nature of my invention and the manner in which the same is or may be carried into effect can best be explained and understood by reference to the accompanying drawings, in which—

Figure 1 is a longitudinal central section of a holder embodying my invention in its simplest form, the pen-holder proper being represented in retracted position. Fig. 2 is a like section with the pen-holder proper in protruded position. Fig. 3 is a perspective view of the pen-holder proper detached. Fig. 4 is a perspective view of the cover or stopper and mechanism for operating the same. Fig. 5 is a perspective view of the complete device with the pen-holder proper protruded and locked in position by the cover or stopper.

The device consists of a tubular sheath or case, A, which is the handle, a tubular pen-holder proper, B, loose within the sheath and free to slide back and forth therein, a cover or stopper, C, fitted to and adapted to close the mouth of the sheath, a pressure-cap, D, a retracting-spring, E, a spring-case, F, fitting and secured in the rear end of the sheath, and a pusher, G, which in this instance is a rod passing through an aperture in the bottom of the spring-case, (in which it can slide,) attached at its rear end to the pressure-cap and jointed or linked at its front end to the cover or stopper C. The part C is thus hung to the pusher somewhat after the fashion of a bell-clapper, and when pushed forward away from the mouth of the sheath can be tilted or pushed to one side. The pusher-rod passes through the interior of the tubular pen-holder proper. Under the arrangement shown the cover or stopper is spring-controlled and normally held in a position, as shown in Fig. 1, in which it closes the mouth of the sheath, thus preventing ink from getting out or dirt from getting in. When the device is held mouth downward and the pressure-cap is pushed forward, the cover or stopper is thereby caused to drop away from the mouth of the sheath, and the pen-holder proper then descends by gravity as far as permitted, pushing to one side the cover. At the point in the pen-holder opposite which the cover comes when the former has dropped as far as it can there is formed a notch or indentation, *a*, into which the cover, when pressure is removed from the pressure-cap, is drawn by the stress of the retracting-spring, thus locking the pen-holder in its protruded position. Thus the cover serves not only as a cover, but also as a detent to hold the pen-holder proper in either one of two positions represented in Figs. 1 and 2, respectively.

Having described my improvement and the

KR01468

2

356,996

best way now known to me of carrying the same into effect, what I claim herein as new and of my own invention is as follows:

The combination of the sheath or handle, 5 the freely-sliding pen-holder or other article contained therein and provided with a tubular shank or stem, the pressure-cap, the retracting-spring, the pusher-rod connected to said pressure-cap, and the cover or stopper 10 hinged or loosely jointed to the pusher-rod and arranged and adapted to operate in connection with the sheath and the pen-holder, substantially as and for the purposes hereinbefore set forth.

In testimony whereof I have hereunto set 15 my hand this 12th day of October, 1886.

FREDERICK J. W. FISCHER.

Witnesses:
SAMUEL KRAUS,
ED. THIEMANN.

(No Model.)

## J. B. SEYMOUR, Jr.
### ROLL PAPER HOLDER AND CUTTER.

No. 451,623.

Patented May 5, 1891.





Witnesses.

Harry A. Pohey
William E. Knight

Inventor:
John B. Seymour Jr.

By. Knight Bros
Attorneys.

THE NORRIS PETERS CO., PHOTO-LITHO., WASHINGTON, D. C.

KR01470

# UNITED STATES PATENT OFFICE.

JOHN B. SEYMOUR, JR., OF ST. LOUIS, MISSOURI, ASSIGNOR, BY MESNE ASSIGNMENTS, TO THE AMERICAN ROLL PAPER COMPANY, OF SAME PLACE.

## ROLL-PAPER HOLDER AND CUTTER.

SPECIFICATION forming part of Letters Patent No. 451,623, dated May 5, 1891.

Application filed March 22, 1888. Serial No. 268,174. (No model.)

