the advertisement of them. A youngster can see an ad, send for it, and get it. Of course, possession is a crime on his part, but the knife was still available to him.

The CHAIRMAN. Judge, you say the law, the New York State law was effective insofar as the manufacture——

Mr. CONE. The New York State law banned manufacture, sale, and possession of switchblade knives.

The CHAIRMAN. It was fairly effective within the State?

Mr. CONE. Yes; except there was this loophole: they were coming in from other States. You saw the switchblade knife inside. Upon the slightest pressure, the blade darts forth like a snake's tongue, and it is ready for immediate violence. It has no purpose in decent civilization. I want to say this, too, that we found in the courts that the switchblade was the favorite weapon of the footpad, the assaultant, and thug. When he was on a dark street, if he wanted to commit assault or any other type of crime, out would come the knife, and in a twinkling the blade would come out and do its deadly job. It was just as deadly at close range as a loaded revolver.

Now, about the fall of last year, a gravity knife started to make its appearance. Our bill in New York banned the switchblade knife; that is, the knife that operated mechanically due to spring pressure. So the knife manufacturers got around it and they brought out the gravity knife, which causes the blade to descend by a flip of the wrist. If you watch, you will see what I mean.

There is no difference between the two, except that one you press a button, and the other you snap a wrist. They are both equally deadly.

Now, it has come to our attention, we have the records to show it, that in the last 5 years over 5 million of these things have either been imported or manufactured in the United States.

Now, despite the efforts of New York State and 11 other States to ban these knives, nevertheless they are coming in from outside. We find, too, that the teen-agers are the ones that they are particularly attractive to, and we want to take them away from them, but the only way we can do it is if we plug the dike on an interstate basis.

Now, in New York State we had bipartisan support in both houses. Members of the Republican and Democratic Parties all went along with us. So far as the knives are concerned, I met with the then head of the National Rifle Association, General Edson, who is now deceased, and at that time they supported our bill regarding the switchblade knife. They agreed that even a good sportsman didn't want that knife around.

You see, the possession of those knives are only for three purposes, mainly: Murder, assault, robbery, possibly even rape.

Senator BUTLER. Is the problem, Judge, a domestic problem or is it a foreign problem? What is the source of the knives, the greater number of them? Do they come from Europe?

Mr. CONE. There is a tremendous flow from abroad; namely Germany and Italy, I believe. Then we do have a great many manufactured here in the States, too.

Now, we obtained, and we have here in these packages, over 250,000 signatures that we obtained in the city of New York in the space of about 6 weeks time. Radio station WMGM conducted a drive for 2 weeks and received 80,000 post cards in favor of it. We

KR00089

have had the editorial support of each and every newspaper in the city of New York.

I might call your attention to the July 12 issue of Saturday Evening Post. That, too, has an editorial statement calling for the passage of this bill.

I understand you have two bills before you; one speaks only in terms of juveniles, the other bill speaks more broadly. I would say our committee would accept either bill, but we would prefer the one that is broader in scope. Because if the knives find their way to adults, they find their way to juveniles. I say to you there is no legitimate purpose for this knife. It is intended only for immediate violence.

The CHAIRMAN. Judge, we have before us, technically, in the committee, the bill H. R. 12850.

Mr. CONE. Yes; I have it in front of me.

The CHAIRMAN. Which was passed by the House.

Mr. CONE. That is the bill we prefer.

The CHAIRMAN. Yes.

(The bills referred to above are as follows:)

[S. 2558, 85th Cong., 1st sess.]

A BILL To amend title 18 of the United States Code in order to prohibit the sale to juveniles of switchblade knives which have been transported or distributed in interstate commerce, and for other purposes

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That title 18 of the United States Code is amended by inserting at the end of chapter 53 a new chapter as follows:

## "CHAPTER 54—INTERSTATE SHIPMENT OF SWITCHBLADE KNIVES

"Sec.
"1173. Definitions.
"1174. Prohibition of interstate shipment of switchblade knives.
"1175. Penalty for sale; increased penalty for sale to juveniles.
"1176. Exemptions.

"§ 1173. Definitions

"As used in this chapter—

"(a) The term 'juvenile' means a person who has not attained his eighteenth birthday.

"(b) The term 'switchblade knife' means any knife having a blade which opens automatically by hand pressure applied to a button or other device in the handle of the knife.

"§ 1174. Prohibition of interstate shipment of switchblade knives

"Whoever knowingly introduces, or manufactures for introduction, into interstate commerce, or transports or distributes in interstate commerce, or whoever imports from a foreign country any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

"§ 1175. Penalty for sale; increased penalty for sale to juveniles

"Whoever sells or offers for sale to any person any switchblade knife knowing the same to have been transported or distributed in interstate commerce or to have been imported from a foreign country shall be fined not more than $2,000 or imprisoned not more than two years, or both, except that whoever sells or offers for sale a switchblade knife to any juvenile knowing such knife to have been transported or distributed in interstate commerce or to have been imported from a foreign country shall be fined not more than $5,000 or imprisoned not more than five years, or both.

"§ 1176. Exemptions

"Section 1174 of this chapter shall not apply to—

"(a) any common carrier, contract carrier, or freight forwarder with respect to any switchblade knife shipped, transported, or delivered in the ordinary course of business; or

"(b) the transportation, distribution, or introduction into interstate commerce, or the importation from any foreign country of switchblade knives pursuant to a contract with the Armed Forces."

Sec. 2. That part of the index to title 18 of the United States Code which describes the contents of part I of such title, is amended by inserting after

"53. Indians ................................................... 1151"

the following:

"54. Interstate shipment of switchblade knives ....................... 1716"

Sec. 3. The provisions of this Act shall take effect on the sixtieth day following the date of its enactment.

[H. R. 12850, 85th Cong., 2d sess.]

AN ACT To prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That as used in this Act—

(a) The term "interstate commerce" means commerce between any State, Territory, possession of the United States, or the District of Columbia, and any place outside thereof.

(b) The term "switchblade knife" means any knife having a blade which opens automatically—

(1) by hand pressure applied to a button or other device in the handle of the knife, or

(2) by operation of inertia, gravity, or both.

Sec. 2. Whoever knowingly introduces, or manufactures for introduction, into interstate commerce, or transports or distributes in interstate commerce, any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

Sec. 3. Whoever, within any Territory or possession of the United States, within Indian country (as defined in section 1151 of title 18 of the United States Code), or within the special maritime and territorial jurisdiction of the United States (as defined in section 7 of title 18 of the United States Code), manufactures, sells, or possesses any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

Sec. 4. Sections 2 and 3 of this Act shall not apply to—

(1) any common carrier or contract carrier, with respect to any switchblade knife shipped, transported, or delivered for shipment in interstate commerce in the ordinary course of business;

(2) the manufacture, sale, transportation, distribution, possession, or introduction into interstate commerce, of switchblade knives pursuant to contract with the Armed Forces;

(3) the Armed Forces or any member or employee thereof acting in the performance of his duty; or

(4) the possession, and transportation upon his person, of any switchblade knife with a blade three inches or less in length by any individual who has only one arm.

Sec. 5. Section 1716 of title 18 of the United States Code is amended by inserting immediately after the sixth paragraph thereof the following new paragraph:

"All knives having a blade which opens automatically (1) by hand pressure applied to a button or other device in the handle of the knife, or (2) by operation of inertia, gravity, or both, are nonmailable and shall not be deposited in or carried by the mails or delivered by any postmaster, letter carrier, or other person in the postal service. Such knives may be conveyed in the mails, under such regulations as the Postmaster General shall prescribe—

"(1) to civilian or Armed Forces supply or procurement officers and employees of the Federal Government ordering, procuring, or purchasing such knives in connection with the activities of the Federal Government;

"(2) to supply or procurement officers of the National Guard, the Air National Guard, or militia of a State, Territory, or the District of Columbia ordering, procuring, or purchasing such knives in connection with the activities of such organizations;

"(3) to supply or procurement officers or employees of the municipal government of the District of Columbia or of the government of any State or Territory, or any county, city, or other political subdivision of a State or

KR00091

Territory, ordering, procuring, or purchasing such knives in connection with the activities of such government; and

"(4) to manufacturers of such knives or bona fide dealers therein in connection with any shipment made pursuant to an order from any person designated in paragraphs (1), (2), and (3).

The Postmaster General may require, as a condition of conveying any such knife in the mails, that any person proposing to mail such knife explain in writing to the satisfaction of the Postmaster General that the mailing of such knife will not be in violation of this section."

SEC. 6. This Act shall take effect on the sixtieth day after the date of its enactment.

Passed the House of Representatives June 26, 1958.

Attest:

RALPH R. ROBERTS, *Clerk.*

The CHAIRMAN. Now, if, as a matter of a practical legislative timetable here, we could probably consider only the House-passed bill, if we were going to do anything at this session.

