UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Copeland, et al. | **DECLARATION OF ASSISTANT DISTRICT ATTORNEY DAN M. RATHER** |
| Plaintiffs, | |
| -against- | 11 Civ. 3918 (KBF) |
| Vance, et al., | |
| Defendants. | |

DAN M. RATHER, an attorney duly admitted to practice in the State of New York, declares under penalty of perjury and pursuant to 28 U.S.C. §1746, that the following is true and correct:

1.      I am an Assistant District Attorney at the New York County District Attorney's Office.  I have served as a prosecutor with the District Attorney's Office since August, 1985 – for nearly thirty-one years.

2.      From 1985 to 1991, I was a line Assistant in the Trial Division in Trial Bureau 60.  In that capacity, I prosecuted cases involving a range of misdemeanor and felony offenses from inception to resolution, including homicides, sex crimes, street crimes, weapons and narcotics crimes, theft and fraud, and domestic violence.

3.      As a first and second year Assistant, I was assigned to Criminal Court where I prosecuted primarily misdemeanor offenses, including the offense of possession of a gravity knife.

4.      During my first year, my senior colleagues and supervisors instructed me to apply a wrist flick test to identify a gravity knife by gripping the handle of the knife and flicking my wrist to see if the blade would release and lock in place.

1

5.      From 1990 to 1991, I served as a Criminal Court Supervisor and was responsible for the training and supervision of first and second year Assistants in the prosecution of misdemeanor offenses.  During that time, I maintained my own active caseload of felony investigations and prosecutions.

6.      I instructed the misdemeanor Assistants under my supervision to apply the wrist flick test to identify gravity knives.

7.      From 1992 to 1993, I was assigned to the Homicide Investigations Unit where I conducted long term investigations and prosecutions of violent drug gangs.

8.      The District Attorney's Office founded the Firearms Trafficking Unit in 1993, which was a specialized anti-violence unit tasked with targeting and reducing all violent crimes, including crimes involving knives.  I was the first Unit Chief and served from 1993 until June, 2010.

9.      As Chief of the Firearms Trafficking Unit, I directed and managed the investigation and prosecution of weapons traffickers and the criminals and organizations they supplied.  Working with a team of Assistants, investigators, and analysts, I designed and executed the successful investigation and prosecution of several of the City's most violent gangs, dismantled violent criminal organizations throughout Manhattan, and convicted high-profile criminals.

10.     From June, 2010 to June, 2012, I served as Chief of Trial Division Initiatives.  In that capacity, I initiated and managed investigations into all types of organized criminal activity throughout the Trial Division and advised Assistants on complex and major cases throughout the Office.

11.     From June, 2012 to the present, I have served as Counsel to the Trial Division.  At the direction of the Chief of the Trial Division, I apply my experience to all Trial Division matters, consult and oversee significant cases, and assist in the development and execution of Trial Division training and policy.

12.     The gravity knife statute was added to the Penal Law in 1958 in response to the increasing use of such knives in violent felonies.

13.     Attached to this declaration as Exh. D-4 is a copy of the Governor's Bill Jacket for the gravity knife statute.

14.     Over my career, I have personally handled or supervised hundreds of cases involving a gravity knife charge, ranging from misdemeanor prosecutions for criminal possession of a weapon to homicide prosecutions.

15.     Attached to this declaration as Exh. D-5 is a copy of the standard jury instruction on possession of a gravity knife, which is simply a recitation of the statutory definition of the weapon.

16.     I have conducted numerous training sessions for Trial Bureau Assistants wherein I have instructed them on the gravity knife statute and how to enforce it, including how to apply the statute to a particular knife via the wrist flick test.

17.     The wrist flick test is the standard by which prosecutors at the District Attorney's Office apply the gravity knife statute to a particular knife.

18.     That standard has remained constant before, during, and after the election of District Attorney Vance in January, 2010.

19.     I am regularly consulted by individual Assistants and their supervisors in connection with gravity knife prosecutions.

3

20.     In my thirty-one years as a prosecutor, I have handled and tested thousands of gravity knives.

21.     In my experience, certain knives – while not necessarily intended by the designer or manufacturer to be illegal – can nonetheless function as gravity knives.

22.     For example, a knife with a tension screw at the fulcrum could function as a gravity knife if the screw has loosened.

23.     Similarly, knives of the same brand and model – even knives from the same batch or shipment that have never been used before – can function differently.

24.     Conversely, a knife that once functioned as a gravity knife may cease to function as one if, for example, the blade has been taped shut during evidence collection, the knife has been stored continuously in a cold or arid location, or the knife has been exposed to moisture causing corrosion on the blade or in the handle.

