UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Copeland, et al.

                                  Plaintiffs,

-against-

Vance, et al.,

                                  Defendants.

**DECLARATION OF EDWARD LUKE**

11 Civ. 3918 (KBF)

      EDWARD LUKE declares pursuant to 28 U.S.C. §1746, under penalty of perjury, that the following is true and correct:

      1.    I became a member of the New York City Police Department ("NYPD") in August 1993 and retired in June 2015, having achieved the rank of Lieutenant.

      2.    I am fully familiar with the facts set forth herein which are based on my personal knowledge.

      3.    In March 1994, after graduating from the Police Academy, I was assigned to the 83rd precinct in the Bushwick section of Brooklyn. In 1998 I was assigned to the Bureau of Crime Identification. I was promoted to Sergeant in September 2000 and assigned to the 24th precinct in Manhattan. After the events of September 11, 2001, I was recalled into the U.S. Navy and served overseas for one year and returned to the 24th Precinct in October 2002. In July 2004, I was promoted to the rank of Lieutenant and assigned to Transit District 12 in the Bronx. In March 2005, I was transferred to Transit District 3 in the Harlem section of Manhattan. From October 2011 until my retirement

from the NYPD, I was assigned as the Transit Bureau School Coordinator at Transit Bureau headquarters.

4. On April 15, 2010, I was the Special Operations Lieutenant of Transit District 3 responsible for overseeing several specialized units, including the Anti-Crime Units of Transit District 3. Police Officers Julissa Sanchez, Ray DeJesus, and I were conducting container inspections and scanning subway riders for explosives from a post inside the mezzanine of the 125th Street and Broadway subway station.

5. While performing container inspections, all officers are required to be in uniform. There was a table and large sign set up to perform the inspections and to alert subway riders as to our purpose for being there.

6. At approximately 1640 hours, or 4:40 p.m., I observed a male later identified as Pedro Perez walking through the mezzanine of the subway station with a knife clipped to the back pocket of his pants.

7. In my experience, gravity knives are typically clipped to the owner's clothing so as to make the knife readily accessible.

8. Additionally, the City Administrative Code prohibits carrying knives through the subway in public view.

9. From my experience performing Anti-Crime patrol, I know that gravity knives are often carried in the subway.

10. I have no recollection of Perez wearing clothes or carrying any items to suggest that he was an artist.

11. I stopped Perez as he was walking towards the turnstiles and recovered the knife from his person.

12. In Perez's presence, I applied the wrist flick test to his knife by gripping the handle of the knife and flicking my wrist in a downward motion away from my body.

13. The knife opened on the first attempt and the blade locked in place automatically.

14. Officers assigned to an Anti-Crime team do not ordinarily leave their post during a tour. If an arrest is made by a member of the team, another officer is dispatched to the post to transport the arrestee to the Transit District to process the arrest.

15. Having identified the knife as a gravity knife, I took Perez into custody. I then requested that uniformed officers respond to the post to transport Perez back to Transit District 3 for arrest processing.

16. The arrest was assigned to Police Officer Angel Guerrero, who completed a Desk Appearance Ticket and all other necessary arrest paperwork charging Perez with possession of a gravity knife in violation of Penal Law §265.01.

17. Perez was then released from custody.

18. Officer Guerrero was not present when I stopped Perez or when I tested the knife.

19. On May 11, 2010, Officer Guerrero signed a criminal court complaint charging Perez with possession of a gravity knife based on the information I supplied to him.

20. On July 3, 2010, I signed a supporting deposition attesting to the fact that I opened Perez's knife by using the wrist flick test.

21. During my twenty-two years of service with the NYPD I have been involved in approximately one hundred and fifty arrests for possession of a gravity knife, either as the arresting officer, the partner of the arresting officer, or as a supervisor.

22. None of these arrests were based on possession of a German paratrooper knife which, in contrast to a folding knife, has a blade that slides directly out of the handle via gravity or centrifugal force.

23. I have never encountered a German paratrooper style knife in the course of my work as a Police Officer.

24. I have personally tested between 40 and 50 gravity knives over the course of my career. All of these knives were folding knives.

