UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Copeland, et al.,<br><br>                        Plaintiffs,<br><br>    -against-<br><br>Vance, et al.,<br><br>                        Defendants. | **DECLARATION OF IOANNIS KYRKOS**<br><br>11 Civ. 3918 (KBF) |

       IOANNIS KYRKOS declares pursuant to 28 U.S.C. §1746, under penalty of perjury, that the following is true and correct:

       1.     I am a Detective in the New York City Police Department ("NYPD"). I became a probationary Police Officer in the NYPD in July 2004.

       2.     I am fully familiar with the facts set forth herein which are based on my personal knowledge.

       3.     After I graduated from the Police Academy in January 2005, I was assigned to Police Service Area 4 ("PSA4") on the lower east side of Manhattan. Initially, I was a probationary Police Officer and, along with a group of six other Officers, I was assigned to work with a Field Training Sergeant and Field Training Police Officer. Several months later, I was assigned to patrol, where I remained for approximately two years. For approximately six months, I was a Conditions Officer investigating quality of life issues. Then, in 2007, I was assigned to an Anti-Crime Team, which focuses on deterring serious offenses. My Anti-Crime Team included Police Officers Noel Gutierrez and Ethan Abend, among other Officers.

       4.     On October 10, 2010, I was a Police Officer assigned to PSA4.

1

5. I was with Officers Gutierrez and Abend in an unmarked patrol car at approximately 1:10 p.m. when we noticed an individual later identified as John Copeland walking across the street from housing projects located at 251 East 3rd Street in Manhattan. A clip and the top of a knife handle were visible in his front pants pocket.

6. Officer Gutierrez and I exited the patrol car, approached Copeland, and recovered the knife.

7. I held the knife by its handle and flicked my wrist. The blade of the knife came out of the handle in response to centrifugal force and locked in place automatically. Only one wrist flick was needed to open Copeland's knife.

8. Copeland observed me opening his knife with a wrist flick.

9. As is our general practice, Officer Gutierrez and I asked Copeland why he was carrying a knife. Copeland said that he was a mechanic and used the knife at work.

10. We told Copeland that his knife was an illegal gravity knife, since it opened with centrifugal force and the blade locked into place automatically.

11. Copeland was then placed under arrest for Criminal Possession of a Weapon in the Fourth Degree in violation of Penal Law §265.01(1).

12. Officer Gutierrez processed Copeland's arrest at PSA4. Copeland was issued a Desk Appearance Ticket and released.

13. I have made more than 300 arrests in the course of my career. Of those arrests, approximately twenty involved a charge of possession of a gravity knives. All of those arrests involved folding knives. I have reviewed Exhibit P-8 attached to the trial declaration of Paul Tsujimoto, depicting what Tsujimoto claims is a gravity knife. The drawing appears similar to what I know to be a switchblade knife, except, according to Tsujimoto, it

2

will only open when the blade is facing down. I have never seen such a knife on the street or at any time in my work as a Police Officer.

14. At the Police Academy, we were instructed on the Penal Law provisions involving Criminal Possession of a Weapon in the Fourth Degree, which includes possession of a gravity knife.

15. I learned how to apply the wrist flick test to identify a gravity knife through practical training and experience in my first few months as a Police Officer.

16. Based on my observations and experience during approximately twelve years with the NYPD, the wrist flick test is used exclusively to determine whether a knife is a gravity knife.

17. To open a knife with the wrist flick test, I hold a knife by its handle and flick my wrist to apply centrifugal force. If the blade exits the handle and locks into place automatically, it is a gravity knife.

18. I have watched the video of the Assistant District Attorney opening a silver folding knife with a black widow design. The motion depicted in the video is the same as the wrist flick that I apply in my work as a Police Officer to identify gravity knives. The knife itself is also similar to folding knives that I have seen on the street and identified as gravity knifes.

19. If I can open a knife with the wrist flick on the first or second try, it is a gravity knife. If I have to flick the knife over and over to get the blade to open and lock into place, it is not a gravity knife.

20. In my experience, the practice of carrying a knife clipped to one's pocket, as Copeland was carrying his knife, is to assist in the speedy deployment of the knife.

3

21. In my experience as a police officer and based on watching other officers, it is clear to me that being able to open a knife with a wrist flick depends on technique, not on strength.

22. Based on my experience, knives like the one Copeland was carrying may become easier or more difficult to open over time, based on how the knife is used or stored. The ease with which a gravity knife can be opened can also be changed by modifying the tension screw that controls the pivot of the blade.

Dated:     New York, New York
           April 6, 2016

_____
IOANNIS KYRKOS