*To all whom it may concern:*

Be it known that I, JOHN B. SEYMOUR, Jr., of St. Louis, Missouri, have made a new and useful Improvement in Roll-Paper Holders and Cutters, of which the following is a full, clear, and exact description.

The novelty in the present instance consists in the construction and combination of the several parts, all as will be hereinafter more fully described, and as is represented in the annexed drawings, making part of this specification, in which—

Figure 1 is a front elevation of the improved device, a roll of paper being in position for use; Fig. 2, a side elevation of the same; Fig. 3, a central vertical transverse section of the parts of Fig. 2; Fig. 4, a vertical longitudinal section of the same, and Fig. 5 is a view in perspective of the improved knife.

The same letters of reference denote the same parts.

The frame A for holding the paper roll and "blade" or "knife" or "cutter," as the means for cutting the paper web may indifferently be termed, is of the usual form, saving as it is modified or supplemented by the improvement in question. As shown in the present instance, the frame is composed, essentially, of a base $a$, uprights $a'$ $a^2$, and a top cross-piece $a^3$. The paper roll B is wound in the usual manner upon a roller $b$, whose journals $b'$ $b'$ are held and adapted to be rotated in the bearings $a^4$ $a^4$ in the uprights $a'$ $a^2$.

C represents the improved knife. It is adapted to ride upon the roll, and preferably from a directly-overhead position, and so that its weight shall operate to keep the edge $c$ of the knife always in position for the free end $b^2$ of the paper web to be drawn against it, and the weight of the knife is sufficient to keep it in place against any upward force tending to displace it, as the paper-web end is drawn against it in severing the web end from the roll. To this end the knife at its ends is provided with tenons or other form of projections $c'$ $c'$, which engage in slots or guides $a^5$ $a^5$ in the uprights $a'$ $a^2$, and as the roll diminishes the knife slips downward in the slots or guides and its edge is always presented, so that the paper-web end can be drawn against it, and thereby be separated from the main part of the web.

A desirable form of the knife is shown in Fig. 5, it being in practice a casting of sufficient weight for the purpose described, as long or longer than the width of the paper web, having tenons $c'$ $c'$ to engage in the slots $a^5$ in the uprights $a'$ $a^3$ and having its under surface $c^2$ concave. The tenons work sufficiently loosely in the slots to enable the knife to drop freely as the paper roll diminishes, and so that the edge of the knife throughout its length shall keep presented to the paper roll, so that the web end from either side thereof can be properly torn across the knife-edge.

I desire not to be restricted to a directly-overhead knife; but it should be one which drops by gravity against the paper roll. I desire, also, not to be confined to the special form of frame shown, nor to any particular form of guide for directing the downward movement of the knife; but I prefer the form shown.

In the case of large paper rolls it is desirable to provide the knife with a friction-roller, such as indicated in broken lines at $c^3$, Figs. 2 and 4, which, by coming in contact with the paper roll, enables the paper roll to be rotated under the knife with sufficient ease to prevent the web end from tearing when drawn out.

I do not claim, broadly, the frame having the vertical grooves in combination with a floating cutter-bar mounted in said grooves and provided with a lower concave face for bearing on the roll; but I limit myself to my precise construction.

I claim—

1. In a roll-paper holder and cutter, the combination of the frame A, having bearings for the roll and vertical guides for the roll, with a gravity-knife C, provided with tenons $c$ $c'$, which fit in the vertical guides, and a

KR01471

2                                         451,623

friction-roller $c^3$, which bears on the roll, substantially as herein set forth.

2. In combination with a roll-paper holder and cutter, a gravity-knife having a concave lower face and an anti-friction roller journaled in the lower face, substantially as herein set forth.

Witness my hand this 19th day of March, 1888.

JOHN B. SEYMOUR, JR.

Witnesses:
C. D. MOODY,
JAS. W. ALLEN.