Mr. CONE. That bill has our wholehearted support. It covers gravity as well as switchblade knives. That will serve our purpose.

Senator POTTER. Does it prohibit sales in interstate commerce?

The CHAIRMAN. We have an explanation of the House bill. I want to say for the benefit of the committee that this bill just came over here.

Mr. CONE. Yes.

The CHAIRMAN. And we haven't studied it as much as we normally study a bill of this nature, because of the time element involved.

Mr. CONE. Yes. I might point out to you that the 58th session of the New York State Legislature also banned the gravity knife and made the bill so inclusive that every type of knife along those lines that ever comes up will be banned.

Senator POTTER. What about that gun that you showed us?

The CHAIRMAN. Before we go into that, we have made an analysis of H. R. 12850. The bill would make it illegal to knowingly introduce, manufacture for introduction into interstate commerce, or transport or distribute in such commerce any switchblade knife. Violators could be fined not more than $2,000, imprisoned not more than 5 years, or both. Section 3 makes possession of a switchblade knife in a Federal jurisdiction subject to the same penalty.

The bill would exempt common and contract carriers, knives contracted for by the Armed Forces, members or employees of the Armed Forces acting in performance of their duty, and one-armed persons if the knife blade was 3 inches or less in length.

The bill has additional sections making such knives nonmailable, but allowing use of the mails if the knives are going to Government procurement officers (Armed Forces, Federal Government generally, National Guard, militia, and so forth, both State, Territorial, or political subdivisions). The Postmaster General would have the right to request, in writing from a sender of such knives, assurance that the law was being complied with.

The Post Office Department insisted on that amendment.

The Department of Justice did not recommend enactment of this legislation.

Where is the copy of that letter? It is in the House report that you have.

The Bureau of the Budget shared the views of the Department of Justice and the Department of Commerce but had no objection to the enactment of those provisions of the bill dealing with the mail-

KR00092

ability of such knives. The Secretary of the Army had no objection to the enactment of the legislation provided it was amended to exempt from the prohibitions contained therein the manufacture, sale, possession, transportation, distribution, or introduction into interstate commerce of switchblade knives by the Armed Forces or members and employees thereof, acting in the performance of their duties. The Post Office Department recommended enactment of the legislation with respect to the mailability of switchblade knives if an appropriate amendment were made giving the Postmaster General the right to request an explanation from the sender—which is in the bill.

Mr. CONE. Yes. We still have the objection of the Department of Justice?

The CHAIRMAN. They are all in the House report. We did not have the opportunity to ask the departments for a report for us. But they would be the same.

We will put in the record the letters from the departments.

(The following reports were received by the House committee:)

UNITED STATES DEPARTMENT OF JUSTICE,
OFFICE OF THE DEPUTY ATTORNEY GENERAL,
Washington, D. C., May 20, 1957.

Hon. OREN HARRIS,
Chairman, Committee on Interstate and Foreign Commerce,
House of Representatives, Washington, D. C.

DEAR MR. CHAIRMAN: This is in response to your request for the views of the Department of Justice concerning the bill (H. R. 7258) to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

On April 12, 1957, the Department of Justice reported to the committee on two similar bills, H. R. 2849 and H. R. 4013. The views expressed in that report, copies of which are enclosed, are equally applicable to the bill now under consideration.

The Bureau of the Budget has advised that there is no objection to the submission of this report.

Sincerely,

WILLIAM P. ROGERS,
Deputy Attorney General.

APRIL 12, 1957.

Hon. OREN HARRIS,
Chairman, Committee on Interstate and Foreign Commerce,
House of Representatives, Washington, D. C.

DEAR MR. CHAIRMAN: This is in response to your request for the views of the Department of Justice relative to the bills (H. R. 2849 and H. R. 4013) to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

The bills would prohibit the introduction, or manufacture for introduction, into interstate commerce, or the transportation or distribution in interstate commerce, of switchblade knives. They would also prohibit the manufacture, sale, or possession of switchblade knives within Indian country as defined in section 1151 of title 18 of the United States Code, or within the special maritime and territorial jurisdiction of the United States as defined in section 7 of title 18. Violators would be subject to a maximum fine of $2,000 and/or imprisonment for not more than 5 years. Section 4 of H. R. 2849 would exempt from its application common carriers, contract carriers, and freight forwarders with respect to any switchblade knife shipped, transported, or delivered for shipment in interstate commerce in the ordinary course of business. Section 4 of H. R. 4013 would provide a similar exemption, plus two others. It would exempt the manufacture, sale, transportation, distribution, possession, or introduction of switchblade knives into interstate commerce pursuant to contract with the Armed Forces. Also, it would exempt the possession of switchblade knives by members of the Armed Forces to whom such knives were issued by the Federal Government.

The Department of Justice is unable to recommend enactment of this legislation.

KR00093

## 12 SWITCHBLADE KNIVES

The committee may wish to consider whether the problem to which this legislation is addressed is one properly within the police powers of the various States. As you know, Federal law now prohibits the interstate transportation of certain inherently dangerous articles such as dynamite and nitroglycerin on carriers also transporting passengers. The instant measures would extend the doctrine upon which such prohibitions are based by prohibiting the transportation of a single item which is not inherently dangerous but requires the introduction of a wrongful human element to make it so.

Switchblade knives in the hands of criminals are, of course, potentially dangerous weapons. However, since they serve useful and even essential purposes in the hands of persons such as sportsmen, shipping clerks, and others engaged in lawful pursuits, the committee may deem it preferable that they be regulated at the State rather than the Federal level.

The Bureau of the Budget has advised that there is no objection to the submission of this report.

Sincerely,

WILLIAM P. ROGERS,
*Deputy Attorney General.*

---

THE SECRETARY OF COMMERCE,
*Washington, D. C., June 25, 1957.*

Hon. OREN HARRIS,
*Chairman, Committee on Interstate and Foreign Commerce,*
*House of Representatives, Washington, D. C.*

DEAR MR. CHAIRMAN: This letter is in reply to your request dated May 8, 1957, for the views of this Department with respect to H. R. 7258, a bill to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

H. R. 7258 would prohibit and prescribe penalties for the manufacture, sale, or possession of switchblade knives, and their mailing or their introduction into interstate commerce. Exemptions from these prohibitions would include supply or procurement officers and employees of the Federal Government, of the municipal government of the District of Columbia, of the government of any State, Territory, county, city, or other subdivision of a State or Territory; supply and procurement officers (but not the members it appears) of the National Guard, the militia of a State, Territory, or the District of Columbia, when any of these persons are acting in connection with the activities of such governments and organizations. The Department of Commerce does not recommend enactment of H. R. 7258.

While this proposed legislation recognizes that there are legitimate uses that have need for switchblade knives, the exemptions would appear to assume that the most significant of those uses lie in Government activities. To us, this ignores the needs of those who derive and augment their livelihood from the "outdoor" pursuits of hunting, fishing, trapping, and of the country's sportsmen, and many others. In our opinion, there are sufficient of these that their needs must be considered.

Again, we feel that the problem of enforcement posed by the many exemptions would be huge under the proposed legislation.

For these reasons, the Department of Commerce feels it cannot support enactment of H. R. 7258.

We have been advised by the Bureau of the Budget that there would be no objection to the submission of this report to your committee.

Sincerely yours,

SINCLAIR WEEKS,
*Secretary of Commerce.*

---

EXECUTIVE OFFICE OF THE PRESIDENT,
BUREAU OF THE BUDGET,
*Washington, D. C., June 13, 1957.*

Hon. OREN HARRIS,
*Chairman, Committee on Interstate and Foreign Commerce,*
*House of Representatives, House Office Building, Washington, D. C.*

MY DEAR MR. CHAIRMAN: This is in reply to your letter of May 8, 1957, requesting the views of the Bureau of the Budget on H. R. 7258, a bill to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

KR00094

On April 1, 1957, in reporting to your committee on two similar bills, H. R. 2849 and H. R. 4013, the Bureau of the Budget pointed out that the Departments of Commerce and Justice had raised serious questions as to whether this problem is more properly a subject for the police powers of the States.

The Bureau of the Budget believes that these questions are equally applicable to H. R. 7258 and has no further comment to offer at this time.

Sincerely yours,

PERCY RAPPAPORT,
*Assistant Director.*

DEPARTMENT OF THE ARMY,
*Washington, D. C., July 16, 1957.*

Hon. OREN HARRIS,
*Chairman, Committee on Interstate and Foreign Commerce,*
*House of Representatives, Washington, D. C.*

DEAR MR. CHAIRMAN: Reference is made to your request for the views of the Department of Defense with respect to H. R. 7258, 85th Congress, a bill to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes. The Secretary of Defense has delegated to the Department of the Army the responsibility for expressing the views of the Department of Defense thereon.