25.     The District Attorney's Office does not prosecute individuals because a knife could theoretically or potentially operate by gravity or centrifugal force; rather, the Office evaluates the actual function of the knife on a case-by-case basis in determining whether it meets the statutory definition.

26.     In evaluating whether a gravity knife charge is appropriate in a particular case, the Assistant considers first whether the knife meets the statutory definition – i.e., can the knife be opened to a locked position by application of the wrist flick test – and, second, whether the People will be able to meet their burden of proof beyond a reasonable doubt at trial.

27.     While the First Department of the Appellate Division is clear that the People can meet their burden even if multiple attempts of the wrist flick test are required to open a knife to a locked position, it is within the Assistant's prosecutorial discretion whether a particular prosecution should be commenced or continued.

28.     I have never advised an Assistant to go to trial with a knife that the arresting officer could not open to a locked position via a flick of the wrist, nor am I aware of any prosecution going forward where the officer could not open the knife to a locked position by application of the wrist flick test in less than three attempts.

29.     I have reviewed Exhibit P-8 appended to the Declaration of Paul Tsujimoto, which is a diagram of a knife that Mr. Tsujimoto refers to as a "German paratrooper knife."

30.     In nearly thirty-one years as a prosecutor in New York County, and as one of the authorities at the District Attorney's Office routinely consulted for knife-related prosecutions, I have never seen German paratrooper knife such as the one depicted in Exhibit P-8 nor am I aware of any prosecutions stemming from such a knife.

31.     Without exception, the gravity knives I have encountered over the course of my career have been folding knives.

32.     The Bureau of Planning and Management at the District Attorney's Office maintains records and compiles statistics on prosecutions in New York County.

33.     The records of the Bureau of Planning and Management reflect the below number of prosecutions for possession of a gravity knife and the total number of misdemeanor prosecutions commenced in New York County from 2005 to 2009 under former-District Attorney Robert M. Morgenthau:

| Year | 2005 | 2006 | 2007 | 2008 | 2009 |
|------|------|------|------|------|------|
| Gravity Knife Prosecutions | 1,027 | 1,189 | 1,414 | 1,432 | 1,513 |
| Misdemeanor Prosecutions | 68,160 | 70,273 | 76,720 | 74,523 | 77,683 |

34.     The records of the Bureau of Planning and Management reflect the below number of prosecutions for possession of a gravity knife and the total number of misdemeanor prosecutions commenced in New York County from 2010 to 2015 under the District Attorney Vance:

| Year | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|------|------|------|------|------|------|------|
| Gravity Knife Prosecutions | 1,263 | 1,095 | 967 | 1,096 | 1,075 | 1,073 |
| Misdemeanor Prosecutions | 75,643 | 74,941 | 76,414 | 76,774 | 73,909 | 63,601 |

35.     In 2009 and early 2010, a substantial portion of the homicides, assaults, and violent felonies in New York County were committed with knives.

36.     For example, of the fifty-nine homicides committed in New York County in 2009, nineteen were committed with a knife.

37.     Out of those nineteen, five homicides were committed with a folding knife and four of those five took place in a public setting (three on the street, one on the steps of a Post Office).

38.     There were twenty-one homicides in New York County during the first four months of 2010 alone, nine of which involved a knife.

39.     Out of those nine, three homicides were committed with a folding knife and took place in a public setting (one on the subway and two on the street).

6

40.     For as long as I have been with the District Attorney's Office, the Office and the Police Department have used undercover operations to combat the sale of illegal knives at retail stores in New York County, including gravity knives.

41.     Attached to this declaration as Exhibit D-6 is an article from the New York Times dated November 20, 2003 describing a police raid on "Army & Navy," a retail store in the Lower East Side.

42.     In March and May of 2010, undercover officers and investigators from the District Attorney's Office purchased folding knives at Native Leather that, upon application of the wrist flick test, functioned as gravity knives.

43.     In response to a grand jury subpoena dated May 11, 2010, Carol Walsh provided the District Attorney's Office with several hundred knives from Native Leather.

44.     On May 19, 2010, the attorney for Native Leather wrote a letter to the District Attorney's Office acknowledging that some of the store's knives "meet the legal definition of a gravity knife." Attached to this declaration as Exhibit D-7 is a copy of the letter this Office received from Native Leather's attorney.

45.     I personally tested, or observed to be tested by members of the District Attorney's staff, each knife produced by Native Leather. The knives received by this Office from Native Leather were marked with tape bearing the initials "N.L."