25. Based on my training and experience, I understand a gravity knife to be a folding knife that possesses two characteristics: the knife will open by gravity or the application of centrifugal force and, once open, the blade will lock into place automatically.

26. At the Police Academy, I learned the Penal Law provision that pertains to gravity knives, the way to determine whether a knife was a gravity knife, and the charges to be imposed.

27. As a child growing up in New York City in the 1970s and 1980s, I knew that the Police Department used a wrist flick test to identify gravity knives.

28. Throughout my twenty-two year career with the NYPD, I consistently and exclusively used the wrist flick test to identify a gravity knife.

29. Every time I have witnessed another officer test a suspected gravity knife, it was with the wrist flick test.

30. I understand that the resistance in a folding knife such as the one carried by Perez can change over time, either through regular use or intentional modification – for example, by spraying the blade with WD-40.

31. I never charged someone with possession of a gravity knife if the knife did not open after the first or second application of the wrist flick test, nor would I charge someone if I could open the knife via the wrist flick test but another officer could not.

32. Out of all the occasions where I either tested myself or observed another officer test a suspected gravity knife, I estimate that 70-75% of the knives were identified as gravity knives and the remainder were identified a legal folding knives.

33. Having been a police officer for twenty-two years, I am familiar with criminal court complaints and supporting depositions.

34. The criminal court complaint is the document which sets out the legal and factual grounds for the charges against a defendant. The supporting deposition is signed by the person with first-hand knowledge of the events in the criminal court complaint, attesting to the truth of those facts.

35. Both documents are created and kept in the ordinary course of business at the NYPD and the officer signing a criminal court complaint and a supporting deposition is under a business duty to ensure the accuracy of the documents.

36. Attached to this declaration as Exhibit D-1 is a copy of the criminal court complaint.

37.     Attached to this declaration as Exhibit D-2 is a copy of the support deposition.

Dated:     New York, New York
           April 6th, 2016

                                              _____
                                              EDWARD LUKE

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

Page 1 of 1

| THE PEOPLE OF THE STATE OF NEW YORK | MISDEMEANOR |
| -against- | |
| 1. Pedro Perez (M 43) | ECAB # 1099072 |
| | Defendant. |

Police Officer Angel Guerrero, shield 24226 of the Transit Division District 03, states as follows:

On April 15, 2010, at about 16:51 hours inside of the West 125th Street and Broadway subway in the County and State of New York, the Defendant committed the offenses of:

1. PL265.01(1)    Criminal Possession of a Weapon in the Fourth Degree
                  (1 count)

the defendant possessed a gravity knife.

The offenses were committed under the following circumstances:

Deponent states that deponent is informed by Lieutenant Edward Luke of the Transit Division District 03 that informant recovered a gravity knife from defendant's rear left pants pocket. Deponent states that informant determined that said knife was a gravity knife because informant opened the knife with centrifugal force by flicking informant's wrist while holding the knife, and the blade locked in the open position. Deponent further states that said knife does not require manual locking.

False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.

P.O. Angel A. Guerrero
Deponent

5-11-10 / 0940
Date and Time

ACT 5 Version 4.3.5 Created on 05/11/10 9:39 AM

EXHIBIT D-1

0031

06/03/2010  13:51    12122817924         DIST03/CRIME ANALYSI              PAGE 03/04

**CRIMINAL COURT OF THE CITY OF NEW YORK**
**PART B, COUNTY OF NEW YORK**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | SUPPORTING DEPOSITION |
| vs. | 100.20 C.P.L. |
| PEDRO PEREZ | Docket No.        2010NY035069 |
| | Adjourned Date    6/24/2010 |
| Defendant | |

I, Lieutenant Edward Luke, Shield 00000, of an address known to the New York County District Attorney's Office, have read the attached criminal complaint. The facts in this complaint that are attributed to me are true, and I know these facts from my personal knowledge.

False statements made herein are punishable as a Class A misdemeanor pursuant to section 210.45 of the penal law.

_____    6-3-10
Signature                    Date

**EXHIBIT D-2**

0032