# EXHIBIT "G"

EXHIBIT "G"

Plaintiffs' Trial
Exhibit
**P-20**

**1958**

Year

í07

Chapter

# The New York State Library

### Legislative Reference Library
### Albany, N. Y.

---

## Bill Jacket Collection

NEW YORK STATE LIBRARY

MICROFILMED
Date_____
No. of printed bills_____
No. of exposures
exclusive of bills_____

KR00004

Form No. 59-303

# State of New York

## In Assembly

FEB 1 0 ............................................................1958

Ordered, That the Clerk deliver the bill entitled

# AN ACT

To amend the penal law, in relation to the sale or possession
of gravity knives

to the Senate, and request its concurrence in the same.

By order of the Assembly

ANSLEY B. BORKOWSKI

Clerk

1

KR00005

IN SENATE
Passed Without Amendment

FEB 2 9 1908

By order of the SENATE

William S. Riley
as sealed

2

KR00006



*Mr. Walsh*

RECEIVED

FEB 27 REC'D

COUNSEL TO THE GOVERNOR

THE ASSEMBLY
STATE OF NEW YORK
ALBANY

STANLEY STEINGUT
271 MADISON AVENUE
NEW YORK CITY

February 26, 1958

Hon. Daniel Gutman
Counsel to the Governor
Executive Chamber
Albany, N. Y.

Dear Dan:

My bill Assembly Introductory 913,
Print 1796, simply includes gravity knives
in Section 1896 which makes any person who
sells or has in his possession certain
dangerous weapons guilty of a misdemeanor.

The gravity knife has come into
being as a circumvention of this section and
is the successor of the switchblade knife.
The gravity knife is not violative of this
section and, therefore, it is imperative that
it be included.

Sincerely yours,

STANLEY STEINGUT
Member of Assembly

SS:ak

3

KR00007

FRANCIS S. MC GARVEY
SUPERINTENDENT



STATE OF NEW YORK

GEORGE M. SEARLE
DEPUTY

MARTIN F. DILLON
CHIEF INSPECTOR

NEW YORK STATE TROOPERS
EXECUTIVE DEPARTMENT
DIVISION OF STATE POLICE
ALBANY

February 26, 1958.

Hon. Daniel Gutman,
Counsel to the Governor,
Executive Chamber,
Albany, N.Y.

Dear Judge Gutman:

This acknowledges your memorandum, enclosing
Assembly Bill Print No. 913-1796 Int. 913, an act to
amend the penal law, in relation to the sale or possession of gravity knives.

The proposed legislation deals with a technicality concerning a type of dangerous weapon and clarifies and reinforces existing law. The Division recommends approval.

Very truly yours,

Francis S. McGarvey
Superintendent.

FSMcG/m.

4

KR00008

5

KR00009



STATE OF NEW YORK
**DEPARTMENT OF CORRECTION**
ALFRED E. SMITH STATE OFFICE BUILDING
ALBANY

THOMAS J. McHUGH
COMMISSIONER

WILLIAM E. FLANIGAN
EXECUTIVE ASSISTANT

WILLIAM E. LEONARD
DEPUTY COMMISSIONER

CHARLES R. ANTOLINA
DEPUTY COMMISSIONER

SOLOMON KAUFMAN
DEPUTY COMMISSIONER

February 27, 1958

Re: An act to amend the penal law, in relation
to the sale or possession of gravity knives

Assembly Int. 913 - Pr. 913, 1796
Assemblyman Steingut - Introducer

A 913

Hon. Daniel Gutman
Counsel to the Governor
Executive Chamber
Albany, New York

Dear Sir:

Pursuant to your request for comment, please be
advised that this Department has no objection to the
approval of the above bill.

Very truly yours,

*S. Kaufman*

Solomon Kaufman
Deputy Commissioner

sk:hgj

6

KR00010

# WESTERN UNION
## TELEGRAM

W. P. MARSHALL, PRESIDENT

| CLASS OF SERVICE | SYMBOLS |
|---|---|
| This is a fast message unless its deferred character is indicated by the proper symbol. | DL=Day Letter |
| | NL=Night Letter |
| 1201 | LT=International Letter Telegram |

The filing time shown in the date line on domestic telegrams is STANDARD TIME at point of origin. Time of receipt is STANDARD TIME at point of destination.