The purpose of the bill is generally as stated in its title.

The Department of the Army on behalf of the Department of Defense would interpose no objection to enactment of the bill, provided it is amended to exempt from the prohibitions contained therein the manufacture, sale, possession, transportation or distribution of switchblade knives by the Armed Forces or members and employees thereof acting in the performance of their duties, thereby expanding the exemption pertaining to the ordering, procuring, or purchasing of such weapons by those persons which now appears in section 4 (2) of the bill. This amendment could be accomplished by amending section 4 (2) of the bill to read as follows: "(2) to the Armed Forces or any member or employee thereof acting in the performance of his duty."

It is noted also that section 4 (5) does not extend the exemption to manufacturers of or bona fide dealers in switchblade knives in connection with shipments to persons designated in section 4 (4).

Subject to the foregoing, the Department of the Army on behalf of the Department of Defense has no objection to enactment of H. R. 7258, 85th Congress, which is similar to H. R. 4013, 85th Congress, on which this Department submitted a similar report to your committee on April 12, 1957.

The enactment of this proposal would result in no additional cost to the Department of Defense.

This report has been coordinated within the Department of Defense in accordance with procedures prescribed by the Secretary of Defense.

The Bureau of the Budget advises that there is no objection to the submission of this report.

Sincerely yours,

WILBER M. BRUCKER,
*Secretary of the Army.*

POST OFFICE DEPARTMENT,
OFFICE OF THE GENERAL COUNSEL,
*Washington, D. C., April 16, 1958.*

Hon. OREN HARRIS,
*Chairman, Committee on Interstate and Foreign Commerce,*
*House of Representatives, Washington, D. C.*

DEAR MR. CHAIRMAN: Reference is made to your request for a report on H. R. 7258, H. R. 9820, and H. R. 10618, similar bills to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

The attention of this Department has been directed to advertisements in newspapers and magazines with respect to knives, which, according to the advertisements may be ordered for transmission through the mails collect on delivery. Obviously, weapons advertised in this manner can be purchased by anyone. The so-called Army surplus stores, hardware and other stores, carry similar weapons.

The question of how to prevent their reaching the wrong hands is more than a Federal problem and difficult of solution. Many States have laws prohibiting concealed carrying of knives with blades over designated lengths.

Although the mailing of firearms is controlled by statute (18 U. S. C. 1715), the mailing of hunting knives, switchblade knives, and other similar weapons is not so controlled. Any one of the subject bills would do much to correct this situation. However, in order to eliminate controversy as to the procedure to be followed in the enforcement of this proposed law, it is believed that section 5 of the bill should be supplemented by the addition of the following paragraph:

"The mailability of any such knife may be determined by the Postmaster General by inspection thereof and upon the failure or refusal of the sender to explain satisfactorily to the Postmaster General, in writing, why the postal regulations prescribed in accordance with this act were not complied with."

This Department recommends enactment of the legislation contained in section 5 of the measures, amended as suggested.

In advising this Department with respect to this report the Bureau of the Budget called attention to the fact that it had cleared the reports of the Departments of Commerce and Justice which objected to those portions of the subject bills which would prohibit the introduction of switchblade knives into interstate commerce.

The Department of Justice has raised the question as to whether the amendment suggested by this Department would be broad enough to authorize the inspection of first-class mails without a search warrant. It is the opinion of this Department that the language would not authorize such inspection, nor was such procedure intended.

Sincerely yours,

HERBERT B. WARBURTON,
*Acting General Counsel.*

THE SECRETARY OF COMMERCE,
*Washington, D. C., April 21, 1958.*

Hon. OREN HARRIS,
*Chairman, Committee on Interstate and Foreign Commerce,*
*House of Representatives, Washington, D. C.*

DEAR MR. CHAIRMAN: This letter is in reply to your request dated January 9, 1958, for the views of this Department with respect to H. R. 9820, and your request of February 13, 1958, with respect to H. R. 10618, identical bills to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

These bills differ only slightly from H. R. 7528, which was introduced for the same general purposes during the 1st session of the 85th Congress. In the present bills the definition includes knives which open automatically "by operation of inertia, gravity, or both." Also, the present bills prescribe penalties for the manufacture, sale, or processing of switchblade knives, whereas the earlier bill dealt with manufacture, sale, or possession.

The general intent of these legislative proposals appears to be to improve crime prevention by control of the use of the switchblade knife as a weapon of assault. This approach gives rise to certain objections. One is that, at best, it is an indirect approach which addresses itself to only one of many implements usable by an assailant. This casts doubt upon the resulting effectiveness in the reduction of crime in relation to its enforcement problems. Another objection is that it could lead to the elimination of the legitimate supply of switchblade knives in this country. This would ignore the legitimate needs and uses for these knives on the part of those who derive and augment their livelihood from "outdoor" pursuits, such as hunting, fishing, trapping, etc., as well as those of the country's sportsmen, and many others. We feel that these objections are valid.

In thus expressing our views we do not wish to be construed as taking a light view regarding the widespread use of the switchblade knife as a dangerous and lethal weapon. In view of the apparent relation between the switchblade knife and juvenile delinquency, we would strongly support the enactment and vigorous enforcement of appropriate legislation prohibiting sale of switchblade knives to, and their possession by, juveniles, to the extent such sale and possession can be found to be subject to Federal jurisdiction.

Not being convinced that H. R. 9820 and H. R. 10618 would yield desirable results outweighing their undesirable ones, this Department recommends against enactment of these bills.

We have been advised by the Bureau of the Budget that there would be no objection to the submission of this report to your committee.

Sincerely yours,

SINCLAIR WEEKS,
*Secretary of Commerce.*

UNITED STATES DEPARTMENT OF JUSTICE,
OFFICE OF THE DEPUTY ATTORNEY GENERAL,
*Washington, D. C., March 14, 1958.*

Hon. OREN HARRIS,
*Chairman, Committee on Interstate and Foreign Commerce,*
*House of Representatives, Washington, D. C.*

DEAR MR. CHAIRMAN: This is in response to your request for the views of the Department of Justice relative to the identical bills (H. R. 9820 and H. R. 10618) to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

Except as to section 5 and except for two other minor differences, these bills are identical with H. R. 2849 and H. R. 4013 on which the Department reported to the committee on April 12, 1957. The views expressed in that report, copies of which are enclosed, are equally applicable to the bills under consideration.

As for section 5 of the instant bills, it is noted that section 1716 of title 18, United States Code, which it would amend, deals with the mailability of articles intrinsically dangerous. Section 1715, on the other hand, deals with the mailability of firearms, items more analogous to switchblade knives in that both require the introduction of a wrongful element to make them dangerous. Therefore, if the committee is favorably disposed to recommend the amendment of title 18 with respect to the mailability of switchblade knives, section 1715 would seem to be the more appropriate section for such amendment.

The Bureau of the Budget has advised that there is no objection to the submission of this report.

Sincerely yours,

LAWRENCE E. WALSH,
*Deputy Attorney General.*

EXECUTIVE OFFICE OF THE PRESIDENT,
BUREAU OF THE BUDGET,
*Washington, D. C., April 15, 1958.*

Hon. OREN HARRIS,
*Chairman, Committee on Interstate and Foreign Commerce, House of Representatives, House Office Building, Washington, D. C.*

MY DEAR MR. CHAIRMAN: This will acknowledge your letters of January 9, 1958, and February 13, 1958, requesting the views of this Office with respect to H. R. 9820 and H. R. 10618, bills to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

The Bureau has previously reported to your committee in connection with H. R. 2849 and H. R. 4013 on April 1, 1957, and H. R. 7258 on June 13, 1957. On those occasions, we pointed out that the Departments of Commerce and Justice had raised serious questions as to whether the problem is not more properly a subject for the police powers of the various States. These questions appear to be equally applicable to those sections of the subject bills controlling the introduction of switchblade knives in interstate commerce.

With respect to section 5 of the bills which would make such knives nonmailable, the Postmaster General, in the reports which he is making to your committee, recommends enactment subject to certain procedural amendments set forth in his report.

While we have doubts as to the effectiveness of such limitation in controlling the wrongful use of switchblade knives, this Bureau would have no objection to the enactment of those provisions of the bills dealing with mailability of switchblade knives if amended as suggested by the Postmaster General.

Sincerely yours,

PHILLIP S. HUGHES,
*Acting Assistant Director for Legislative Reference.*

KR00097

DEPARTMENT OF THE ARMY,
*Washington, D. C., April 18, 1958.*

Hon. OREN HARRIS,
  *Chairman, Committee on Interstate and Foreign Commerce,*
    *House of Representatives, Washington, D. C.*

DEAR MR. CHAIRMAN: Reference is made to your request for the views of the Department of Defense with respect to H. R. 9820, 85th Congress, a bill to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes. The Secretary of Defense has delegated to the Department of the Army the responsibility for expressing the views of the Department of Defense thereon.