46.     Upon application of the wrist flick test, I identified a number of the knives as gravity knives.

47.     The knives that operated as gravity knives were all folding knives.

48.     None of the knives that Native Leather provided to the District Attorney's Office in response to the grand jury subpoena were German paratrooper style knives.

49.     The knives produced by Native Leather have remained in the custody and control of the District Attorney's Office since we received them in May, 2010.[1]

50.     Attached to this declaration as Exhibit D-8 is a series of photographs taken on April 5, 2016 of a silver folding knife with a black widow spider design produced by Native Leather bearing the initials "N.L."

51.     The black widow knife opened to a locked position by application of the wrist flick test when received by this Office in May, 2010.

52.     Attached to this declaration as Exhibit D-9 is a series of photographs of Assistant District Attorney Elizabeth Krasnow opening the black widow knife by application of the wrist flick test, shot at 1/8000th of a second.

53.     Attached to this declaration as Exhibit D-10 is a demonstrative video of ADA Krasnow opening the black widow knife by application of the wrist flick test.

54.     Attached to this declaration as Exhibit D-11 is a second demonstrative video of ADA Krasnow opening the black widow knife by application of the wrist flick test, shot at 120 frames a second.

55.     Attached to this declaration as Exhibit D-12 is a series of photographs of a black folding knife produced by Native Leather bearing the initials "N.L."

---

[1]          With the exception of approximately ninety knives that we determined were legal and returned to Walsh.

56.     The black knife opened to a locked position by application of the wrist flick test when received by this Office in May, 2010.

57.     Attached to this declaration as Exhibit D-13 is a series of photographs of ADA Krasnow opening the black knife by application of the wrist flick test, shot at 1/8000th of a second.

58.     Attached to this declaration as Exhibit D-14 is a demonstrative video of ADA Krasnow opening the black knife by application of the wrist flick test.

59.     Attached to this declaration as Exhibit D-15 is a second demonstrative video of ADA Krasnow opening the black knife by application of the wrist flick test, shot at 120 frames a second.

60.     Attached to this declaration as Exhibit D-16 is a series of photographs of a silver folding knife with a grim reaper design produced by Native Leather bearing the initials "N.L."

61.     The grim reaper knife opened to a locked position by application of the wrist flick test when received by this Office in May, 2010.

62.     Attached to this declaration as Exhibit D-17 is a demonstrative video of ADA Krasnow opening the grim reaper knife by application of the wrist flick test.

63.     Attached to this declaration as Exhibit D-18 is a second demonstrative video of ADA Krasnow opening the grim reaper knife by application of the wrist flick test, shot at 120 frames a second.

64.     Attached to this declaration as Exhibit D-19 is a series of photographs of a folding knife with a brown handle and curved black blade produced by Native Leather bearing the initials "N.L."

9

65.     The knife with the brown handle opened to a locked position by application of the wrist flick test received by this Office in May, 2010.

66.     Attached to this declaration as Exhibit D-20 is a demonstrative video of ADA Krasnow opening the knife with the brown handle by application of the wrist flick test.

67.     Attached to this declaration as Exhibit D-21 is a second demonstrative video of ADA Krasnow opening the knife with the brown handle by application of the wrist flick test, shot at 120 frames a second.

68.     ADA Krasnow is of smaller stature than Walsh, who I met several times in connection with the deferred prosecution agreement.

69.     The photos and videos marked as Exhibits D-8 through D-21 were taken on April 5, 2016 in the Photo Unit of the District Attorney's Office.

70.     Except for examination in connection with this litigation, the knives produced by Native Leather have been kept in a secure evidence room within the District Attorney's Office.

71.     I am familiar with the prosecution of Reginald Herbin under New York County Indictment 0481/2008 and the associated decision by the First Department of the Appellate Division, *People v. Herbin*, 86 A.D.3d 446 (1st Dept. 2011).

72.     Attached to this declaration as Exhibit D-22 is a series of photographs of the gravity knife recovered from the defendant in *People v. Herbin*. I know Exhibit D-22 to be the knife from the *Herbin* case based on my comparison of the NYPD invoice number on the bag containing the knife to the NYPD paperwork contained in the DA file, and also based on my work done on the case in connection with the defendant's appeal.

73.     Attached to this declaration as Exhibit D-23 is a video of a Leatherman multi-tool knife of the same type that I referenced in my deposition.

74.     From January 1, 2016 through April 4, 2016, the District Attorney's Office is aware of thirty-seven slashing incidents reported in New York County (exclusive of stabbings and domestic violence incidents).


Dated:          April 8, 2016
                New York, New York


                                        _____
                                        DAN M. RATHER
                                        Assistant District Attorney


11