SYD138

SY NNB753 NL PD=NEWYORK NY 27=

GOVERNOR W A HARRIMAN=              1958 FEB 27  PM 8 18

ALBANY NY=

ADVISED BILL REGARDING GRAVITY KNIVES PASSED SENATE

ASSEMBLY NOW  AWAITING YOUR SIGNATURE OUR ASSOCIATION

URGES YOU SIGN=

QUEENS COUNTY GRAND JURORS ASSOCIATION INC (

CLEMENS GRAFE=

THE COMPANY WILL APPRECIATE SUGGESTIONS FROM ITS PATRONS CONCERNING ITS SERVICE

KR00011

March 4, 1958

My dear Mr. Grafe:

On behalf of Governor Harriman, I
acknowledge receipt of your recent communication
regarding the legislation concerning gravity
knives.

The Governor has asked me to thank
you for advising him as to your views in the
matter.

Cordially yours,

DG:gJob

Mr. Clemens Grafe, Queens County Grand Jurors Assoc.
Queens Medical Society Building
112-25 Queens Boulevard
Forest Hills 75, New York

KR00012

# Queens County Grand Jurors' Association, Inc.

### NEW YORK

*President*
HERMAN C. HANSEN
166-33 89th Avenue
Jamaica 33, N. Y.
REpublic 9-3743

*Vice-Presidents*
EMIL J. HORN
HERMAN WEBER
VINCENT J. ASHTON

*Counsel*
FRANK M. NICOLOSI

ROBERT ELLIOTT, JR., *Treasurer*
72-16 67th Place, Glendale 27, N. Y.
Tel. HEgeman 3-8393

STEPHEN F. SCHNEIDER, *Secretary*
53-29 62nd Street
Maspeth 78, N. Y.
Tel. HAvemeyer 9-4003

Organized 1925
*Place of Meeting*
QUEENS MEDICAL SOCIETY BUILDING
112-25 Queens Boulevard
Forest Hills 75 N. Y.

**Legislation Committee**
Clemens Grafe, Chairman
86-29 78 Street, Woodhaven 21, N. Y.



*Board of Governors*

*WILLIAM A. BANGERT
FLOYD V. BOICE
*ALFRED A. BUDDENHAGEN
*LEONARD S. COLYER
JAMES J. CREEGAN
JOHN M. CULKIN
FLOYD R. DAVIS
*ANTHONY F. DeSETA
*M. EUGENE FLIPSE
*JOHN L. FRANK
CLEMENS GRAFE
LAWRENCE J. HAMMEL
*HENDRICK E. HENDRICKSON
HERMAN P. HERZFELDER
HENRY L. HOLLRIEGEL
HARRY C. HUBER
*ROBERT H. HUEBNER
*JOHN L. KLACES
JOSEPH MAIER
*THOMAS F. MALONE
ALBERT A. MILLER
ANTHONY J. MOLESPHINI
HENRY J. MUFF
*ALBERT J. NIENSTEDT
EDWARD M. PARTRIDGE
*JOHN F. RAPP
WILLIAM J. RIGNEY
FREDERICK H. ROSSEL
FRED H. ROTHSTEIN
*DANIEL RUSSO
*MARTIN L. SAVARESE
CHARLES SCALA
*CHARLES H. SCHROEDER
*FRANCIS J. SORG
*THOMAS J. STYLES
*EMIL C. ZIMMERMANN

February 28, 1958

Governor Averell Harriman
State Capitol Building
Albany, New York

Honorable Sir:

I am confirming on behalf of our Association
the following telegram sent to you on yesterday's
date.

"Advised bill regarding Gravity Knives
passed Senate Assembly. Now awaiting
your signature. Our Association urges
you sign."