The purpose of the bill is generally as stated in its title.

The Department of the Army, on behalf of the Department of Defense, would interpose no objection to the above-mentioned bill provided it is amended to exempt Armed Forces operations from the prohibitions contained therein. This could be accomplished by amending section 4 (b) of the bill to read as follows:

"(b) The manufacture, sale, transportation, distribution, possession or introduction into interstate commerce of switchblade knives—

  "(1) by the Armed Forces or any member or employee thereof acting in the performance of his duty; or

  "(2) pursuant to contract with the Armed Forces."

It is also noted that there appears to be a technical error on page 2 of the bill. In line 12 of that page, the word "processes" should be "possesses." (See, in this connection, sec. 3 of H. R. 4013 and H. R. 7258, 85th Cong., in which the word "possesses" is used.)

Subject to the foregoing comments, the Department of the Army on behalf of the Department of Defense has no objection to enactment of H. R. 9820, which is similar to H. R. 4013 and H. R. 7258, 85th Congress, and on which this Department submitted similar reports to your committee on April 12, 1957, and July 16, 1957, respectively.

The enactment of this proposal would result in no additional cost to the Department of Defense.

This report has been coordinated within the Department of Defense in accordance with procedures prescribed by the Secretary of Defense.

The Bureau of the Budget advises that there is no objection to the submission of this report.

Sincerely yours,

WILBER M. BRUCKER,
*Secretary of the Army.*

DEPARTMENT OF THE ARMY,
*Washington, D. C., April 18, 1958.*

Hon. OREN HARRIS,
  *Chairman, Committee on Interstate and Foreign Commerce,*
    *House of Representatives, Washington, D. C.*

DEAR MR. CHAIRMAN: Reference is made to your request for the views of the Department of Defense with respect to H. R. 10618, 85th Congress, a bill to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes. The Secretary of Defense has delegated to the Department of the Army the responsibility for expressing the views of the Department of Defense thereon.

The purpose of the bill is generally as stated in its title.

The Department of the Army, on behalf of the Department of Defense, would interpose no objection to the above-mentioned bill provided it is amended to exempt Armed Forces operations from the prohibitions contained therein. This could be accomplished by amending section 4 (b) of the bill to read as follows:

"(b) The manufacture, sale, transportation, distribution, possession, or introduction into interstate commerce of switchblade knives—

  "(1) by the Armed Forces or any member or employee thereof acting in the performance of his duty; or

  "(2) pursuant to contract with the Armed Forces."

It is also noted that there appears to be a technical error on page 2 of the bill. In line 12 of that page, the word "processes" should be "possesses." (See, in this connection, sec. 3 of H. R. 4013 and H. R. 7258, 85th Cong., in which the word "possesses" is used.)

Subject to the foregoing comments, the Department of the Army on behalf of the Department of Defense has no objection to enactment of H. R. 10618, which

KR00098

is similar to H. R. 4013 and H. R. 7258, 85th Congress, and on which this Department submitted similar reports to your committee on April 12, 1957, and July 16, 1957, respectively.

The enactment of this proposal would result in no additional cost to the Department of Defense.

This report has been coordinated within the Department of Defense in accordance with procedures prescribed by the Secretary of Defense.

The Bureau of the Budget advises that there is no objection to the submission of this report.

Sincerely yours,

WILBER M. BRUCKER,
*Secretary of the Army.*

(The following reports were received by the Senate committee:)

GENERAL SERVICES ADMINISTRATION,
*Washington, D. C., August 16, 1957.*

Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Interstate and Foreign Commerce,*
*United States Senate, Washington, D. C.*

DEAR MR. CHAIRMAN: Your letter of July 17, 1957, requests comments from GSA concerning S. 2558, a bill to amend title 18 of the United States Code in order to prohibit the sale to juveniles of switchblade knives which have been transported or distributed in interstate commerce, and for other purposes.

The commendable objectives of this bill are self-evident. GSA's statutory role, however, limits its mission with regard to this bill to a shipper of Government-owned freight. In that limited capacity its interest is not sufficient to warrant an expression of opinion on the merits of the bill.

The Bureau of the Budget has advised that there is no objection to the submission of this report to your committee.

Sincerely yours,

FRANKLIN G. FLOETE,
*Administrator.*

---

DEPARTMENT OF THE ARMY,
*Washington, D. C., August 8, 1958.*

Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Interstate and Foreign Commerce,*
*United States Senate.*

DEAR MR. CHAIRMAN: Reference is made to your request for the views of the Department of Defense with respect to H. R. 12850, 85th Congress, a bill to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes. The Secretary of Defense has delegated to the Department of the Army the responsibility for expressing the views of the Department of Defense thereon.

The purpose of the bill is generally as stated in its title.

The Department of the Army on behalf of the Department of Defense has no objection to enactment of H. R. 12850, which passed the House of Representatives on June 26, 1958.

The enactment of this proposal would result in no additional cost to the Department of Defense.

This report has been coordinated within the Department of Defense in accordance with procedures prescribed by the Secretary of Defense.

The Bureau of the Budget advises that there is no objection to the submission of this report.

Sincerely yours,

WILBER M. BRUCKER,
*Secretary of the Army.*

---

THE SECRETARY OF COMMERCE,
*Washington, D. C. July 30, 1958.*

Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Interstate and Foreign Commerce,*
*United States Senate, Washington, D. C.*

DEAR MR. CHAIRMAN: This letter is in reply to your request dated July 21, 1958, for the views of this Department with respect to H. R. 12850, an act to

KR00099

prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

The general intent of this legislative proposal appears to be to improve crime prevention by control of the use of the switchblade knife as a weapon of assault. This approach gives rise to certain objections. One is that, at best, it is an indirect approach which addresses itself to only one of many implements usable by an assailant. This casts doubt upon the resulting effectiveness in the reduction of crime in relation to its enforcement problems. Another objection is that it could lead to the elimination of the legitimate supply of switchblade knives in this country. This would ignore the legitimate needs and uses for these knives on the part of those who derive and augment their livelihood from "outdoor" pursuits, such as hunting, fishing, trapping, etc., as well as those of the country's sportsmen, and many others. We feel that these objections are valid.

Under paragraph (4) of section 4, H. R. 12850 would permit a person with only 1 arm to possess and carry a switchblade knife 3 inches or less in length. In the event of the enactment of any such provision, it would be desirable to further clarify the "3 inches or less" length dimension as to its meaning. As now written, the question could arise as to whether the "3 inches" applies to the exposed portion of the blade only, or to the total blade, including that portion which is in the handle.

Section 5 of the bill deals with using the mails to convey switchblade knives, prohibiting such generally, with certain exceptions. In H. R. 12850, language has been added to permit the Postmaster General to require, *as a condition of* conveying such knife in the mails, that any person proposing to mail such knife explain in writing to the Postmaster General's satisfaction, that the mailing of *such knife will not be in violation* of this section of the bill. It seems to us unreasonable and unnecessary to require otherwise exempted prospective mailers of switchblade knives to satisfy the Postmaster General in writing (or any other way) that such mailing is not in violation of the law.

In thus expressing our views we do not wish to be construed as taking a light view regarding the widespread use of the switchblade knife as a dangerous and lethal weapon. In view of the apparent relation between the switchblade knife and juvenile delinquency, we would *strongly support the enactment and vigorous* enforcement of appropriate legislation prohibiting the sale of switchblade knives to, and their possession by, juveniles, to the extent such sale and possession can be *found to be subject to Federal jurisdiction.*

Not being convinced that H. R. 12850 would yield desirable results outweighing their undesirable ones, this Department recommends against enactment of the bill.

We have been advised by the Bureau of the Budget that there would be no objection to the submission of this report to your committee.

Sincerely yours,

SINCLAIR WEEKS, *Secretary of Commerce.*


UNITED STATES DEPARTMENT OF JUSTICE,
OFFICE OF THE DEPUTY ATTORNEY GENERAL,
*Washington, D. C., January 9, 1958.*

Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Interstate and Foreign Commerce,*
*United States Senate, Washington, D. C.*

DEAR SENATOR: This is in response to your request for the views of the Department of Justice concerning the bill (S. 2558) to amend title 18 of the United States Code in order to prohibit the sale to juveniles of switchblade knives which have been transported or distributed in interstate commerce, and for other purposes.