Due to the teenage problem at present prevalent
in New York City the passage of the bill in our
opinion will improve conditions in our City by
its enforcement.

Your co-operation is enlisted in this matter and
our Association would appreciate receiving your
comments at your earliest convenience.

Anticipating your favorable reply.

Sincerely yours,

Clemens Grafe

*Past Presidents

"The True Administration of Justice..."

CAPITALDOCUMENTS

KR00013

10

KR00014

March 6, 1958

My dear Mr. Grafe:

On behalf of Governor Harriman, I acknow-
ledge your letter of February 28, 1958 concerning
legislation outlawing the use of gravity knives.

You will be pleased to know that Governor
Harriman approved this bill yesterday and it is now
part of the laws of our state.

Cordially yours,

Mr. Clemens Grafe
Queens County Grand Jurors' Association, Inc.
86-29 78th Street
Woodhaven 21, New York

XX:AJY:ms

KR00015

Exh 107

# COMMITTEE TO BAN TEEN-AGE WEAPONS

STATE SEN. FRANK J. PINO
Vice Chairman

HON. JOHN E. CONE
Chairman

CITY COUNCILMAN JACK KRANIS
Vice Chairman

IN COOPERATION WITH

## THE YOUTH SERVICE LEAGUE
HON. ALBERT M. LEAVITT, President

A913

**ADVISORY BOARD:**

VICTOR L. ANFUSO
Member of Congress
PETER C. BROWN
Corporation Counsel, New York City
ALBERT W. BYRNES
VINCENT J. CARISTO
JOHN CASHMORE
Borough President, Brooklyn
VERY REV. MSGR. WILLIAM N. CASEY
Director, St. Vincent's Home for Boys
ARTHUR CLINTON
Dir., Bureau of Attendance,
Board of Education
JOHN E. CONE
Justice, N.Y.S. Supreme Court
JOHN V. CONNORTON
Executive Director,
Greater New York Hospital Ass'n
IRVING BEN COOPER
Chief Judge, Court of Spec. Sessions
JAMES CRISONA
Borough President, Queens
ANTHONY J. DI GIOVANNA
Justice, Supreme Court, Kings County
HON. JONAH GOLDSTEIN
ROSS DI LORENZO
Counsel, Workmen's Compensation
REV. ROBERT GALLAGHER
Director, Youth Counseling Service,
Archdiocese of N. Y.
LOUIS GOLDSTEIN
Retired Justice, Kings County Court
GEORGE H. HEARN
City Councilman
ALEXANDER G. NESTERBERG
Tax Commissioner
HULAN E. JACK
Borough President, Manhattan
NATHANIEL KAPLAN
Justice, Court of Domestic Relations
EDNA F. KELLY
Member of Congress
STEPHEN P. KENNEDY
Police Comm., City of New York
JACK KRANIS
City Councilman
ALBERT M. LEAVITT
Chief Clerk,
Surrogate's Court, Kings County
EMILIO NUNEZ
Justice, City Court
FRANK D. O'CONNOR
District Attorney, Queens County
FRANK J. PINO
State Senator
REV. DANIEL M. POTTER
Protestant Council
REV. VINCENT J. POWELL
CYO Brooklyn Diocese
DR. EDWARD D. RE
Professor, St. John's Law School
ARTHUR J. ROGERS
Director of Community Relations,
New York City Youth Board
JOHN J. RYAN
Assemblyman
ARTHUR M. SCHREIER
JOSEPH T. SHARKEY
Majority Leader,
New York City Council
EDWARD S. SILVER
District Attorney, Kings County
RABBI RALPH SILVERSTEIN
Temple Sinai
ABE STARK
President, New York City Council
STANLEY STEINOUT
Assemblyman
EDWARD THOMPSON
Justice, Court of Special Sessions
RALPH WHELAN
Executive Director,
New York City Youth Board
JOSEPH ZARETZKI
Minority Leader, State Senate
WOMEN'S DIVISION
RITA DEVELIN
MAXINE DUBBERSTEIN
SYLVIA EPSTEIN
LEE SINGER
ROSE SINGER

The Committee seeks to:

- Outlaw the "gravity knife."
- Limit the sale of bullets in New York City.
- Establish a temporary Commission to help modernize the Sullivan Law.
- Ban the importation and shipment in interstate commerce of switchblade and gravity knives.