The bill would add to title 18, United States Code, a new chapter dealing with switchblade knives. It would prohibit the introduction or manufacture for introduction into interstate commerce, the transportation or distribution in interstate commerce, and the importing, of switchblade knives. The sale or *offering for* sale of switchblade knives known to have been transported or distributed in interstate commerce, or to have been imported, would likewise be prohibited. *Exemptions would be afforded carriers handling switchblade knives in the ordinary* course of business and those handling such knives pursuant to contracts with the Armed Forces.

Recognizing the seriousness of the problem to which the legislation is directed, the Department of Justice is nevertheless unable to recommend its enactment. Rather, the committee may wish to consider whether the subject is one which is

KR00100

properly within the police powers of the various States and that action is indicated at the State rather than the Federal level. It is true that Federal law now prohibits the interstate transportation of certain inherently dangerous articles, such as dynamite and nitroglycerin on carriers also transporting passengers. The instant bill, however, would extend the doctrine upon which such prohibitions are based by prohibiting the transportation of a single item which is not inherently dangerous but requires the introduction of a wrongful human element to make it so.

The Bureau of the Budget has advised that there is no objection to the submission of this report.

Sincerely,

LAWRENCE E. WALSH,
*Deputy Attorney General.*

DEPARTMENT OF STATE,
*Washington, July 28, 1958.*

Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Interstate and Foreign Commerce,
United States Senate.*

DEAR SENATOR MAGNUSON: Further reference is made to your letter of July 21, 1958, requesting the comment of the Department of State on H. R. 12850, a bill to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes.

This bill would prohibit the importation and interstate shipment of switchblade knives, except for the use of the Armed Forces.

Assembled knives of all types are subject to trade agreement concessions. However, the Department of State has no objection to the enactment of this bill since an exception in United States trade agreements permits adoption of measures that are necessary to protect public morals or human life or health.

The Department has been informed by the Bureau of the Budget that there is no objection to the submission of this report.

Sincerely yours,

WILLIAM B. MACOMBER, Jr.,
*Assistant Secretary*
(For the Secretary of State).

FEDERAL TRADE COMMISSION,
OFFICE OF THE CHAIRMAN,
*Washington, November 6, 1957.*

Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Interstate and Foreign Commerce,
United States Senate, Washington, D. C.*

DEAR MR. CHAIRMAN: This is in response to your letter of July 17, 1957, requesting an expression of the views of this Commission upon S. 2558, 85th Congress, 1st session.

This bill would amend title 18 of the United States Code to add a chapter prohibiting interstate shipment of switchblade knives, and sales of such knives unlawfully transported in interstate commerce, and would provide criminal penalties for violation.

The proposed amendment to the United States Criminal Code would not directly affect the functions or duties of this Commission and, therefore, while we appreciate the opportunity afforded by your request, it does not appear that there is any useful comment which we can make.

By direction of the Commission:

JOHN W. GWYNNE, *Chairman.*

CIVIL AERONAUTICS BOARD
WASHINGTON

Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Interstate and Foreign Commerce,
United States Senate, Washington, D. C.*

DEAR SENATOR MAGNUSON: This is in reply to your letter of July 21, 1958, asking the Board for a report on H. R. 12850, a bill to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives,

KR00101

20               SWITCHBLADE KNIVES

and for other purposes. In your letter you point out that there is pending before the committee a similar bill, S. 2558, on which the Board has submitted its report. You request that the Board submit its report on H. R. 12850 at the earliest possible date.

As was stated in the Board's report on S. 2558, the proposed legislation does not come within the jurisdiction of the Board. Accordingly, the Board expresses no opinion on this matter and has no recommendation to make in regard to either S. 2558 or H. R. 12850.

Sincerely yours,

JAMES R. DURFEE, *Chairman.*

JULY 23, 1958.

Hon. WARREN G. MAGNUSON,
    *Chairman, Committee on Interstate and Foreign Commerce,*
        *United States Senate, Washington, D. C.*

DEAR CHAIRMAN MAGNUSON: Your letter of July 21, 1958, addressed to the Chairman of the Commission and requesting comments on an act, H. R. 12850, passed by the House of Representatives on June 26, 1958, to prohibit the introduction, or manufacture for introduction, into interstate commerce of switchblade knives, and for other purposes, has been referred to our Committee on Legislation. After consideration by that Committee, I am authorized to submit the following comments in its behalf:

The broad objective of this proposed legislation, which would prohibit the interstate shipment and the use of the mails for the conveyance of switchblade knives, and the manufacture, use, or sale of switchblade knives within Indian country or the special maritime and territorial jurisdiction of the United States, is not related to the jurisdiction or functions of the Interstate Commerce Commission, and for that reason we are not in a position to express an opinion with respect to its merits.

It is noted, however, that the measure properly provides that sections 2 and 3 thereof shall not apply to "any common carrier or contract carrier, with respect to any switchblade knife shipped, transported, or delivered for shipment in interstate commerce in the ordinary course of business."

Respectfully submitted,

HOWARD FREAS,
*Chairman, Committee on Legislation.*
ANTHONY ARPAIA
ROBERT W. MINOR

Senator POTTER. As I read it, they make some suggested amendment.

The CHAIRMAN. The Attorney General says—and this is the last paragraph:

As you know, Federal law now prohibits the interstate transportation of certain *inherently dangerous* articles such as dynamite and nitroglycerin on carriers also transporting passengers. The instant measures would extend the doctrine upon a single item which is not inherently dangerous but requires the introduction of a wrongful human element to make it so.

Switchblade knives in the hands of criminals are, of course, potentially dangerous weapons. However, since they serve useful and even essential, purposes in the hands of persons such as sportsmen, shipping clerks, and others engaged in lawful pursuits, the committee may deem it preferable that they be regulated at the State rather than the Federal level.

That is their objection. What do you have to say about that?

Mr. CONE. So far as the sportsmen's associations are concerned, we had their support to ban the switchblade knife. They told me that, by and large, they never used the switchblade knife, and as far as they are concerned, they would rather see it banned than bring injury to anyone. We have here with us an officer of one of the largest knife manufacturing companies in our State, the Camillus Knife Co., and he is here to lend his support to this legislation. Their attitude is that they want to police their own industry and get those out that



are manufacturing these knives. They don't consider them useful at all.

The CHAIRMAN. The Department of Commerce, in their opposition say:

While this proposed legislation recognizes that there are legitimate uses that have need for switchblade knives, the exemptions would appear to assume that the most significant of those uses lie in Government activities. To us, this ignored the needs of those who derive and augment their livelihood from the outdoor pursuits of hunting, fishing, trapping, and of the country's sportsmen, and many others. In our opinion, there are sufficient of these that their needs must be considered.

Again, we feel that the problem of enforcement posed by the many exemptions would be huge under the proposed legislation.

For these reasons, the Department of Commerce feels it cannot support enactment.

What have you to say about amending the bill to take care of the sportsman angle?

Mr. CONE. Well, if it could be done, I would have no objection to it, but I don't know how it can be done, because I think if the sportsmen—some sportsmen will be careless about it, the knives will find their way into the hands of these young people. On the other hand, even if we have to accept it on that basis, it is a step in the right direction, it is doing away with part of the problem.

Senator PAYNE. What particular benefit would that knife serve to a sportsman, as compared to the regular, conventional knife?

Mr. CONE. I don't think it would serve any purpose, sir. I think they can get along just as well with the knives that they have. Any sportsman that I know, whenever they go up to the lake, doesn't use that type of knife. In fact, upstate, in the Adirondack region, they had never seen these knives, 4 years ago, when we were seeking their support.

Senator PAYNE. Isn't it true that that type of knife, switchblade knife, in its several different forms, was developed, actually, abroad, and was developed by the so-called scum, if you want to call it, or the group who are always involved in crime?

Mr. CONE. I think you are absolutely right. Yes; they first made their appearance from there. These things first became a problem in New York City, after the close of World War II. We didn't notice them before that.

Senator PAYNE. I think there is an opening here—I am not a lawyer, Mr. Chairman, but I think there is an opening here in both of these bills with reference to what happens. It is true that they should be available to the Armed Forces, perhaps, for their use, because in combat it may be highly desirable for a blade of this type to be available for fast use. But now I raise the question: What happens if the armed services, as they do in so many cases, find surplus quantities on hand and they make those available?

Is this bill broad enough to prevent even the armed services from offering these for sale and for them to be transferred to these surplus stores, and so forth? I don't know, I am just asking the question.

Mr. CONE. I am not sure on that point. The only thing I would say, I am told—last night I had dinner with some of the generals over at the officers club at Fort Myer, and they tell me they don't use these things in the Army.

KR00103

22                          SWITCHBLADE KNIVES

The CHAIRMAN. May I read for the record on page 11,173 of the House debate, in which Congressman Yates of Illinois comments:

Advertisements by mail-order houses, in sports magazines, in outdoor magazines, all suggest that these knives can be used for hunting or fishing. The Secretary of the Isaak Walton League of America, whom I asked the question, wrote to me and said that he had never seen a sportsman in Western States use a switchblade knife for either hunting or fishing, that most sportsmen prefer the sheath-type knife which is much easier to keep clean.