March 6, 1958

Dear Governor Harriman,

You will note on the petitions submitted to you by Judge Cone in support of the bill to outlaw the "gravity knife" the message to return to me one thousands of signatures (see enclosed sample)

I call this to your attention so you will consider the strength the Trustees of NYC might have if aroused to use it

They are really a dedicated group with a sincere interest in our youth. I should like to be able to tell them that you helped us. Please give enclosed appeal your careful consideration

Respectfully yours,

12

KR00016

# COMMITTEE TO BAN TEEN-AGE WEAPONS

**714 FIFTH AVENUE, NEW YORK 19, N. Y.      Circle 5-2570-1**

HON. JOHN E. CONE
Chairman

STATE SENATOR FRANK J. PINO
Vice Chairman

GEORGE SAPAN
Treasurer

CITY COUNCILMAN JACK KRANIS
Vice Chairman

MRS. NATHANIEL SINGER
Chairman, Women's Division

IN COOPERATION WITH

## THE YOUTH SERVICE LEAGUE

HON. ALBERT M. LEAVITT, President



TEENAGE GANG
WEAPONS

**ADVISORY BOARD**

VICTOR L. ANFUSO
Member of Congress

SAMUEL J. BATTLE
Former Parole Commissioner

PETER C. BROWN
Corporation Counsel, New York City

ALBERT W. BYRNES

VINCENT J. CARISTO

VERY REV. MSGR. WILLIAM M. CASEY
Director, St. Vincent's Home for Boys

JOHN CASHMORE
Borough President, Brooklyn

ALFRED J. CAWSE, JR.
Justice, Court Special Sessions

ARTHUR CLINTON
Dir. Bureau of Attendance,
Board of Education

JOHN E. CONE
Justice, N.Y.S. Supreme Court

JOHN V. CORNDTON
Executive Director,
Greater New York Hospital Ass'n

IRVING BEN COOPER
Chief Judge, Court of Spec. Sessions

JAMES CRISONA
Borough President, Queens

ANTHONY J. DI GIOVANNA
Justice, Supreme Court, Kings County

ROSS DI LORENZO
Counsel, Workman's Compensation

ROBERT W. DOWLING
President, City Investing Co.

JOHN GALARDI

REV. ROBERT GALLAGHER
Director, Youth Counseling Service
Archdiocese of N. Y.

HON. JONAH GOLDSTEIN
Retired Judge, Court General Sessions

LOUIS GOLDSTEIN
Retired Justice, Kings County Court

GEORGE H. HEARN
City Councilman

ALEXANDER G. HESTENBERG
Tax Commissioner

MORRIS HORN
Labor Representative

HULAN E. JACK
Borough President, Manhattan

NATHANIEL KAPLAN
Justice, Court of Domestic Relations

EDNA F. KELLY

STEPHEN P. KENNEDY
Police Comm., City of New York

ABRAHAM KRADITOR
Past Nat'l Comm. J.W.V.

JACK KRANIS
City Councilman

ANNA M. KROSS
Commissioner, Dept. of Corrections
City of New York

ALBERT M. LEAVITT
Chief Clerk,
Surrogate's Court, Kings County

DR. JULIUS MARK
Senior Rabbi, Temple Emanu-El

EMILIO NUNEZ
Justice, City Court

FRANK D. O'CONNOR
District Attorney, Queens County

FRANK J. PINO
State Senator

(OVER)

We the undersigned urge the following legislative program to help ban teen-age weapons:

- Outlaw the "gravity knife."
- Limit the sale of bullets in New York City.
- Establish a temporary Commission to help modernize the Sullivan Law.
- Ban the importation and shipment in interstate commerce of switchblade and gravity knives.

| | NAME | ADDRESS |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |

RETURN AS SOON AS POSSIBLE TO:
**RITA DEVELIN**
301 EAST 28th STREET
BROOKLYN 26, NEW YORK

13

KR00017

518449|332

CAPITALDOCUMENTS

35/44        04-07-2011   11:11:53



STATE OF NEW YORK
DEPARTMENT OF LAW
ALBANY

LOUIS J. LEFKOWITZ
ATTORNEY GENERAL

MEMORANDUM FOR THE GOVERNOR

Re:  Assembly Int. 913, Pr. 1796

This bill amends the Penal Law, Section 1896, which makes it a misdemeanor for a person to manufacture, sell, loan, lease or give a switchblade to any other person.  The amendment similarly condemns the sale, loan or lease of gravity knives which are defined therein to be knives containing blades automatically opened by the force of gravity.  Section 1897, subdivision 3, relating to the possession, is amended to permit the carrying of gravity knives in certain circumstances.

There is no legal objection to this bill.

Dated  March 3, 1958

Respectfully submitted,

Louis J. Lefkowitz by JJM
LOUIS J. LEFKOWITZ
Attorney General

14

KR00018

NYC-55-4CM-120031(58) ~~C~~►114

# THE CITY OF NEW YORK

## REPORT ON STATE LEGISLATION—*APPROVED*

Use a separate form for each bill. If necessary, continue on a blank sheet showing introductory and print numbers and pertinent item numbers.
Submit in Duplicate to Legislative Representative as follows:
Original to Room 1100, De Witt Clinton Hotel, Albany, N. Y.
Duplicate to Office of the Mayor, City Hall, New York 7, N. Y.

To: THE MAYOR
Att. The Legislative Representative

From: Reporting
Agency......**POLICE DEPARTMENT**

**1. IDENTIFYING DATA** (as printed on face of bill)

SENATE INT. NO.                    PRINT NO.                    , INTRODUCER

ASSEMBLY INT. NO.  **913**        PRINT NO. **913, 1796**, INTRODUCER **Steingut**

TITLE OF THE BILL (Abbreviate if necessary) AN ACT to amend the penal law, in relation to the sale of possession of gravity knives.

**2. ESTIMATED COST OR INCOME** (Indicate sum total of estimated mandated expenses, revenue losses or income to City)

| Expenses or Loss | Income |
|---|---|
|  |  |

**3. STATUS OF THE BILL** (as printed above bill's title or rubber stamped on bill)

IN COMMITTEE ☐        ADVANCING ON CALENDAR ☐        BEFORE THE GOVERNOR ☒

**4. EFFECT OF BILL AND REASONS FOR RECOMMENDATION**
(a. Describe legal effect of the bill and outline reasons for your recommendations. b. Include detailed analysis of any estimate shown in Item 2. c. Cite introductory and print numbers of identical or similar bills of current and prior years reported on by your agency and its recommendations thereon.)

This proposal would amend Section 1896 and subdivision 3 of Section 1897 of the Penal Law. The bill defines as a misdemeanor the manufacture, sale or possession of a gravity knife and as a felony the possession of such a knife if previously convicted of any crime. The gravity knife is one which is released from the handle or sheath thereof by gravity or by the application of centrifugal force. When released, it is locked in place by means of a button, spring, lever or other device.

Under the present statutes covering dangerous and unlawful weapons, the switchblade knife is included therein while there is silence as to the gravity knife. There can be no doubt that the gravity knife is as much a hazard to the safety of the general public as the switchblade knife. Since it has been made unlawful to have and possess a switchblade knife, the gravity knife has been most attractive and useful to those engaged in criminal activity. The experience of this Department indicates that gravity knives are being used increasingly as weapons in the perpetration of such crimes as homicides, assault, rape and robbery. Naturally, since it is not unlawful to possess such a knife under present law, the person about to commit such heinous crimes has no fear of being apprehended with such knife in his possession. As a result, one of the deterrent factors in the prevention of serious crimes is lost.