Mr. CONE. That is right. Definitely, that is true of the East, too.

The CHAIRMAN. Yes.

Mr. CONE. Now, we do have with us——

The CHAIRMAN. Let me ask this question, on the legal aspects: If an amendment were put in on the possession feature, where would the burden of proof be? Could anyone say that he used the knife for, say, hunting or fishing or any legitimate purpose——

Mr. CONE. We would make the intent then——

The CHAIRMAN. Make it the intent. That would put the burden upon the person that had the knife to show what his purpose was.

Mr. CONE. I would say this to you, Senator, we would accept that, if we have to; we prefer not to.

The CHAIRMAN. I can understand the legal problem of convictions in this case.

Mr. CONE. It is very difficult. But even that would be better than the present state of affairs.

Senator BUTLER. This, Judge, doesn't go to possession, this goes to introduction into interstate commerce.

Mr. CONE. That is right.

Senator BUTLER. We have no business to legislate on possession, that is a State and local matter.

Mr. CONE. You are absolutely right.

Senator BUTLER. All we can say is not to ship or to introduce them into commerce.

Mr. CONE. Yes.

The CHAIRMAN. The bill covers possession in Territories and Indian reservations.

Senator BUTLER. That is a local law, insofar as they are concerned.

The CHAIRMAN. No; that would be a Federal law.

Senator BUTLER. I know, but we would be——

Mr. CONE. I can't speak with any authority on that.

Senator BUTLER. It doesn't apply in the States, though, does it?

The CHAIRMAN. Every Indian I know has a knife.

Mr. CONE. Again, they don't have this type of knife. I think you will find this type of knife only in the hands of juveniles and in the hands of footpads around our city.

Senator POTTER. In the hands of what?

Mr. CONE. Footpads, highwaymen, thugs.

The CHAIRMAN. Looking over the bill, page 2, line 1, where you define switchblade knife, by hand pressure applied to a button or other device in the handle of the knife——

Mr. CONE. That is the switchblade.

The CHAIRMAN. Or by operation of inertia, gravity, or both. Wouldn't it strengthen the bill if you added, after the word "inertia," "by operation of inertia or gravity, or both"?

Mr. CONE. I think so, that would be more inclusive.

KR00104

The CHAIRMAN. Because you might have two types.

Mr. CONE. That is right. They will look for a loophole if they can find it.

We have with us a member of the New York State Legislature, Senator Pino, very active in bringing about the passage of this legislation in our legislature.

We also have with us a representative of the police commissioner, who does not wish to testify. He is merely here to assist us.

We also have the representative of the Camillus Knife Manufacturing Co., who wishes to speak in behalf of the knife people.

The CHAIRMAN. Have the senator come up here.

Senator THURMOND. Could I ask him a question before he leaves?

The CHAIRMAN. Surely.

The Senator from South Carolina has a question.

Mr. CONE. Surely.

Senator THURMOND. As I understand, this bill would not apply to Boy Scout knives?

Mr. CONE. No. That is the jackknife.

Senator THURMOND. Which they find very useful in outdoor sports?

Mr. CONE. Yes.

Senator THURMOND. This is a knife where you have to press a button or by gravity in some way get the blade to come down?

Mr. CONE. Yes. Were you here before when we displayed it?

Senator THURMOND. No.

Mr. CONE. Let's show you. This is the switchblade. That is dagger shape, used only for violence. This is the gravity knife; it operates by a flip of the wrist; both are deadly things.

The jackknife, none of us have any objection to.

Senator THURMOND. In no event would it apply to my knife, would it?

[Laughter.]

Mr. CONE. No, sir. You see, the problem with these things, if you have a moment I can tell you a very graphic case that really brought about the banning of them in New York State. For a couple of years we were campaigning, and we weren't getting very far. One day a little lad in the Red Hook section of Brooklyn was given half a dollar by his mother to go to the store to accomplish some errand. On his way down the street he passed some youngster playing One-a-Cat, which is hitting a little stick with a big stick. The little stick in its flight struck this boy in the thigh of the leg.

He, as youngsters are prone to do, yelled some angry words to the lad who hit the stick, who in turn yelled back more angry words. They rushed together quickly, and unfortunately the boy who hit the stick had a switchblade in his pocket. I say to you, before he had time to think of the consequences of his act, or the other lad to think of it, the knife was out, in a twinkling of an instant it was buried in his chest, and he was dead. Had he had a Boy Scout knife, the other kid would have had warning, the tragedy would not have occurred.

But with this deadly thing there could only be one result. We find fear the cause of tragedy crime after crime, particularly among young people in the city of New York.

Senator THURMOND. Have you found most of the knife wounds and stab wounds resulting from this type knife and not from the jackknife?

Mr. Cone. The jackknife is no problem. We have no objection to them at all. They serve a legitimate purpose.

Senator Thurmond. During World War II I know I carried a knife, an 8-inch blade in a sheath right here.

Mr. Cone. Well, you see, that is open.

Senator Thurmond. That is right.

Mr. Cone. You take a knife like this, Senator——

Senator Thurmond. That type knife—this bill doesn't apply to that type knife?

Mr. Cone. No.

Senator Thurmond. It is merely to this pushbutton or gravity——

Mr. Cone. Pushbutton or gravity.

The Chairman. Only to knives by hand pressure applied to a button or other device in the handle, and to knives that operate by inertia or gravity, or both.

Senator, we will be glad to hear from you briefly.

## STATEMENT OF STATE SENATOR FRANK J. PINO, BROOKLYN, N. Y.

Mr. Pino. First of all, I appreciate the privilege of coming here and being permitted to say a few words. Of course, I subscribe to everything that Judge Cone has said. I might say to the Senators that this opposition of the sportsmen is something with which we are quite familiar in the Legislature of the State of New York. Unfortunately, sportsmen sometimes completely misunderstand the situation.

Now, all this would involve, at most, even if a sportsman said "I would like to have a switchblade knife so if I catch a fish I can just flip or push a button and cut it." Actually, all it involves is a very slight inconvenience to the sportsmen. We are not prohibiting the sportsmen from using a knife so that ultimately he can carry on his sport without any trouble.

Actually, these knives are, I would say inherently dangerous, they have only one purpose. They are just deadly. They are lethal weapons, and they are suited for crime, that is all they are suited for. So that the sportsmen really have nothing substantial to complain about. But they do complain. It is an emotional thing with them, somehow.

I know we have had their complaints, too, in connection with a bill which I have had in the legislature to limit the sale of ammunition in the city of New York. They will complain that, well, they want the opportunity to go anywhere and get their ammunition. Even at that, the bill that I had would have given them the opportunity if they had proper authorization to get ammunition, but still they complained, and they lobbyed quite strenuously and successfully against limiting the sale of ammunition.

This is a problem that we have in all of the big cities. And it is a question of weighing the conveniences of a group against the welfare and the health and lives of many, many people. That is all it is.

The Chairman. Senator, what would you say—I am just thinking out loud—in writing legislation of this type, what would you say to a proviso, provided that possession of such knives be permitted, if allowed by the States?

Mr. Pino. Well, I could see——

The CHAIRMAN. Supposing my State, the State of Washington, or the State of Maine, or New Hampshire, or Senator Potter's area, where they do a lot of fishing, supposing the State passed a law saying you could have one of these, but you would have to go get a permit.

Senator POTTER. Like you would with a revolver.

The CHAIRMAN. Or anything like that.

Mr. PINO. I would say that that——

The CHAIRMAN. But leave that up to the States to do that?

Mr. PINO. Yes.

Mr. CONE. On a State level.

The CHAIRMAN. I would think that would cure a lot of these objections.

Mr. PINO. Personally, I don't think any State would permit it. In any event, I would say that that is a reasonable restriction on the bill.

Senator THURMOND. Let me ask you this question: I can see where that would be very helpful. I am just wondering, however, if this type knife is really used by sportsmen to clean fish, or to cut underbrush, like Boy Scouts would do, or anything of that kind. The kind of knife that you have got there, which you have designated a switchblade knife seems to be a weapon purely for stabbing and fighting.

Mr. PINO. Exactly.

Mr. CONE. Violence.

Senator THURMOND. Violence.

Mr. PINO. As the judge said, we had no trouble with our sportsmen on the banning of the switchblade knife. We did originally have opposition on the part of some manufacturers, I believe.

Mr. CONE. They are making a profit out of it.

Mr. PINO. Of course, when the problem was brought home to them so clearly by several incidents, killings in the city of New York, then, of course, everybody backed down.