15

SIGNATURE OF AUTHORIZED OFFICER

KR00019

37/44   04-07-2011   11:12:51   CAPITALDOCUMENTS   518469133Z

NYC 55-10M-120821(55) *..⟨TD⟩* 124

# THE CITY OF NEW YORK

## REPORT ON STATE LEGISLATION—*APPROVED*

Use a **separate** form for each bill. If necessary, continue on a blank sheet showing introductory and print numbers and pertinent item numbers.
Submit in Duplicate to Legislative Representative as follows:
    Original to Room 1100, De Witt Clinton Hotel, Albany, N. Y.
    Duplicate to Office of the Mayor, City Hall, New York 7, N. Y.



To: THE MAYOR
    Att. The Legislative Representative

From: Reporting
    Agency __POLICE DEPARTMENT__

1. IDENTIFYING DATA (as printed on face of bill)

   SENATE INT. NO.                PRINT NO.              , INTRODUCER

   ASSEMBLY INT. NO.  **913**     PRINT NO. **913, 1796**, INTRODUCER   **Steingut**

   TITLE OF THE BILL (Abbreviate if necessary)

2. ESTIMATED COST OR INCOME
   (Indicate sum total of estimated mandated expenses, revenue losses or income to City)

   | Expenses or Loss | Income |
   |---|---|
   |  |  |

3. STATUS OF THE BILL (as printed above bill's title or rubber stamped on bill)

   IN COMMITTEE ☐     ADVANCING ON CALENDAR ☐     BEFORE THE GOVERNOR ☒

4. EFFECT OF BILL AND REASONS FOR RECOMMENDATION
   (a. Describe legal effect of the bill and outline reasons for your recommendations. b. Include detailed analysis of any estimate shown in Item 2. c. Cite introductory and print numbers of identical or similar bills of current and prior years reported on by your agency and its recommendations thereon.)

— 2 —

      The gravity knife is inherently dangerous.  To children and adults not versed in the use of such weapons, this knife can cause very serious injuries.

      For the above reasons, this Department strongly urges the enactment of this proposal.

16

SIGNATURE OF AUTHORIZED OFFICER     POLICE COMMISSIONER     March XR03020
                                    TITLE                   DATE

KR00021

# THE COUNCIL

A913

Res. No. 8

**Resolution Calling Upon the State Legislature to Pass Legislation Prohibiting the Sale of Gravity Knives.**

By Mr. Kranis—

Whereas, State Legislation to ban the sale of gravity knives is the crying need in the City of New York; and

Whereas, Such legislation has been discussed by prominent people in public life and they have urged such legislation; and

Whereas, The public prosecutors of The City of New York have all campaigned for such legislation; and

Whereas, The manufacturing of such gravity knives and the sale of them to teenagers, increases crime and juvenile delinquency; and

Whereas, The 1952 Legislature had outlawed the sale of switchblade knives to persons under 16; and

Whereas, Such law had not prohibited the sale of such gravity knives and because of such omission in the 1952 law in not prohibiting the sale of gravity knives, find themselves in abundance in the hands of teenagers with resultant increase in crimes; and

Whereas, Such legislation against the sale of gravity knives would be an important factor in curtailing juvenile delinquency; now, therefore, be it

Resolved, That the City Council go on record to asking the State Legislature to pass such legislation; and be it further

Resolved, That the Governor of the State of New York urge the State Legislature to pass said legislation; and be it further

Resolved, That a copy of this resolution be sent to His Excellency, the Governor of the State of New York and the Majority and Minority Leaders of both houses.

The City of New York, }
Office of the City Clerk, } ss.:

I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on **FEBRUARY 18, 1958** on file in this office.

......................................
*City Clerk, Clerk of the Council.*

18

KR00022