The CHAIRMAN. The point I was making on that is that if we were just to ban what we have in front of us here, I don't think one would object for one moment to that; but when you get into a court, as you and the judge know, the definition of what is a switchblade knife or what is a knife operated by inertia or gravity becomes sometimes a broad question. The States, themselves, could say that supposing there might come out a useful knife, say for hunting or fishing, that might have some of the features of this. The State could then say if I wanted to have one of these in my possession, I go down and get a permit like I do for a gun.

Mr. PINO. Certainly.

The CHAIRMAN. That would clamp it down to a minimum.

Mr. CONE. That would be at the State level. We would have no objection to that.

Mr. PINO. I think the States have a right in that respect.

Senator POTTER. That would take care of importation?

Mr. PINO. That is right.

Senator THURMOND. Mr. Chairman, under that theory, I am talking out loud——

The CHAIRMAN. Don't talk against States rights now.

Senator THURMOND. I am not. [Laughter.]

Senator THURMOND. I am just wondering, if that amendment is added, whether it would still permit these switchblade knives, which

are causing this violence and deaths and assaults, to be shipped in interstate commerce, though, wouldn't it, because the State would then determine whether or not they can be used. If that is the case, if they can still ship in interstate commerce——

The CHAIRMAN. No. I am talking only about possession.

Senator THURMOND. But they would have to ship them down to South Carolina before they could be in their possession.

The CHAIRMAN. Somebody might make them in South Carolina.

Senator THURMOND. If that is the case, then, if the States don't control it, then you don't need this law at all, do you? In other words, the States now can pass laws to do that. The point I am driving at is if you hooked that proviso on to this bill, what do you have that you don't have now? Because the States could pass the law now, if they want to. If you don't put it in, you could still ship these knives in interstate commerce, which you feel is bad.

The only authority we would have would be when you ship them across interstate lines. If they can still manufacture them and still ship them into any State they want to, the only thing is they would have to get a permit to use them or to have possession of them. Have we gained anything? I am just asking for information.

Mr. PINO. I would say that if a particular State would permit the use of such a weapon, or the possession of such a weapon, there would be ways and means of getting those weapons in that State, perhaps by manufacturing them right there. But certainly I don't think we ought to confuse shipment with possession. I don't think the shipment, itself, ought to be prohibited, so as to cover what would be—of course, the majority of the States would certainly want that shipment barred.

Senator THURMOND. In other words, your bill, then, would still prohibit the manufacture or shipment of these knives?

Mr. PINO. Yes.

Senator THURMOND. But if they are in use down there, then before they could have them in possession, they would have to get this permit; is that it? Is that your construction?

Mr. PINO. I think that is what the Senator said. The Senator is worried about possession in a particular State as to whether or not that possession would be legal.

The CHAIRMAN. Section 2 of the bill says:

Whoever knowingly introduces or manufactures for introduction into interstate commerce.

Mr. PINO. That is right.

Mr. CONE. That covers your point.

The CHAIRMAN. You have to prove that.

Mr. PINO. In other words, in your own State you can manufacture them, if they are going to be permitted, and there would be no problem.

Mr. CONE. If I could break in, I would like to call these to your attention: These are just a sample of the 250,000 signatures we obtained on this thing. You can see we have them all here. We don't want to belabor you with them.

Mr. PINO. May I make a closing statement?

The CHAIRMAN. Yes; go right ahead.

Mr. PINO. That is this:

Gentlemen, the point in this bill I think that is important is that it will limit the supply of these lethal weapons. We don't expect that by passing a bill like this we are going to solve completely the problem. But, the fewer of these weapons we have around, the less is going to be the incidence of crimes. That has been my theory in all of the legislation that I have handled in this category. The fewer of them we have, the fewer are going to be the incidences. So this is a first step, I think, in cutting down the supply.

Senator POTTER. Where do they buy them now? In hardware stores?

Mr. PINO. Sporting-goods stores, right over the counter.

Senator PURTELL. Are most of them imported?

Mr. PINO. I would say yes.

Mr. CONE. 50–50. In New York you could buy them in any cutlery store or sporting-goods store, up until 4 years ago, and then the switchblade knife went out. These gravity knives, I don't know where they got those things. I haven't seen them on display in the New York area. Of course, now they are outlawed, too.

Senator COTTON. The bill should be kept just as strong as possible to try to dry up the source of these. I sat for a number of years on a very minor court that handled small criminal matters and juveniles, and those knives are exactly the things that will fascinate a perfectly good boy; it fascinates them, both kinds. As long as you have them in manufacture, as long as there is any possibility of selling the things, why, you will never dry them up.

Mr. CONE. That is right. It is an attractive nuisance.

I wonder if the committee would be kind enough to listen to the knife manufacturer for a few minutes?

The CHAIRMAN. Yes.

Let me ask the senator: How many States have laws now, to your knowledge against the—

Mr. PINO. The switchblade?

The CHAIRMAN. Yes.

Mr. PINO. I think there are 12.

Mr. CONE. Twelve now.

Mr. PINO. I thought there were about 16.

Mr. CONE. Our last official check showed 11 besides New York.

The CHAIRMAN. Put in the record the number of States that have laws.

Senator PURTELL. And name the States.

The CHAIRMAN. Yes.

Mr. PINO. As far as we know, we don't have the names of them.

Mr. CONE. Fred may have them outside. Let me check.

The CHAIRMAN. All right. The record will be left open.

Mr. CONE. There are definitely 12 States, known.

This is Mr. Pinkussohn, who represents the Camillus Knife Co.

The CHAIRMAN. All right, sir.

## STATEMENT OF LEWIS A. PINKUSSOHN, JR., CAMILLUS CUTLERY CO.

Mr. PINKUSSOHN. We brought our own display along. I want to show you the type of knives we do manufacture. We are a manufacturer of some 82 years.

The CHAIRMAN. What is the name?

Mr. PINKUSSOHN. Camillus Cutlery Co.

Senator THURMOND. Would you move back so I can see those knives? I am fascinated by knives.

Mr. PINKUSSOHN. Sure. Let me do better than that.

The CHAIRMAN. There is a rule against dangerous weapons on the Senate floor. I don't know about the committee rooms.

Mr. PINKUSSOHN. We are trying to say these are not dangerous. First, I want to thank you for the opportunity to appear here today. I am assistant secretary of the Camillus Cutlery Co., whose plant is in the little town of Camillus, N. Y., 8 miles west of Syracuse. We have been in the cutlery business for 82 years. Mr. Adolphe Kastor founded it as an importer and imported all sorts of cutlery, and Mr. Alfred Kastor is our owner and chairman of the board. I am representing him, and he is heartily in favor of this type of legislation banning the sale of gravity and switchblade pocketknives.

Now, we manufacture a quality line of pocketknives. We sell primarily to the hardware distributor, who sells in turn to the hardware and sporting goods dealer.

Now, this line that I have here constitutes the backbone of our business. There are about 43 numbers here that fit any type of legitimate need, we feel, that a pocketknife will be used for, the farmer, the electrician, the mechanic, the sportsman, but not one of these knives is a pushbutton, a gravity knife, or has any mechanical opening device on it.

Senator SCHOEPPEL. Are most of your competitors in the same type of manufacturing of knives that you are?

Mr. PINKUSSOHN. There are about 12 manufacturers of decent size in the country. There were two manufacturers that manufactured pushbutton or switchblade knives. We also manufacture official knives for the Boy Scouts, 4–H Club, as well as many various types of knives for the Army, Navy, and Marine Corps.

The question came up before about Government specifications on knives. I know of only one instance in the last 10 or 12 years in which the specification has called for a pushbutton-type knife. That was recently, Lackland Air Force Base, which was experimenting with the paratrooper's type of knife. It is conceivable where a pushbutton affair—I call it a pushbutton—it is a switchblade affair—would be helpful for a paratrooper.

Now, on these knives here, the history of the pocket knife goes back, I don't know how many hundreds of years. They have been used by farmers, and so forth. The types and styles of pocket knives haven't changed that much. None of them are using pushbutton knives, to my knowledge. The farmer doesn't want it, the mechanic doesn't want it, the man who works in the automobile shop, the machinist, as well as—and this question has come up—I don't know of a sportsman, a fisherman, that wants a pushbutton knife.

The reason—here is a fish knife. A fish knife is around salt water or fresh water. If you clean a fish with it it is bound to get wet. But with a pushbutton knife, you can't get down into the opening and the closing mechanism will rust, and within 2 or 3 days the knife is useless; the same for a sportsman's knife, because when you skin an animal, the blood will get down into the opening, closing mechanism, and the knife is absolutely useless.

KR00110

We believe, we sincerely believe, that there is no necessity under any ordinary circumstances for anyone to get a blade out so fast that he has to use that type of a knife, at least for any legitimate reason.

Senator THURMOND. I can see where a paratrooper might need it.

Mr. PINKUSSOHN. Yes.

Senator THURMOND. I know on D-day, in World War II. In Normandy a number of paratroopers were dropped in lakes and couldn't cut loose from their equipment, and a number of our fellows were drowned for that reason.

Senator COTTON. The only trouble with that is that the Federal Government is always the first one to violate its laws, and the first thing you know you will have a lot of these pushbutton knives surplus and put on sale by the armed services and sold all over the country.

Senator PURTELL. How long a blade is required on this proposal for the paratroopers?

Mr. PINKUSSOHN. This, I think, was about 3½ inches long, sir. That is just a guess. There was a very small quantity, and it is the first one I have seen in many, many a year, and I don't think it will be repeated.

The CHAIRMAN. The bill takes care of that.

Senator THURMOND. They will develop some other system to alleviate the necessity for that.

Mr. PINKUSSOHN. Yes.

The CHAIRMAN. The bill would take care of that. The bill makes an exemption for procurement by the Armed Forces, civilian employees of the Armed Forces, the National Guard, the Air National Guard, the militia of a State, Territory, or the District of Columbia.

Senator PURTELL. Our concern, Mr. Chairman, was that if we made a great number of these, they would ultimately, as the Senator from New Hampshire pointed out, find their way into the hands of others that were not in the Armed Forces, if they become surplus. And if we follow what has been done before, it might well be that we would make 10 times the number required anyway.

Senator COTTON. And they change their mind the next week about the type they want and declare the first type surplus. Is there any way we can put something in the bill to stop that?

The CHAIRMAN. I don't know. That was the only objection of the Department of Defense to the bill. The Department of Commerce had their sportsman objection, but I think that is pretty well overcome. As the judge says, leave it up to the States.

Mr. CONE. Mr. Pinkussohn made an interesting observation, this knife doesn't even have an edge on it, just a point.

Mr. PINKUSSOHN. It is called a stiletto.

The CHAIRMAN. It has no edge.

Mr. PINKUSSOHN. The question came up of the number of States that have passed legislation banning the sale of switchblade-type knives. I believe it is about 16. That is just a guess.

Mr. CHAIRMAN. We will get the record.

Mr. PINO. We have it here. This is Senator Kefauver's own statement.

The CHAIRMAN. How many States? What are the names of the States?

Mr. PINO. Here they are: Colorado, Connecticut, Delaware, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, and Virginia.

Mr. CONE. That is 12.

Senator PURTELL. Washington isn't on there.

Mr. PINO. No.

Mr. PINKUSSOHN. Even a step forward of 12 States has produced some results. The reason I say that is there are, to my knowledge, two domestic manufacturers. Their business in pushbutton manufacture must be hurt so considerably by these 12 States that one of them has gone into another type of weapon, which I consider rather deadly. This is known as a wavy edge. It opens like a regular pocketknive. I just want to show you the results of the legislation.

Now, this we can see has absolutely no actual business on a pocket-knife. It should be on a kitchen knife.

Mr. CONE. That is not the same principle.

Mr. PINKUSSOHN. No; but this can produce such a jagged cut that we consider it a lethal weapon also. This is made by 1 of the 2 manufacturers. In closing——

The CHAIRMAN. Without mentioning their names—we will find out who they are—are they manufactured in the States that prohibit them, in any of these 12 States?

Mr. PINKUSSOHN. No; they are not manufactured in States that prohibit them.

The CHAIRMAN. O. K.

Senator PURTELL. Boy, were you hoping. [Laughter.]

Mr. PINKUSSOHN. In closing, we have been in the cutlery business as an importer and manufacturer for 82 years, and have always managed to make a fair living for our owners, executives, and employees without resorting to the importation or manufacture of lethal weapons such as switchblade knives, gravity knives, or knives with the wavy edge.

Thanks a lot.

The CHAIRMAN. Do any further witnesses want to be heard on this matter? Where is the police commissioner?

Mr. CONE. His representative is here. He is outside. He is not permitted to testify. He is here only to advise us.

The CHAIRMAN. Why doesn't he want to say something about this?

Mr. CONE. I don't know that he has permission of the police commissioner to speak on this legislation.

The CHAIRMAN. Can we ask him personally if this is a good piece of legislation?

Mr. CONE. I wouldn't like to put him on the spot, that is all.

The CHAIRMAN. Thank you all very much, and we appreciate you all coming.

Take your knives with you because in the closing days of the session we don't want these weapons around. The committee will go into executive session.

(Whereupon, at 11 a. m., the committee proceeded into executive session.)

×

KR00112

Westlaw.

S. REP. 85-1980, S. Rep. No. 1980, 85TH Cong., 2ND Sess. 1958, 1958 U.S.C.C.A.N. 3435, 1958 WL 3910
(Leg.Hist.)
**(Cite as: 1958 U.S.C.C.A.N. 3435)**

\*3435 P.L. 85-623, SWITCHBLADE KNIVES-- PROHIBITION IN INTERSTATE
COMMERCE
SENATE REPORT NO. 85-1980
JULY 28, 1958 (TO ACCOMPANY H.R. 12850)
HOUSE REPORT NO. 85-1945
JUNE 23, 1958 (TO ACCOMPANY H.R. 12850)
THE SENATE REPORT IS SET OUT.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED MATERIAL. EACH
COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

SENATE REPORT NO. 85-1980
JULY 28, 1958

THE COMMITTEE ON INTERSTATE AND FOREIGN COMMERCE, TO WHOM WAS REFERRED THE
BILL (H.R. 12850) TO PROHIBIT THE INTRODUCTION, OR MANUFACTURE FOR INTRODUCTION,
INTO INTERSTATE COMMERCE OF SWITCHBLADE KNIVES, AND FOR OTHER PURPOSES HAVING
CONSIDERED THE SAME, REPORT FAVORABLY THEREON WITHOUT AMENDMENT AND RECOM-
MEND THAT THE BILL DO PASS.

II. SUMMARY OF THE BILL

SECTION 1 DEFINES THE TERMS USED IN THE BILL.

SECTION 2 PROHIBITS THE MANUFACTURE FOR, OR TRANSPORTATION OR DISTRIBUTION IN,
INTERSTATE COMMERCE, OF SWITCHBLADE KNIVES OR OF OTHER CONCEALED \*3436 BLADE
KNIVES WHICH OPEN BY OPERATION OF INTERIA OR GRAVITY OR BOTH. SECTION 3 WOULD
ALSO PROHIBIT THE MANUFACTURE, SALE, OR POSSESSION OF SUCH KNIVES WITHIN ANY
TERRITORY OR POSSESSION OF THE UNITED STATES, WITHIN INDIAN COUNTRY (AS DEFINED
IN SEC. 1151 OF TITLE 18 OF THE UNITED STATES CODE); OR WITHIN THE SPECIAL MARITIME
OR TERRITORIAL JURISDICTION OF THE UNITED STATES (AS DEFINED IN SEC. 7 OF TITLE 18 OF
THE UNITED STATES CODE). PERSONS VIOLATING THESE SECTIONS WOULD BE SUBJECT TO A
FINE OF NOT MORE THAN $2,000 OR TO IMPRISONMENT FOR NOT MORE THAN 5 YEARS, OR
BOTH. EXCEPTIONS TO THESE PROVISIONS ARE MADE IN THE FOLLOWING CASES:

(1) THE TRANSPORTATION OF **SWITCHBLADE** KNIVES BY COMMON AND CONTRACT CARRIERS
IN THE ORDINARY COURSE OF BUSINESS;

(2) THE MANUFACTURE, SALE, TRANSPORTATION, DISTRIBUTION, OR POSSESSION OF SUCH
KNIVES PURSUANT TO CONTRACT WITH THE ARMED FORCES;

(3) THE HANDLING OF **SWITCHBLADES** BY THE ARMED FORCES OR BY ANY MEMBER OR EM-
PLOYEE THEREOF IN THE PERFORMANCE OF HIS DUTY; OR

(4) THE POSSESSION OF A **SWITCHBLADE** KNIFE WITH A BLADE 3 INCHES OR LESS IN LENGTH
BY A ONE-ARMED PERSON.

SECTION 5 OF THE BILL AMENDS SECTION 1716 OF TITLE 18 OF THE U.S.C. TO PROHIBIT THE
MAILING OF **SWITCHBLADE** KNIVES EXCEPT IN CONNECTION WITH ARMED FORCES OR OTHER
GOVERNMENT ORDERS.

IT SHOULD BE PARTICULARLY NOTED THAT THE PROPOSED LEGISLATION DOES NOT AFFECT
THE POSSESSION, OR MANUFACTURE FOR, OR SALES IN, INTRASTATE COMMERCE OF

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

KR00113